IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------x
                                                               :
In re                                                          : Chapter 11
                                                               :
PJ Finance Company, LLC, *et al.*,[1]                          : Case No. 11-_____ (_____)
                                                               :
        Debtors.                                         : (Joint Administration Requested)
                                                               :
---------------------------------------------------------------x

## MOTION OF DEBTORS AND DEBTORS IN POSSESSION FOR AN ORDER APPOINTING KURTZMAN CARSON CONSULTANTS LLC AS CLAIMS, NOTICING AND BALLOTING AGENT *NUNC PRO TUNC* TO THE PETITION DATE AND APPROVING THE FORM AND MANNER OF NOTICE OF SECTION 341 MEETING

The above-captioned debtors (collectively, the "Debtors") hereby move the Court for entry of an order pursuant to section 341 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2002 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), 28 U.S.C. § 156(c) and Rule 2002-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"): (i) appointing Kurtzman Carson Consultants LLC ("KCC") to perform certain claims, noticing and balloting functions in these chapter 11 cases (the "Claims Agent"), (ii) approving the form and manner of notice of the initial meeting of the Debtors' creditors and (iii) granting certain related relief (the "Motion"). In support of this Motion, the Debtors incorporate the statements

---

[1] The Debtors are the following seven entities (the last four digits of their respective taxpayer identification numbers, if any, follow in parentheses): PJ Finance Company, LLC (8895), PJ Holding Company Manager, LLC (8895), PJ Holding Company, LLC (8895), Alliance PJRT GP, Inc. (1787), Alliance PJWE GP, L.L.C. (8133), Alliance PJRT Limited Partnership (1789) and Alliance PJWE Limited Partnership (8198). The mailing address of each of the Debtors solely for purposes of notices and communications is 1200 North Ashland Avenue, Suite 600, Chicago, Illinois 60622.

contained in the Declaration of Michael W. Husman in Support of First Day Pleadings (the "First Day Declaration") filed contemporaneously herewith and further respectfully state as follows:

## Jurisdiction and Venue

1. The Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue is proper in this district under 28 U.S.C. §§ 1408 and 1409.

## Background

2. On the date hereof (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are in possession of their properties and continuing to operate their business as debtors and debtors in possession under sections 1107 and 1108 of the Bankruptcy Code. No trustee or official committee of unsecured creditors has been appointed in these cases.

3. The Debtors are real estate companies engaged in the acquisition, ownership, operation, management, leasing, financing, mortgaging and selling of 32 apartment communities comprising 9,504 units located in the states of Arizona, Florida, Georgia, Tennessee and Texas (the "Properties" and collectively, the "Portfolio").

4. The day-to-day operations of the Portfolio are managed by a third-party, WestCorp Management Group One, Inc. ("WestCorp"), pursuant to Management Agreements dated November 9, 2006 (the "Management Agreements") and a Sub-Management Agreement dated July 1, 2008.

5. On November 9, 2006, Alliance PJRT Limited Partnership and Alliance PJWE Limited Partnerships (collectively, the "Partnerships") entered into an Amended and Restated

Loan Agreement[2] with Column Financial Inc. (along with its successors and assigns from time to time, the "Originating Lender"), whereby the Originating Lender agreed to make a loan to the Partnerships in the principal amount of $475,000,000 with a maturity date of November 11, 2016 (as amended, restated, supplemented or otherwise modified from time to time, the "Loan" or the "Prepetition Loan Agreement" and together with the other documents, instruments, notices and recordings executed, delivered and recorded, collectively, the "Prepetition Loan Documents").[3]

6. On May 1, 2007, the Originating Lender sold the Prepetition Loan Documents to Credit Suisse First Boston Mortgage Securities Corp. ("Credit Suisse"). Credit Suisse purchased the Loan in order to include it in a portfolio of loans that Credit Suisse securitized by the issuance of commercial mortgage-backed securities ("CMBS"). Pursuant to that certain Pooling and Servicing Agreement, dated as of May 1, 2007 (the "Pooling and Servicing Agreement"), Credit Suisse contributed the Prepetition Loan Documents to a trust. Under the Pooling and Servicing Agreement, Bank of America, N.A. acts as successor trustee (the "Trustee" or the "Prepetition Lender")[4] and caused the issuance and sale of mortgage pass-through certificates in multiple classes denoted the Credit Suisse Commercial Mortgage Pass-Through Certificates, Series 2007-C2. Wachovia Bank, N.A. acts as the master servicer (the "Master Servicer") and Torchlight Loan Services, LLC acts as special servicer (the "Special Servicer"). Pursuant to the

---

[2] At that time, the Portfolio was also subject to a senior mezzanine loan and a junior mezzanine loan, but as a result of the senior mezzanine lender's exercise of its remedies under the Uniform Commercial Code, it conducted a sale on September 4, 2009 of the pledged equity interests of the Debtors, thereby taking such interests in full satisfaction of the senior mezzanine debt.

[3] The Debtors have not completed their investigation respecting the extent, validity, priority, perfection and avoidability of the claims and liens evidenced by the Prepetition Loan Documents and reserve all rights. Nothing set forth herein shall be construed as a waiver or admission against interest on the part of the Debtors with respect thereto.

[4] On July 26, 2010, a UCC-3 Financing Statement Amendment was filed with the Delaware Department of State, stating that Wells Fargo Bank, N.A. assigned its right, title and interest as trustee to Bank of America, N.A.

Prepetition Loan Documents, the Loan is secured by mortgages and deeds of trust encumbering all of the Properties in favor of the Trustee. The Partnerships are currently indebted on the Loan in the amount of $475 million plus accrued and unpaid interest, costs and fees.

7. The Prepetition Loan Agreement is administered through a lockbox and all rents from operations of the Properties flow through the lockbox account (the "Lockbox"). After being swept daily by the Master Servicer, the rents are then distributed once a month to, and for the benefit of, the Debtors pursuant to a "waterfall" mechanism described below. As of the Petition Date, the amounts received by the Debtors through the "waterfall" are insufficient to sustain the Debtors' operations, as the Debtors continue to experience an ongoing monthly operating expense shortfall.

8. As of the date hereof, the Partnerships have trade payables outstanding in an amount of approximately $4.4 million for expenses incurred in the ordinary course of operating the Properties.

9. Owing to a combination of internal problems among the Debtors' previous shareholders and management team, the severe economic recession and the current overleveraged debt structure of the Debtors, the Portfolio currently yields insufficient rents to service both its suffocating monthly debt service obligations and those obligations related to its day to day operations. Indeed, the combination of the severe economic recession and the lasting effects of the recent decline in the multi-family real estate market has resulted in the aggregate value of the Properties to be dramatically less than the amount of the Debtors' outstanding secured debt under the Prepetition Loan Agreement.

10. Currently, all of the Debtors' cash is swept into a blocked account and after the Master Servicer funds amounts for, among other things, (i) a tax and insurance reserve, (ii)

4

interest due on the Loan and (iii) a capital expenditure/repair reserve, the Debtors receive an amount intended for payment of the monthly operating expenses of the Debtors, including for payment of fees and expenses owing to the Manager and the Debtors' obligations related to their day to day operations. The Debtors believe, however, that the funding of certain of such reserves is excessive. Due to the large percentage of the Debtors' cash that was funded pre-petition in payment of Loan obligations and reserves through the "waterfall" mechanism, the Debtors have insufficient cash available to pay obligations for the Debtors' day to day operations as they come due. As a result of this insufficient cash flow, the Debtors have been unable to relet units as leases expire or vacancies otherwise occur in the ordinary course, or to convert vacated "off-line" rental units into lease-ready units, and make repairs and improvements on other units and in common areas. Currently, over 1,700 of the total number of units are unable to be rented as there is insufficient cash available to invest in these units to return them to move-in condition and, with the upcoming notices to vacate in the next thirty days, this number will continue to increase to more than 20% of the Debtors' total units, as the Debtors do not currently have the funds to repair these vacated units. This grim reality will result in a further decline in the Debtors' revenue and create added stress on their ability to meet their obligations.

11. In order to ensure that the Properties do not deteriorate further and thus cause a further decline in revenue and value, the Debtors require a significant cash infusion and restructuring of the Loan in order to continue to operate the Properties. Working with their advisors, the Debtors have developed a comprehensive business plan that addresses the Debtors' cash flow challenges and have attempted to introduce their plan to both the Special Servicer and the Master Servicer. A critical element of this plan is the infusion of new equity capital in the Debtors' business, and the Debtors have worked diligently to attract a third-party investor to

5

EAST\44271750.4

invest new equity capital into the Debtors. Unfortunately, both the Master Servicer and the Special Servicer have refused to engage in any meaningful discussions related to the Debtors' deteriorating financial condition or the Debtors' strategy to develop a consensual solution to address those problems. Accordingly, the Debtors have been left with no choice, but to file petitions under Chapter 11 of the Bankruptcy Code.

### Relief Requested

12. Bankruptcy Rule 2002 describes certain notices that must be provided to creditors and other parties in interest in bankruptcy cases. Under Bankruptcy Rule 2002, the Court may direct that some person other than the Clerk of the Court provide notice of the various matters described therein. In addition, 28 U.S.C. § 156(c) expressly authorizes the use of non-court services for noticing:

> Any court may utilize . . . services, either on or off the court's premises, which pertain to the provision of notices . . . to parties in cases filed under the provisions of title 11 . . . . The utilization of such . . . services shall be subject to such conditions and limitations as the pertinent circuit council may prescribe.

28 U.S.C. § 156(c). Local Rule 2002-1(f) requires debtors with more than 200 creditors to file a motion for retention of notice and/or claims agents within seven days of their petition date. Local Rule 2002-1(f) authorizes such notice and/or claims agent to, among other things: (i) prepare and serve certain notices required in the case; (ii) maintain copies of all proofs of claim and proofs of interest filed in the case; (iii) maintain the official claims register; and (iv) maintain an up-to-date mailing list of all creditors and all entities who have filed proofs of claim or interest and/or requests for notices in the case.

*The Need for a Claims Agent*

13. The large number of creditors and other parties in interest involved in the Debtors' chapter 11 cases may impose heavy administrative and other burdens upon the Court

and the Office of the Clerk of this Court (the "Clerk's Office"). To relieve the Court and the Clerk's Office of these burdens, the Debtors propose to appoint KCC as claims, noticing and balloting agent in these chapter 11 cases.

*Qualifications of KCC*

14. KCC is a bankruptcy administrator that specializes in providing comprehensive chapter 11 services, including noticing, claims processing, solicitation, ballot tabulation and other administrative services critical to the effective administration of chapter 11 cases. The Debtors believe that KCC's assistance will expedite service of notices, streamline the claims administration process and permit the Debtors to focus efficiently on their reorganization efforts. The Debtors believe that KCC is well-qualified to provide such services. As set forth in the affidavit of Albert Kass, the Vice President of Corporate Restructuring Services of KCC (the "Kass Affidavit"), a copy of which is attached hereto as Exhibit A, KCC has provided identical or substantially similar services in other chapter 11 cases in this district. *See, e.g.,* In re *Ultimate Acquisition Partners, LP*, Case No. 11-10245 (Bankr. D. Del. Jan. 26, 2011); *In re Javo Beverage Co., Inc.*, Case No. 11-10212 (Bankr. D. Del. Jan. 24, 2011); *In re Appleseed's Intermediate Holdings LLC*, Case No. 11-10160 (Bankr. D. Del. Jan. 19, 2011); *In re Constar Int'l Inc.*, Case No. 11-10109 (Bankr. D. Del. Jan. 11, 2011); *In re Local Insight Media Holdings, Inc., et al.*, Case No. 10-13677 (Bankr. D. Del. Nov. 17, 2010); *In re Claim Jumper Rest., LLC, et al.*, Case No. 10-12819 (Bankr. D. Del. Sept. 10, 2010); *In re Caribbean Petroleum Corp., et al.*, Case No. 10-12553 (Bankr. D. Del. Aug. 12, 2010); *In re Am. Safety Razor Co., LLC, et al.*, Case No. 10-12351 (Bankr. D. Del. July 28, 2010); *In re OTC Holdings Corp.*, Case No. 10-12636 (Bankr. D. Del. Aug. 25, 2010); *In re Magic Brands, LLC, et al.*, Case No. 10-11310 (Bankr. D. Del. Apr. 21, 2010); *In re Regent Commc'n, Inc.*, Case No. 10-10632 (Bankr. D. Del. Mar. 1, 2010); *In re Int'l Aluminum Corp.*, Case No. 10-10003 (Bankr. D. Del. 2010); *In re*

7

*Fairfield Residential, LLC, et al.*, Case No. 09-14378 (BLS) (Bankr. D. Del. Dec. 15, 2009); *In re Eddie Bauer Holdings, Inc.*, Case No. 09-12099 (MFW) (Bankr. D. Del. June 18, 2009); *In re Premier Int'l Holdings Inc.*, Case no. 09-12019 (CSS) (Bankr. D. Del. June 15, 2009); *In re Visteon*, Case No. 09-11786 (CSS) (Bankr. D. Del. May 29, 2009); *In re Washington Mutual, Inc., et al.*, Case No. 08-12229 (Bankr. D. Del. 2008); *In re Motor Coach Indus. Int'l, Inc., et al.*, Case No. 08-12136 (Bankr. D. Del. 2008); *In re Boscov's, Inc., et al.*, Case No. 08-11637 (Bankr. D. Del. 2008); ; *In re MSR Resort Golf Course LLC, et al.*, Case No. 11-10372 (Bankr. S.D.N.Y. Feb. 1, 2011); *In re Vertis Holdings, Inc., et al.*, Case No. 10-16170 (Bankr. S.D.N.Y. Nov. 17, 2010); *In re American Media, Inc., et al.*, Case No. 10-16140 (Bankr. S.D.N.Y. Nov. 17, 2010); *In re Loehmann's Holdings, Inc., et al.*, Case No. 10-16077 (Bankr. S.D.N.Y. Nov. 15, 2010); *In re Ambac Fin. Group, Inc.*, Case No. 10-15973 (Bankr. S.D.N.Y. Nov. 8, 2010); *In re Black Gaming, LLC*, No. 10-13301 (Bankr. D. Nev. Mar. 5, 2010); *In re Movie Gallery, Inc.*, No. 10-30696 (Bankr. E.D. Va. Feb. 3, 2010); *In re Fleetwood Enters., Inc.*, No. 09-14254 (Bankr. C.D. Cal. Mar. 20, 2009).[5]

***The Debtors' Agreement with KCC***

15. Pursuant to an agreement for services between KCC and the Debtors dated as of February 24, 2011, a copy of which is attached hereto as Exhibit B (such agreement, together with all amendments, modifications, renewals thereof and all documents ancillary thereto or otherwise entered into in connection therewith, are collectively referred to herein as the "Services Agreement"), KCC will perform various noticing, claims management and reconciliation, plan solicitation, balloting, disbursement and other services (collectively, the

---

[5] Because of the voluminous nature of the orders cited herein, they are not attached to the Motion. Copies of these orders, however, are available on request of the Debtors' proposed counsel.

EAST\44271750.4

"Services"), if necessary, at the request of the Debtors or the Clerk's Office. Such Services may include, for instance:

 a. Preparing and serving required notices in the chapter 11 cases, including:

  i. notice of the commencement of the chapter 11 cases and the initial meeting of creditors under Bankruptcy Code § 341(a);
  ii. a notice of the claims bar date;
  iii. notices of objections to claims and objections to transfers of claims;
  iv. notices of hearings on motions filed by the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee");
  v. notices of transfers of claims;
  vi. notices of any hearings on a disclosure statement and confirmation of the Debtors' plan or plans of reorganization; and
  vii. such other miscellaneous notices as the Debtors or Court may deem necessary or appropriate for an orderly administration of the chapter 11 cases.

 b. Within seven days after the mailing of a particular notice, filing with the Court a copy of the notice served with a certificate of service attached indicating the name and complete address of each party served.

 c. Receiving, examining, and maintaining copies of all proofs of claim and proofs of interest filed in the chapter 11 cases.

 d. Maintaining official claims registers in the chapter 11 cases by docketing all proofs of claim and proofs of interest in a claims database that includes the following information for each such claim or interest asserted:

  i. the name and address of the claimant or interest holder and any agent thereof, if the proof of claim or proof of interest was filed by an agent;
  ii. the date the proof of claim or proof of interest was received by KCC and/or the Court;
  iii. the claim number assigned to the proof of claim or proof of interest;
  iv. the asserted amount and classification of the claim; and
  v. the applicable Debtor against which the claim or interest is asserted.

 e. Recording all transfers of claims pursuant to Bankruptcy Rule 3001(e).

 f. Revising the creditor matrix after the objection period expires.

 g. Recording any order entered by the Court which may affect a claim by making a notation on the claims register.

 h. Monitoring the Court's docket for any claims related pleading filed and making

9

EAST\44271750.4

necessary notations on the claims register.

i. Maintaining a separate claims register for each debtor if the chapter 11 cases are jointly administered.

j. Filing a quarterly updated claims register with the Court in alphabetical and numerical order. If there was no claims activity, a certification of no claim activity may be filed.

k. Maintaining an up-to-date mailing list of all creditors and all entities who have filed proofs of claim or proofs of interest and/or request for notices in the case and providing such list to the Court or any interested party upon request (within 48 hours).

l. Providing access to the public for examination of claims and the claims register at no charge.

m. Forwarding all claims, an updated claims register and an updated mailing list to the Court within 10 days of entry of an order converting a case or within 30 days of entry of a final decree. The claims register and mailing list will be provided in both paper and on disc and in alphabetical and numerical order. The mailing list disc will be in .txt format.

n. Implementing necessary security measures to ensure the completeness and integrity of the claims registers.

o. Complying with applicable federal, state, municipal, and local statutes, ordinances, rules, regulations, orders and other requirements.

p. Providing temporary employees to process claims as necessary.

q. Promptly complying with such further conditions and requirements as the Clerk's Office or the Court may at any time prescribe.

r. Providing such other claims processing, noticing, and administrative services as may be requested from time to time by the Debtors.

16. In addition to the foregoing, KCC will assist with, among other things: (a) maintaining and updating the master mailing lists of creditors; (b) to the extent necessary, gathering data in conjunction with the preparation of the Debtors' schedules of assets and liabilities and statements of financial affairs; (c) tracking and administration of claims; and (d) performing other administrative tasks pertaining to the administration of the chapter 11 cases, as

may be requested by the Debtors or the Clerk's Office. KCC will follow the notice and claim procedures that conform to the guidelines promulgated by the Clerk of the Court and the Judicial Conference of the United States and as may be entered by the Court's order.

17. KCC also has agreed to provide noticing services in these cases to the U.S. Trustee.

*Compensation*

18. The fees to be charged by KCC in connection with these chapter 11 cases are set forth in the Services Agreement. The Debtors propose that the cost of KCC's services be paid from the Debtors' estates as provided by 28 U.S.C. § 156(c) and 11 U.S.C. § 503(b)(1)(A). The Debtors respectfully submit that KCC's rates for its services in connection with the notice, claims processing and solicitation services are competitive and comparable to the rates charged by their competitors for similar services.

19. Furthermore, the Debtors respectfully submit that the fees and expenses incurred by KCC are administrative in nature and, therefore, should not be subject to the standard fee application procedures for professionals. Specifically, the Debtors requests authorization to compensate KCC in accordance with the terms and conditions set forth in the Services Agreement, upon KCC's submission to the Debtors of invoices summarizing in reasonable detail the services rendered and expenses incurred in connection with services provided by KCC to the Debtors. Subject to the terms of the Order approving this Application, the Debtors have provided KCC with a security retainer in the amount of $25,000.

*KCC's Disinterestedness and Representation*

20. As an administrative agent and adjunct to the Court, the Debtors do not believe that KCC is a "professional" whose retention is subject to approval under section 327 of the Bankruptcy Code or whose compensation is subject to approval of the Court under sections 330

11

and 331 of the Bankruptcy Code. The Debtors nonetheless requested that KCC conduct a conflicts check to determine whether it meets the "disinterestedness" standard of section 327(a) of the Bankruptcy Code. The results of this conflicts check are set forth in the Kass Affidavit.

21. In reliance on the Kass Affidavit, the Debtors believe that KCC neither holds nor represents an interest materially adverse to the Debtors' estates nor has a connection to the Debtors, their creditors or their related parties with respect to any matter for which KCC will be employed. KCC may have relationships with certain of the Debtors' creditors as vendors or in connection with cases in which KCC serves or has served in a neutral capacity as claims and noticing agent for another chapter 11 debtor.

22. Further, to the best of the Debtors' knowledge and except as disclosed in the Kass Affidavit, KCC neither holds nor represents any interest materially adverse to the Debtors' estates in connection with any matter on which it would be employed and that it is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, 11 U.S.C. §§ 101–1532 as referred to in section 327(a) of the Bankruptcy Code. As part of its retention, KCC represents, among other things, that:

    (a)    KCC will not consider itself employed by the United States government and will not seek any compensation from the United States government in its capacity as the Claims Agent in these chapter 11 cases;

    (b)    by accepting employment in these chapter 11 cases, KCC waives any rights to receive compensation from the United States government;

    (c)    in its capacity as the Claims Agent in these chapter 11 cases, KCC will not be an agent of the United States government and will not act on behalf of the United States government; and

    (d)    KCC will not employ employees of the Debtors in connection with its work as the Claims Agent in these chapter 11 cases.

EAST\44271750.4

23. Should KCC discover any new relevant facts or relationships bearing on the matters described herein during the period of its retention, KCC will use reasonable efforts to file promptly a supplemental affidavit.

24. Because of the size of the Debtors' cases, the number of creditors and parties in interest and KCC's experience, the Debtors believe that the appointment of KCC as the Claims Agent is appropriate and in the best interests of the Debtors' estates.

***Approval of the Form and Manner of Notice of the Initial Meeting of Creditors***

25. The Debtors further request authority for KCC to serve a notice of the commencement of these chapter 11 cases (the "Case Commencement Notice") and the initial meeting of creditors under section 341(a) of the Bankruptcy Code (the "Section 341 Meeting") substantially in the form of Official Bankruptcy Form 9F (for chapter 11 cases), subject to revisions agreed to by the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee"). The Case Commencement Notice would be served by regular mail, postage prepaid, on those entities entitled to receive such notice pursuant to Bankruptcy Rule 2002 no later than five business days after the Debtors receive notice from the U.S. Trustee of the time and place of the Section 341 Meeting. The Debtors hereby request that the Court approve the foregoing as providing sufficient notice of the commencement of these chapter 11 cases and the Section 341 Meeting. In an effort to reduce the administrative expenses related to KCC's retention, the Debtors seek authorization to pay KCC's fees and expenses without the necessity of KCC filing formal fee applications.

***Approval of Chapter 7 Services***

26. Finally, in the event any of these chapter 11 cases convert to cases under chapter 7 of the Bankruptcy Code, the Debtors further request authority for KCC to continue to be paid by the estates for its services until the claims filed in the chapter 11 cases have been processed

13

completely. If claims agent representation is necessary in the converted chapter 7 case(s), KCC will continue to be paid by the estates in accordance with 28 U.S.C. §156(c) under the terms set out herein.

## Notice

27. Notice of this Motion has been provided to: (a) the Office of the United States Trustee for the District of Delaware, (b) the Debtors' largest unsecured creditors on a consolidated basis, as identified in their chapter 11 petitions, (c) the Trustee, (d) the Special Servicer, and (e) the Master Servicer. As this Motion is seeking first-day relief, notice of this Motion and any order entered hereon will be served on all parties required by Local Rule 9013-1(m). Due to the urgency of the circumstances surrounding this Motion and the nature of the relief herein, the Debtors respectfully submit that no further notice of this Motion is required.

*[remainder of page intentionally left blank]*

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as Exhibit C: (i) authorizing the Debtors to employ and retain KCC as their notice, claims and balloting agent effective as of the Petition Date, (ii) approving the terms of the Services Agreement and (iii) granting such other and further relief as the Court may deem proper.

Dated: March 7, 2011
Wilmington, Delaware

Respectfully submitted,

_/s/ Stuart M. Brown_
Stuart M. Brown (DE 4050)
Michelle E. Marino (DE 4577)
EDWARDS ANGELL PALMER & DODGE LLP
919 N. Market Street, Suite 1500
Wilmington, Delaware 19801
Telephone: (302) 777-7770
Facsimile: (302) 777-7263
Email: sbrown@eapdlaw.com
mmarino@eapdlaw.com

-and-

Richard A. Chesley (IL 6240877)
Kimberly D. Newmarch (DE 4340)
DLA PIPER LLP (US)
203 N. LaSalle Street, Suite 1900
Chicago, Illinois 60601
Telephone: (312) 368-4000
Facsimile: (312) 236-7516
Email: richard.chesley@dlapiper.com
kim.newmarch@dlapiper.com

PROPOSED ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION