# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| PJ Finance Company, LLC, *et al.*[1] | Case No. 11-10688 (BLS) |
| Debtors. | (Jointly Administered) |
| | Hearing Date: April 6, 2011 at 9:00 a.m. |
| | Objection Deadline: March 30, 2011 at 4:00 p.m. |

## APPLICATION OF DEBTORS AND DEBTORS IN POSSESSION PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 2014(a) FOR ORDER UNDER SECTION 327(a) OF THE BANKRUPTCY CODE AUTHORIZING THE EMPLOYMENT AND RETENTION OF EDWARDS ANGELL PALMER & DODGE LLP AS COUNSEL EFFECTIVE AS OF THE PETITION DATE

PJ Finance Company, LLC, PJ Holding Company Manager, LLC, PJ Holding Company, LLC, Alliance PJRT GP, Inc., Alliance PJRT Limited Partnership, Alliance PJWE GP, L.L.C., and Alliance PJWE Limited Partnership (collectively, the "Company"), as debtors and debtors in possession (collectively, the "Debtors") hereby submit this Application Pursuant to Federal Rule of Bankruptcy Procedure 2014(a) for Order Under Section 327(a) of the Bankruptcy Code Authorizing the Employment and Retention of Edwards Angell Palmer & Dodge LLP ("EAPD") as Co-Counsel and Local Delaware Counsel for the Debtors (the "Application"), effective *nunc pro tunc* as of March 7, 2011 (the "Petition Date"). The facts and circumstances supporting this Application are set forth herein and in (a) the Affidavit of Stuart M. Brown (the "Brown

---

[1] The Debtors are the following seven entities (the last four digits of their respective taxpayer identification numbers, if any, follow in parentheses): PJ Finance Company, LLC (8895), PJ Holding Company Manager, LLC, (8895), PJ Holding Company, LLC (8895), Alliance PJRT GP, Inc. (1787), Alliance PJWE GP, L.L.C. (8133), Alliance PJRT Limited Partnership (1789), and Alliance PJWE Limited Partnership (8198). The mailing address of each of the Debtors solely for purposes of notices and communications is 1200 North Ashland Avenue, Suite 600, Chicago, Illinois.

WLM 525283.2

Affidavit"), which is annexed hereto as Exhibit A and incorporated herein by reference, (b) EAPD's Disclosure of Compensation (the "Disclosure of Compensation"), which is annexed hereto as Exhibit B and incorporated herein by reference, and (c) the statements contained in the Declaration of Michael Husman in Support of Chapter 11 Petitions and First Day Motions filed on the Petition Date [D.I. 3]. In support of this Application, the Debtors respectfully represent as follows:

## JURISDICTION

1. The Court has jurisdiction over the Debtors, property of their estates and this matter under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue is proper in this district under 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the relief requested herein are sections 327(a), 328, 330 and 331 of title 11 of the United States Code (as amended, the "Bankruptcy Code") and Rules 2002, 2014 and 2016(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

3. On the Petition Date, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are in possession of their properties and continuing to operate their business as debtors and debtors in possession under sections 1107 and 1108 of the Bankruptcy Code. No trustee or official committee of unsecured creditors has been appointed in these cases.

4. On March 8, 2011, the Court conducted a hearing on various routine "first day" matters, including the Debtors' motion seeking joint administration. The Court entered the order directing that the Debtors' cases be jointly administered [D.I. 16].

5.  The Debtors are real estate companies engaged in the acquisition, ownership, operation, management, leasing, financing, mortgaging and selling of 32 apartment communities comprising 9,504 units located in the states of Arizona, Florida, Georgia, Tennessee and Texas (the "Properties" and collectively, the "Portfolio").

6.  The day-to-day operations of the Portfolio are managed by a third-party, WestCorp Management Group One, Inc. ("WestCorp"), pursuant to Management Agreements dated November 9, 2006 (the "Management Agreements") and a Sub-Management Agreement dated July 1, 2008.

7.  On November 9, 2006, Alliance PJRT Limited Partnership and Alliance PJWE Limited Partnerships (collectively, the "Partnerships") entered into an Amended and Restated Loan Agreement[2] with Column Financial Inc. (along with its successors and assigns from time to time, the "Originating Lender"), whereby the Originating Lender agreed to make a loan to the Partnerships in the principal amount of $475,000,000 with a maturity date of November 11, 2016 (as amended, restated, supplemented or otherwise modified from time to time, the "Loan" or the "Prepetition Loan Agreement" and together with the other documents, instruments, notices and recordings executed, delivered and recorded, collectively, the "Prepetition Loan Documents").[3]

8.  On May 1, 2007, the Originating Lender sold the Prepetition Loan Documents to Credit Suisse First Boston Mortgage Securities Corp. ("Credit Suisse").

---

[2] At that time, the Portfolio was also subject to a senior mezzanine loan and a junior mezzanine loan, but as a result of the senior mezzanine lender's exercise of its remedies under the Uniform Commercial Code, it conducted a sale on September 4, 2009 of the pledged equity interests of the Debtors, thereby taking such interests in full satisfaction of the senior mezzanine debt.

[3] The Debtors have not completed their investigation respecting the extent, validity, priority, perfection and avoidability of the claims and liens evidenced by the Prepetition Loan Documents and reserve all rights. Nothing set forth herein shall be construed as a waiver or admission against interest on the part of the Debtors with respect thereto.

Credit Suisse purchased the Loan in order to include it in a portfolio of loans that Credit Suisse securitized by the issuance of commercial mortgage-backed securities ("CMBS"). Pursuant to that certain Pooling and Servicing Agreement, dated as of May 1, 2007 (the "Pooling and Servicing Agreement"), Credit Suisse contributed the Prepetition Loan Documents to a trust. Under the Pooling and Servicing Agreement, Bank of America, N.A. acts as successor trustee (the "Trustee" or the "Prepetition Lender")[4] and caused the issuance and sale of mortgage pass-through certificates in multiple classes denoted the Credit Suisse Commercial Mortgage Pass-Through Certificates, Series 2007-C2. Wachovia Bank, N.A. acts as the master servicer (the "Master Servicer") and Torchlight Loan Services, LLC acts as special servicer (the "Special Servicer"). Pursuant to the Prepetition Loan Documents, the Loan is secured by mortgages and deeds of trust encumbering all of the Properties in favor of the Trustee. The Partnerships are currently indebted on the Loan in the amount of $475 million plus accrued and unpaid interest, costs and fees.

9. The Prepetition Loan Agreement is administered through a lockbox and all rents from operations of the Properties flow through the lockbox account (the "Lockbox"). After being swept daily by the Master Servicer, the rents are then distributed once a month to, and for the benefit of, the Debtors pursuant to a "waterfall" mechanism described below. As of the Petition Date, the amounts received by the Debtors through the "waterfall" are insufficient to sustain the Debtors' operations, as the Debtors continue to experience an ongoing monthly operating expense shortfall.

---

[4] On July 26, 2010, a UCC-3 Financing Statement Amendment was filed with the Delaware Department of State, stating that Wells Fargo Bank, N.A. assigned its right, title and interest as trustee to Bank of America, N.A.

10. As of the date hereof, the Partnerships have trade payables outstanding in an amount of approximately $4.4 million for expenses incurred in the ordinary course of operating the Properties.

11. Owing to a combination of internal problems among the Debtors' previous shareholders and management team, the severe economic recession and the current overleveraged debt structure of the Debtors, the Portfolio currently yields insufficient rents to service both its suffocating monthly debt service obligations and those obligations related to its day to day operations. Indeed, the combination of the severe economic recession and the lasting effects of the recent decline in the multi-family real estate market has resulted in the aggregate value of the Properties to be dramatically less than the amount of the Debtors' outstanding secured debt under the Prepetition Loan Agreement.

12. Pre-petition, all of the Debtors' cash was swept into a blocked account and after the Master Servicer funds amounts for, among other things, (i) a tax and insurance reserve, (ii) interest due on the Loan (based on the extent of the Loan not the value of the Portfolio) and (iii) a capital expenditure/repair reserve, the Debtors receive the balance, which is insufficient to pay the monthly operating expenses of the Debtors, including for payment of fees and expenses owing to the Manager and the Debtors' obligations related to their day to day operations. The Debtors believe that the funding of certain of such reserves is excessive. Due to the large percentage of the Debtors' cash that was funded pre-petition in payment of Loan obligations and reserves through the "waterfall" mechanism, the Debtors have insufficient cash available to pay obligations for the Debtors' day to day operations as they come due. As a result of this insufficient cash

flow, the Debtors have been unable to relet units as leases expire or vacancies otherwise occur in the ordinary course, or to convert vacated "off-line" rental units into lease-ready units, and make repairs and improvements on other units and in common areas. Currently, over 1,700 of the total number of units are unable to be rented as there is insufficient cash available to invest in these units to return them to move-in condition and, with the upcoming notices to vacate in the next thirty days, this number will continue to increase to more than 20% of the Debtors' total units, as the Debtors do not currently have the funds to repair these vacated units. This grim reality will result in a further decline in the Debtors' revenue and create added stress on their ability to meet their obligations.

13. At the hearing on March 8, 2011, the Court also entered the Interim Order (I) Authorizing the Use of Lenders' Cash Collateral, (II) Granting Adequate Protection Pursuant to 11 U.S.C. §§ 361 and 363 and (III) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001(b). [D.I 21]

14. In order to ensure that the Properties do not deteriorate further and thus cause a further decline in revenue and value, the Debtors require a significant cash infusion and restructuring of the Loan in order to continue to operate the Properties. Working with their advisors, the Debtors have developed a comprehensive business plan that addresses the Debtors' cash flow challenges and have attempted to introduce their plan to both the Special Servicer and the Master Servicer. A critical element of this plan is the infusion of new equity capital in the Debtors' business, and the Debtors have worked diligently to attract a third-party investor, Gaia Real Estate Investments LLC ("Gaia"), to invest new equity capital into the Debtors. Unfortunately, both the Master

- 6 -

WLM 525283.2

Servicer and the Special Servicer have refused to engage in any meaningful discussions related to the Debtors' deteriorating financial condition or the Debtors' strategy to develop a consensual solution to address those problems. Accordingly, the Debtors have been left with no choice, but to file petitions under Chapter 11 of the Bankruptcy Code.

## RELIEF REQUESTED

15. By this Application, the Debtors respectfully request that this Court enter an order authorizing the Debtors to employ and retain EAPD as their attorneys in these cases to represent the Debtors in all aspects of their reorganization, as of the Petition Date, pursuant to section 327(a) of the Bankruptcy Code.

16. The Debtors seek to retain EAPD as their Co-Counsel and Local Delaware Counsel because of the firm's familiarity with the Debtors and their businesses and EAPD's general experience and knowledge in the field of debtors' and creditors' rights and business reorganizations under Chapter 11 of the Bankruptcy Code; its expertise, experience and knowledge practicing before this Court; its proximity to this Court; and its ability to respond quickly to emergency hearings and other emergency matters in this Court. The appearance of EAPD before this Court for the applications, motions and other matters in these chapter 11 cases will be efficient and cost effective for the Debtors' estates. The Debtors believe that EAPD is both well-qualified and uniquely able to represent it as Co-Counsel and Local Delaware Counsel in these cases in an efficient and timely manner.

17. In connection with various prepetition matters, EAPD has become familiar with the Debtors' businesses and operations. Thus, the Debtors desire that EAPD continue to represent them as Co-Counsel and Local Delaware Counsel in connection

with these cases. The Debtors believe that EAPD's employment is in the best interest of the Debtors, their estates and creditors.

## EAPD DOES NOT HOLD OR REPRESENT ANY ADVERSE INTEREST

18. EAPD has completed a conflicts check that compares the following parties in interest identified by the Debtors: (a) the Debtors; (b) current and former directors and officers of the Debtors; (c) the largest unsecured creditors; (d) lenders; (e) equity investors; (f) beneficiaries of letters of credit; (g) lienholders; (h) holders of bonds; (i) utilities; (j) insurance carriers; (k) parties with litigation with the Debtors; (l) landlords of the Debtors; (m) significant former shareholders; and (n) counterparties to recent significant asset dispositions, against a list of EAPD's current and former engagements, clients and related adverse parties.

19. To the best of the Debtors' knowledge, based upon the Brown Affidavit and except as set forth herein and therein, EAPD does not hold or represent any interest adverse to the Debtors or their Chapter 11 estates, their creditors, or any other party with an actual or potential conflict in this case. EAPD may represent or may have represented certain creditors or other parties-in-interest of the Debtors' estates in matters unrelated to the Debtors or these cases. Further, EAPD is a large firm with an international practice and may represent or may have represented certain of the Debtors' creditors (which creditors are currently unknown to EAPD) in matters unrelated to these cases. To the extent that EAPD discovers any such information, EAPD will promptly disclose such information to the Court on notice to creditors and the United States Trustee. EAPD will periodically update its investigation of conflicts and connections and make such additional disclosures as are necessary or appropriate.

- 8 -
WLM 525283.2

20. Except as set forth herein and in the Brown Affidavit, to the best of the Debtors' knowledge, EAPD has not represented the Debtors' creditors, equityholders, or any other parties-in-interest, or their respective attorneys and accountants, the United States Trustee or any person employed in the office of the United States Trustee in any matter relating to the Debtors or their estates. EAPD's representation of the Debtors in connection with prepetition matters is disclosed in the Brown Affidavit. The Debtors submit that EAPD's representation is permissible under section 327 of the Bankruptcy Code and is in the best interests of all creditors of the Debtors' estates.

21. The Debtors desire to retain EAPD under the arrangement set forth in the Brown Affidavit due to the extensive legal services that may be required in these cases, the full nature and extent of which is not known at this time. To the best of the Debtors' knowledge, EAPD does not hold or represent any interest adverse to the Debtors' estates. EAPD is a "disinterested person," as that phrase is defined in section 101(14) of the Bankruptcy Code, and EAPD's employment is necessary and in the best interests of the Debtors and the Debtors' estates.

## COMPENSATION

22. Section 327(a) of the Bankruptcy Code authorizes the employment of a professional person on any reasonable terms and conditions of employment, including on an hourly basis. 11 U.S.C. § 327(a). The Debtors will require EAPD to render extensive legal services, the cost of which cannot be estimated. Subject to this Court's approval, and in accordance with sections 330 and 331 of the Bankruptcy Code, the applicable Bankruptcy Rules, the Local Rules, the United States Trustee Guidelines, and the rules of any other procedures that may be fixed by this Court, the Debtors request that EAPD be

compensated on an hourly basis, plus reimbursement of the actual and necessary expenses EAPD incurs, in accordance with the ordinary and customary rates which are in effect on the date the services are rendered, including, but not limited to, photocopies, word processing, facsimiles, courier service, computer assisted research, docket and court filing fees, telecommunications, travel, court reporting charges, and any other incidental costs advanced by the firm specifically for these matters, at the rates commonly charged for such costs to other EAPD clients. EAPD will maintain detailed, contemporaneous records of time and any actual and necessary expenses incurred in connection with the rendering of the legal services described herein by category and nature of the services rendered.

23. EAPD has advised the Debtors that the current hourly rates applicable to the principal attorneys and paralegals presently designated to represent the Debtors are:

| | |
|---|---|
| Stuart M. Brown, Partner | $650 per hour |
| Michelle E. Marino, Associate | $400 per hour |
| Carolyn B. Fox, Paralegal | $220 per hour |
| Charlotte A. Neuberger, Paralegal | $185 per hour |

24. Other attorneys and paralegals may from time to time serve the Debtors in connection with the matters described herein. Generally, EAPD's hourly rates are in the following ranges:

| Title | Rate per Hour |
|---|---|
| Partners | $345 to $1000 |
| Counsel | $275 to $700 |
| Associates | $135 to $505 |

Legal Assistants/Paralegals        $40 to $315

The Debtors understand that the hourly rates set forth above are subject to periodic adjustments to reflect economic and other conditions.

## COMPENSATION RECEIVED BY EAPD FROM THE DEBTORS

25. The Debtors engaged EAPD in February 2011 to assist them with their restructuring and preparation for a possible Chapter 11 filing. Prior thereto, EAPD did not represent the Debtors. Within ninety (90) days of the Petition Date, EAPD received an advanced paid fee retainer from the Debtors of $10,000 (the "Retainer") on February 25, 2011 in advance for actual and estimated professional fees and disbursements to be incurred through the Petition Date. As of the Petition Date, the Retainer was equal to $0.

26. Any amounts due for pre-petition fees and disbursements were paid from the Retainer. Any amounts due for pre-petition fees and disbursements in excess of the Retainer were incurred by EAPD.

27. Other than as set forth herein, there is no proposed arrangement to compensate EAPD.

## SCOPE OF SERVICES

28. The professional services that EAPD will render to the Debtors may include, but shall not be limited to, the following:

      a. advise the Debtors with respect to general corporate matters;

      b. advise the Debtors with respect to tax matters;

      c. advise the Debtors with respect to labor and employment matters;

      d. advise the Debtors with respect to intellectual property, patent and trademark, and patent prosecution and defense matters;

      e. advise the Debtors with respect to securities matters;

- 11 -

WLM 525283.2

f. advise the Debtors with respect to environmental matters;

g. advise the Debtors with respect to litigation and assist Debtors in management and coordination of other litigation counsel;

h. advise the Debtors with respect to their powers and duties as debtors in possession in the continued management and operation of their businesses and properties;

i. attend meetings and negotiate with representatives of creditors and other parties in interest;

j. take all necessary action to protect and preserve the Debtors' estates, including prosecuting actions on the Debtors' behalf, defending any action commenced against the Debtors and representing the Debtors' interests in negotiations concerning all litigation in which the Debtors are involved, including, but not limited to, objections to claims filed against the estates;

k. prepare, on the Debtors' behalf, all motions, applications, answers, orders, reports, and papers necessary to the administration of the estates;

l. negotiate and prepare on the Debtors' behalf a plan of reorganization, disclosure statement, and all related agreements and/or documents, and take any necessary action on behalf of the Debtors to obtain confirmation of such plan;

m. represent the Debtors in connection with obtaining post-petition financing and use of cash collateral;

n. advise the Debtors in connection with any potential sale of assets, or recapitalization or restructuring;

o. appear before this Court, any appellate courts and protect the interests of the Debtors' estates before those Courts; and

q. perform all other necessary legal services and provide all other necessary legal advice to the Debtors in connection with the Chapter 11 cases.

## NOTICE AND PRIOR APPLICATION

29. Notice of this Application has been provided to: (a) the Office of the United States Trustee for the District of Delaware, (b) the Debtors' largest unsecured creditors on a consolidated basis, as identified in their chapter 11 petitions, (c) the

Trustee, (d) the Special Servicer and (e) the Master Servicer. Due to the urgency of the circumstances surrounding this Application and the nature of the relief herein, the Debtors respectfully submit that no further notice of this Application is required.

30.   No previous Application for the relief sought herein has been made to this or any other court.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter a final order in the form annexed hereto as Exhibit C (a) granting this Application, (b) authorizing the Debtors to retain and employ EAPD as its Co-Counsel and Local Delaware Counsel in these chapter 11 cases pursuant to section 327(a) of the Bankruptcy Code effective as of the Petition Date and (c) granting such other and further relief as this Court may deem just and proper.

Dated: March  , 2011

Respectfully submitted,

PJ FINANCE COMPANY, LLC
PJ HOLDING COMPANY MANAGER, LLC
PJ HOLDING COMPANY, LLC
ALLIANCE PJRT GP, INC.
ALLIANCE PJWE GP, L.L.C.
ALLIANCE PJRT LIMITED PARTNERSHIP
ALLIANCE PJWE LIMITED PARTNERSHIP

By: _____
Michael Husman
Authorized Signatory