# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------x
In re:                                          : Chapter 11
                                                :
PJ Finance Company, LLC, *et al.*,              : Case No. 11-10688 (BLS)
                                                :
                    Debtors.                    : Jointly Administered
                                                :
                                                : Re: Dkt. No. 5
---------------------------------------------------------x

## OBJECTION OF TORCHLIGHT LOAN SERVICES, LLC TO MOTION OF DEBTORS AND DEBTORS IN POSSESSION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE USE OF LENDERS' CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION PURSUANT TO 11 U.S.C. §§ 361 AND 363, AND (III) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001(b)

Torchlight Loan Services, LLC, f/k/a ING Clarion Capital Loan Services, LLC, successor by appointment to ING Clarion Partners, LLC ("Torchlight"), as Special Servicer for U.S. Bank National Association, as successor trustee for the registered holders of Credit Suisse First Boston Mortgage Securities Corp., Commercial Pass-Through Certificates, Series 2007-C2, hereby objects (the "Objection") to the Motion of the Debtors and Debtors In Possession (collectively, the "Debtors") For Entry of Interim and Final Orders (I) Authorizing the Use of Lenders' Cash Collateral, (II) Granting Adequate Protection Pursuant to 11 U.S.C. §§ 361 and 363, and (III) Scheduling a Final Hearing Pursuant to Bankruptcy

Rule 4001(b) (the "Cash Collateral Motion")[1] [Docket No. 5], and in support thereof respectfully states:

## I. Introduction

1. Per the Debtors' own pleadings, over the past four and a half years, it would appear that more than $200 million in value of the Debtors' assets has evaporated. Alliance PJRT Limited Partnership and Alliance PJWE Limited Partnerships (collectively, the "Borrowers")[2] are affiliated not only with the parent-Debtors but also with WestCorp, the Properties' manager.

2. The Cash Collateral Motion states that on September 4, 2009, the senior mezzanine lender foreclosed on the Borrowers' pledged equity interests, taking such pledged interests in full satisfaction of the senior mezzanine debt. *See* Cash Collateral Motion, ¶5 at n.2. Yet, the Debtors omit the fact that initially there was an attempted transfer (the "Purported Transfer") of the senior mezzanine loan to the Borrowers' affiliates, the parent-Debtors. This Purported Transfer was a null and void transaction because it violated Section 4(e)(iii) of the Intercreditor Agreement, dated November 9, 2006 (the "Intercreditor

---

[1] All terms not otherwise defined herein shall have the meaning ascribed such terms in the Cash Collateral Motion.

[2] The Borrowers have borrowed $475 million pursuant to that certain Amended and Restated Loan Agreement, dated November 9, 2006 (the "Prepetition Loan Agreement"), which is secured by 32 apartment complexes comprised of 9,504 units in Arizona, Florida, Georgia, Tennessee, and Texas (the "Properties"). The Properties are currently managed by WestCorp Management Group One, Inc. (the "WestCorp") through a Sub-Management Agreement.

Agreement").[3] Regardless, the parent-Debtors exercised their rights as the purported senior mezzanine lender on the pledged equity interests of the Borrowers. This was a blatant equity grab by Equibase Capital Group, LLC ("Equibase"), the parent affiliate of the Debtors.

3. Shortly after, Equibase induced Alliance Residential Management, L.L.C., the Properties' manager, to enter into the Sub-Management Agreement, dated July 1, 2008, with WestCorp, another entity controlled by Equibase. This act also violated the Prepetition Loan Documents, which provide that after a securitization, the Borrower shall have obtained prior written confirmation from applicable Rating Agencies that the change of manager will not cause a downgrade, withdrawal, or qualification of the then current rating when designating a Qualified Manager (as defined in the Prepetition Loan Documents). To date, WestCorp <u>has not</u> been approved as a Qualified Manager. Yet, the Debtors now ask this Court's stamp of approval as they continue their egregious behavior.

4. During the past four and a half years, Equibase has been involved in reducing the equity of the Borrowers, potentially funneling cash from the lockbox account (the "Lockbox"), and causing a significant reduction in the Properties' value. Torchlight asks this Court to deny the Cash Collateral Motion, and prevent the further decline of the Properties. Equibase has received more than enough from these Properties, and this Court must now protect the interests of the creditors.

---

[3] Section 4(e)(iii) of the Intercreditor Agreement provides that "the Second Mezzanine Lender agrees that it shall in no event Transfer any portion of the Second Mezzanine Loan or any interest therein to Borrower or any person which is an Affiliate of Borrower or any successor to Borrower or any assignee of Borrower, and any such Transfer shall be void *ab initio*."

## II. Background

5. On November 9, 2006, the Borrowers entered into the Prepetition Loan Agreement with Column Financial Inc. (the "Originating Lender"), pursuant to which the Originating Lender made a loan of $475 million. The Originating Lender then sold the Prepetition Loan Agreement to Credit Suisse First Boston Mortgage Securities Corp., which it then securitized by issuance of commercial mortgage-backed securities pursuant to that certain Pooling and Servicing Agreement, dated May 1, 2007 (the "Pooling and Servicing Agreement") with U.S. Bank National Association, as the successor trustee (the "Prepetition Lender"). Pursuant to the Pooling and Servicing Agreement, Wells Fargo Bank, N.A. acts as the master servicer and Torchlight acts as the special servicer.

6. On March 7, 2011 (the "Petition Date"), the Debtors filed their voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code (the "Code"). On the Petition Date, the Debtors filed the Cash Collateral Motion, wherein the Debtors sought authority to fund the business and expenses of the Chapter 11 cases pursuant to a limited budget that is provided as Exhibit 1 to the Cash Collateral Motion. Shortly thereafter, on March 8, 2011, this Court entered the *Interim Order (I) Authorizing The Use of Lenders' Cash Collateral, (II) Granting Adequate Protection Pursuant to 11 U.S.C. §§ 361 And 363, And (III) Scheduling A Final Hearing Pursuant to Bankruptcy Rule 4001(b)* [Docket No. 21], approving the Cash Collateral Motion on an interim basis.

7. Pursuant to the Prepetition Loan Agreement, Torchlight asserts a security interest and first lien upon all of the Borrowers' assets, including but not limited to cash, the Properties, rents, revenues, receivables generated by the real estate, and other tangible and

4

intangible property of each Debtor. As of the Petition Date, the Debtors are indebted to the Prepetition Lenders in the amount of $475 million plus accrued and unpaid interest, legal fees, and other fees and charges (the "Indebtedness"). This Indebtedness continues to increase as unpaid principal, interest, legal fees and other fees and charges continue to accrue.

8. The Indebtedness is properly secured and perfected by various documents, including but not limited to, mortgages, deeds of trust, assignments of rents, fixture filings and related documents. Torchlight further asserts that all of the Debtors' cash collateral is secured by valid, properly perfected liens. All of the cash in the Debtors' possession or that will come into the Debtors' possession is also the Prepetition Lender's cash collateral (the "Cash Collateral"), which passes through the Lockbox.

9. In addition to a waterfall mechanism for the payment of debt service and other fees, the Prepetition Loan Agreement provides for certain amounts to be escrowed for insurance and tax reserves.[4,5] These reserves are extremely important for the preservation of the estates and their only valuable asset - - the Properties. The Debtors' request to sacrifice the reserves intimates at the true nature of the Cash Collateral Motion, a desire for the continued funding of management fees to their affiliate WestCorp.

---

[4] *See* Article VII of the Prepetition Loan Agreement.

[5] The Prepetition Loan Agreement requires the Borrower to establish the following reserves: Required Repair Account, Tax and Insurance Escrow Fund, Replacement Reserve Fund, Cash Collateral Reserve Account and Operating Expense and Debt Service Shortfall Reserve Account.

5

RLF1 3910177v.2

## III. Argument

10.     Pursuant to Section 363(c)(2) of the Code, a debtor may not use cash collateral unless:

>   (A) Each entity that has an interest in such cash collateral consents; or
>
>   (B) The court, after notice and a hearing, authorizes such use, . . . in accordance with the provisions of this section.

11 U.S.C. § 363. Torchlight is currently unwilling to consent to the use of its Cash Collateral pursuant to the Budget provided by the Debtors.

11.     Therefore, the Debtors must seek authority to use the Cash Collateral under Section 363(c)(2)(B). In order for the Court to approve the use of cash collateral, the Debtors' must show that Torchlight's interests are adequately protected. *See* 11 U.S.C. § 363(o)(1).

12.     Section 361 of the Code provides:

>   When adequate protection is required under section 362, 363, or 364 of this title of an interest of an entity in property, such adequate protection may be provided by –
>
>   (1)     requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the stay under section 362 of this title, use, sale, or lease under section 363 of this title, or any grant of a lien under section 364 of this title results in a decrease in the value of such entity's interest in such property;
>
>   (2)     providing to such entity an additional or replacement lien to the extent that such stay, use, sale lease, or grant results in a decrease in the value of such entity's interest in such property; or
>
>   (3)     granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

6

The Debtors have not provided sufficient evidence of their ability to provide Torchlight with adequate protection and, therefore, the Cash Collateral Motion must be denied. The Debtors' offer to provide adequate protection is not nearly sufficient to cover any potential diminution in value. Recognizing this, the Debtors offer as adequate protection "**prepetition** and postpetition real and personal, tangible and intangible property and assets, including, without limitation, post-petition leases, the Lockbox and all rents and deposits deposited therein..., and causes of action...and the proceeds and recoveries from the Avoidance Actions," which remain subject to the Carve-Out. (emphasis added) *See* the Cash Collateral Motion, ¶17. As should be evident even to the Debtors, this is clearly not sufficient for purposes of adequate protection. The offer of adequate protection is wholly unreasonable, unsatisfactory, and completely disingenuous since the Debtors have no other secured lender and no unencumbered assets. Since Torchlight already has a lien upon all of the Debtors' Cash Collateral - - as such, any use of the Cash Collateral diminishes Torchlight's interests. Since Torchlight's lien attaches to all post-petition revenue under section 552(b)(2) of the Code, the Debtors have no unencumbered property or assets.

13. Adequate protection must involve more than just a speculative offer of benefit to the secured creditor. *See In re Rocco*, 319 B.R. 411, 419 (Bankr. W.D. Pa. 2005) ("We hold that such a speculative funding source is insufficient to provide adequate protection...The legislative history and case law development suggest that adequate protection requires something more than reliance on a contingent, unliquidated lawsuit"); *In re Ziegler*, 88 B.R. 67 (Bankr. E.D. Pa. 1988) (unliquidated, speculative lawsuit cannot provide adequate protection to a creditor with liens on tangible assets); *In re Martin*, 761

7

F.2d 472, 476 (8th Cir. 1985) (lien on unplanted crops too speculative and cannot support finding of adequate protection); *In re Chicago, Missouri & Western Ry. Co.*, 109 B.R. 308 (N.D. Ill. 1989) (assertion of increase in value of collateral in future of case speculative and insufficient to constitute adequate protection). Here, the Debtors have provided no evidence of increase in value and any statement that the value of the assets will increase over the life of the case is purely speculative. The value of the Properties has been in a steady decline since the date of the Prepetition Loan Agreement, and there has been no showing that this will change under current management.[6] In addition, a replacement lien on collateral that is already encumbered by Torchlight's liens is insufficient to provide adequate protection.

14. Section 552(b)(2) of the Code, provides as follows:

> Except as provided in sections 363, 506(c), 522, 544, 545, 547 and 548 of this title, and notwithstanding section 546(b) of this title, if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to the property of the debtor acquired before the commencement of the case and to amounts paid as rents of such property or the fees, charges, accounts, or other payments for the use or occupancy of the rooms and other public facilities in hotels, motels or other lodging properties, then such security interest extends to such rents and such fees, charges, accounts or other payments acquired by the estate after the commencement of the case to the extent provided in such security agreement, except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.

Pursuant to § 552(b)(2), a creditor with a security interest in a debtor's revenues prepetition continues to have a security interest in the debtor's revenues collected postpetition. *See*

---

[6] The Debtors have plainly stated in their first day filings, the Properties are clearly underwater - - the Prepetition Lenders are only secured in the Properties up to $275,000,000.00 from an initial loan amount of $475,000,000.00. *See List of Creditors Holding The Twenty Largest Unsecured Claims* [Docket No. 1].

8

*Financial Sec. Assurance, Inc. v. Tollman-Hundley Dalton, L.P.*, 74 F.2d 1120, 1124 (11th Cir. 1996). Pursuant to the Prepetition Loan Documents, Torchlight has a lien upon all of the revenue generated by the Properties, and this lien clearly extends to revenue generated postpetition since the only revenue the Debtors are currently generating is based upon occupancy and use of the Properties.

15. There is no doubt that Torchlight's collateral value is diminishing. Specifically, based on the Debtors' own estimation, the value of the assets has diminished almost $200 million since 2006.[7] As set forth on the Debtors' first day filings, the total value of Debtors' assets is substantially less than Torchlight's debt - - Debtors have no equity in the assets and no reasonable likelihood of being able to reorganize and pay its debts. Without any unencumbered revenue, the Debtors have no ability to protect Torchlight's interests as they diminish. Providing adequate protection is mandatory under the Code in order for a court to allow use of cash collateral by the Debtors and, absent a showing of adequate protection, the use of cash collateral must be prohibited. The Debtors have the burden of showing that adequate protection has been provided. Torchlight believes the Debtors have not met this burden.

16. Torchlight is also concerned with the incestuous nature of the Debtors and the Properties' manager, WestCorp. Equibase continues to bleed cash from the Properties in the form of management fees. As highlighted in the Cash Collateral Motion, the Debtors'

---

[7] *See* supra note 6. Torchlight does not concede that the value of the Properties is $275,000,000.00, and nothing herein shall be construed as an agreement or admission as to the current value of the Properties.

proposed budget includes a management fee of $154,168.00 to be paid to a related entity in addition to reimbursed property management fees in the amount of $45,950.00, yet the Debtors propose to stop paying debt service and other fees of the Prepetition Lender. Torchlight believes it is possible to engage a superior property manager for the same cost, who would be properly qualified pursuant to the Prepetition Loan Documents as a Qualified Manager. Torchlight specifically objects to the payment of a management fee to an insider who is not a Qualified Manager under the Prepetition Loan Documents.

17.  Torchlight further objects to the Cash Collateral Motion for the following reasons:

    a.  The Order should include a provision requiring that the Debtors maintain insurance on each of the Properties, and that insurance reserves be maintained in accordance with the terms of the Prepetition Loan Agreement.

    b.  The Order should provide that all loan terms remain in full force and effect, except as may be modified by the Order.

    c.  The Order should compel the Debtors, pursuant to 11 U.S.C. §363 (c)(4), to segregate and account for, by reference to each Property, all cash collateral, including the rents generated from each of the Properties.

    d.  The Order should prohibit the Debtors from commingling revenues from one Property with the revenues of any other Property.

    e.  Subject to review by the official committee in these cases (if appointed), the Order should include an admission of the amount of Prepetition Lender's debt that is due and owing, as well as an admission of the validity of the perfection, priority, and non-avoidability of such liens.

    f.  The Order should provide that no rents or other funds generated from any property or the Debtors' operation of any property be used by the Debtors except for the operating expenses of such Properties. The Order should further provide that the itemized reorganization expenses, as outlined in Exhibit 1 of the Cash Collateral Motion, will not be paid until Torchlight's attorneys fees and costs are paid in full.

g. With respect to the Order's allowance for the Debtors to use cash collateral to fund administrative expenses, the Order should provide that such expenses are subordinate to and may not be paid unless Torchlight is paid in full, including payment of all attorneys fees and costs incurred in connection with Torchlight's enforcement of its rights under its loans.

h. The Order should limit the payment of any management fees or asset management fees to no more than 2.75% of revenue collected from each Property. Notwithstanding the foregoing, the Order should not allow payments to insiders or affiliated non-debtor entities, including management fees to WestCorp.

i. The Order should provide that the Debtors fund any unfunded reserves associated with each Property before any funds are utilized for payment of administrative costs of the Debtors' cases.

j. The Order should prohibit the Debtors from using cash collateral from one Property to fund expenses of any other Property.

k. As adequate protection, the Order should provide that all lease rents should continue to be payable under a lockbox arrangement whereunder Torchlight first satisfies its legal expenses and other costs before remitting the excess to the Debtors solely for use in paying operating expenses of the Properties.

l. As adequate protection, Torchlight should, among other things, be granted (i) a validly perfected replacement lien on all cash collateral generated post-petition, including rents payable to the Debtors under each lease and (ii) to the extent applicable, a superpriority claim pursuant to 11 U.S.C. §507 (b).

m. No payments should be made to a related management company from the Cash Collateral.

n. As adequate protection, the Order should provide for on-going monthly debt service payments to Torchlight from its Cash Collateral.

o. The backup for the "other expense" line item needs to be provided to Torchlight.

p. The Debtors should be required to supply a budget for each Property to Torchlight, the United States Trustee, and the official committee of unsecured creditors (if appointed). Torchlight reserves the right to reject the terms of such budgets once provided. The Order should provide a mechanism for resolution of disputes regarding the budget, including, but not limited to, immediate relief from the automatic stay to the extent a budget agreeable to Torchlight is not agreed upon.

11

q.     The expense reimbursement line item should be described in greater detail and broken down into categories at a minimum. Copies of all invoices and checks should be provided to Torchlight within five (5) business days of receipt by each Debtor so that Torchlight can confirm that the Cash Collateral from each Property is only being expended on that Property.

r.     The Order should provide a detailed description of defaults and remedies available to Torchlight upon an occurrence of an event of default by the Debtors, upon notice to the United States Trustee and the official committee of unsecured creditors (if appointed), including, but not limited to, immediate relief from the automatic stay to foreclose on its collateral.

s.     Nothing in the Order shall limit the rights of Torchlight to seek modification of the automatic stay.

t.     The Order shall provide for the unqualified ability for Torchlight to credit bid for any asset of the Debtors that are subject to their liens, offered at any sale, lease, or other disposition outside the ordinary course of business, including, without limitation, sales occurring pursuant to section 363 of the Code or included as part of any reorganization plan subject to confirmation under section 1129(b)(2)(A)(iii) of the Code.

18.     Torchlight asserts that it has a lien upon all of the Debtors' assets (including post-petition rents) through an absolute assignment of rents to the Prepetition Lender. As such, any use of rent receivables diminishes Torchlight's interests and should not be approved by this Court. Torchlight does not herein waive its right to object to the use of Cash Collateral on the basis that such cash has been absolutely assigned to the Prepetition Lender (and thus is not Cash Collateral) at a Final Hearing. Further, Torchlight hereby expressly reserves the right to supplement this Objection in connection with the Final Hearing on the Motion, including, but not limited to, objecting to future budgets to be provided by the Debtors.

12

## IV. Conclusion

WHEREFORE, Torchlight requests that the Court deny use of Torchlight's cash collateral or condition the Debtors' use of cash collateral as set forth above. Torchlight requests such other and further relief as is just.

Dated: Wilmington, Delaware
March 16, 2011

**RICHARDS, LAYTON & FINGER, P.A.**

_/s/ Paul N. Heath_
Paul N. Heath (Bar No. 3704)
Chun I. Jang (Bar No. 4790)
Robert C. Maddox (Bar No. 5356)
One Rodney Square
920 N. King Street
Wilmington, DE 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701
heath@rlf.com
jang@rlf.com
maddox@rlf.com

--and--

**ANDREWS KURTH LLP**
Monica S. Blacker
1717 Main Street, Suite 3700
Dallas, Texas 75201
Telephone: (214) 659-4400
Facsimile: (214) 659-4401

**COUNSEL FOR TORCHLIGHT LOAN SERVICES LLC**