IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------x
: 
In re : Chapter 11
: 
PJ Finance Company, LLC, *et al.*,[1] : Case No. 11-10688 (BLS)
: 
Debtors. : (Jointly Administered)
: 
: Hearing Date: 5/17/11 at 10:00 a.m. EDT
: Objection Deadline: 4/21/11 at 4:00 p.m. EDT
------------------------------------------------------------x

## MOTION OF THE DEBTORS AND DEBTORS IN POSSESSION FOR ENTRY OF AN ORDER GRANTING EXTENSION OF TIME TO FILE SCHEDULES AND STATEMENTS

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file this motion (the "Motion") for entry of an order, substantially in the form attached hereto as Exhibit A, pursuant to Rule 1007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 1007-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), for entry of an order extending the time within which the Debtors must file their Schedules and Statements (as defined below). In support of the Motion, the Debtors respectfully represent as follows:

---

[1] The Debtors are the following seven entities (the last four digits of their respective taxpayer identification numbers, if any, follow in parentheses): PJ Finance Company, LLC (8895), PJ Holding Company Manager, LLC (8895), PJ Holding Company, LLC (8895), Alliance PJRT GP, Inc. (1787), Alliance PJWE GP, L.L.C. (8133), Alliance PJRT Limited Partnership (1789) and Alliance PJWE Limited Partnership (8198). The mailing address of each of the Debtors solely for purposes of notices and communications is 1200 North Ashland Avenue, Suite 600, Chicago, Illinois 60622.

EAST\44455053.2

## Jurisdiction and Venue

1. The Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue is proper in this district under 28 U.S.C. §§ 1408 and 1409.

## Background

2. On March 7, 2011 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are in possession of their properties and continuing to operate their business as debtors and debtors in possession under sections 1107 and 1108 of the Bankruptcy Code. On March 16, 2011, the Office of the United States Trustee (the "US Trustee") appointed the Official Committee of Unsecured Creditors in these cases (the "Committee"). No trustee has been appointed in these cases.

3. The Debtors are real estate companies engaged in the acquisition, ownership, operation, management, leasing, financing, mortgaging and selling of 32 apartment communities comprising 9,504 units located in the states of Arizona, Florida, Georgia, Tennessee and Texas (the "Properties" and collectively, the "Portfolio").

4. The day-to-day operations of the Portfolio are managed by a third-party, WestCorp Management Group One, Inc. ("WestCorp"), pursuant to Management Agreements dated November 9, 2006 (the "Management Agreements") and a Sub-Management Agreement dated July 1, 2008.

5. On November 9, 2006, Alliance PJRT Limited Partnership and Alliance PJWE Limited Partnerships (collectively, the "Partnerships") entered into an Amended and Restated

Loan Agreement[2] with Column Financial Inc. (along with its successors and assigns from time to time, the "Originating Lender"), whereby the Originating Lender agreed to make a loan to the Partnerships in the principal amount of $475,000,000 with a maturity date of November 11, 2016 (as amended, restated, supplemented or otherwise modified from time to time, the "Loan" or the "Prepetition Loan Agreement" and together with the other documents, instruments, notices and recordings executed, delivered and recorded, collectively, the "Prepetition Loan Documents").[3]

6. On May 1, 2007, the Originating Lender sold the Prepetition Loan Documents to Credit Suisse First Boston Mortgage Securities Corp. ("Credit Suisse"). Credit Suisse purchased the Loan in order to include it in a portfolio of loans that Credit Suisse securitized by the issuance of commercial mortgage-backed securities ("CMBS"). Pursuant to that certain Pooling and Servicing Agreement, dated as of May 1, 2007 (the "Pooling and Servicing Agreement"), Credit Suisse contributed the Prepetition Loan Documents to a trust. Under the Pooling and Servicing Agreement, Bank of America, N.A. acts as successor trustee (the "Trustee" or the "Prepetition Lender")[4] and caused the issuance and sale of mortgage pass-through certificates in multiple classes denoted the Credit Suisse Commercial Mortgage Pass-Through Certificates, Series 2007-C2. Wachovia Bank, N.A. acts as the master servicer (the "Master Servicer") and Torchlight Loan Services, LLC acts as special servicer (the "Special Servicer"). Pursuant to the Prepetition Loan Documents, the Loan is secured by mortgages and deeds of trust encumbering

---

[2] At that time, the Portfolio was also subject to a senior mezzanine loan and a junior mezzanine loan, but as a result of the senior mezzanine lender's exercise of its remedies under the Uniform Commercial Code, it conducted a sale on September 4, 2009 of the pledged equity interests of the Debtors, thereby taking such interests in full satisfaction of the senior mezzanine debt.

[3] The Debtors have not completed their investigation respecting the extent, validity, priority, perfection and avoidability of the claims and liens evidenced by the Prepetition Loan Documents and reserve all rights with respect to the Prepetition Loan Documents. Nothing set forth herein shall be construed as a waiver or admission against interest on the part of the Debtors with respect thereto.

[4] On July 26, 2010, a UCC-3 Financing Statement Amendment was filed with the Delaware Department of State, stating that Wells Fargo Bank, N.A. assigned its right, title and interest as trustee to Bank of America, N.A.

all of the Properties in favor of the Trustee. The Partnerships are currently indebted on the Loan in the amount of $475 million plus accrued and unpaid interest, costs and fees.

7. As of the Petition Date, the Partnerships had trade payables outstanding in an amount of approximately $4.4 million for expenses incurred in the ordinary course of operating the Properties.

8. Owing to a combination of internal problems among the Debtors' previous shareholders and management team, the severe economic recession and the current overleveraged debt structure of the Debtors, the Portfolio currently yields insufficient rents to service both its suffocating monthly debt service obligations and those obligations related to its day to day operations. Indeed, the combination of the severe economic recession and the lasting effects of the recent decline in the multi-family real estate market has resulted in the aggregate value of the Properties to be dramatically less than the amount of the Debtors' outstanding secured debt under the Prepetition Loan Agreement.

9. Prior to the Petition Date, all of the Debtors' cash was swept into a blocked account (the "Lockbox") and once a month after the Master Servicer funded amounts for, among other things, (i) a tax and insurance reserve, (ii) interest due on the Loan and (iii) a capital expenditure/repair reserve, the Debtors received an amount intended for payment of the monthly operating expenses of the Debtors, including for payment of fees and expenses owing to the Manager and the Debtors' obligations related to their day to day operations. Due to the large percentage of the Debtors' cash that was funded pre-petition in payment of Loan obligations and reserves through the "waterfall" mechanism, the Debtors had insufficient cash available to pay obligations for the Debtors' day to day operations as they came due. As a result of this insufficient cash flow, the Debtors were unable to relet units as leases expire or vacancies

otherwise occur in the ordinary course, or to convert vacated "off-line" rental units into lease-ready units, and make repairs and improvements on other units and in common areas. As of the Petition Date, over 1,700 of the total number of units were unable to be rented as there was insufficient cash available to invest in these units to return them to move-in condition and, with the upcoming notices to vacate in the thirty days after the Petition Date, this number was expected to continue to increase to more than 20% of the Debtors' total units, as the Debtors did not currently have the funds to repair these vacated units. This grim reality would have resulted in a further decline in the Debtors' revenue and created added stress on their ability to meet their obligations.

10. In order to ensure that the Properties do not deteriorate further and thus cause a further decline in revenue and value, the Debtors require a significant cash infusion and restructuring of the Loan in order to continue to operate the Properties. Working with their advisors, the Debtors have developed a comprehensive business plan that addresses the Debtors' cash flow challenges and have attempted to introduce their plan to both the Special Servicer and the Master Servicer. A critical element of this plan is the infusion of new equity capital in the Debtors' business, and the Debtors have worked diligently to attract a third-party investor to invest new equity capital into the Debtors. Unfortunately, both the Master Servicer and the Special Servicer refused to engage in any meaningful discussions related to the Debtors' deteriorating financial condition or the Debtors' strategy to develop a consensual solution to address those problems. Accordingly, the Debtors were left with no choice, but to file petitions under Chapter 11 of the Bankruptcy Code.

## Relief Requested

11. Pursuant to Bankruptcy Rules 1007(b) and (c), a chapter 11 debtor must file with its voluntary petition, or within 15 days, schedules of assets and liabilities and a statement of

financial affairs (collectively, the "Schedules and Statements"). Pursuant to Local Rule 1007-1(b), the deadline for filing the Schedules and Statements is automatically extended for an additional 15 days if the debtor has more than 200 creditors and if the petition is accompanied by a list of creditors (the "Creditor List"). Because the Debtors filed the Creditor List on the Petition Date [Docket No. 11], and have more than 200 creditors, Bankruptcy Rule 1007(c) and Local Rule 1007-1(b) require the Debtors to file their Schedules and Statements within 30 days after the Petition Date.

12. Pursuant to Bankruptcy Rule 1007 and Local Rule 1007-1(b), the Debtors respectfully request that the Court extend the date by which the Schedules and Statements must be filed, for approximately 60 days, for a total of approximately 90 days, through and including June 6, 2011. Bankruptcy Rule 1007(c) authorizes the Court to grant an extension of the date by which the Schedules and Statements must be filed "on motion for cause shown." *See also* Del. Bankr. L.R. 1007-1(b) (allowing extensions "for cause").

13. Given the urgency with which the Debtors sought chapter 11 relief and the numerous critical matters that the Debtors' staff must address in the early days of these cases, including, but not limited to (i) the Debtors' urgent focus on stabilizing operations due to the cash-starved state in which the Debtors were forced to operate prior to the Petition Date, (ii) the need to respond to information and discovery requests from the Special Servicer and the Committee in connection with such parties' objections to the Debtors' use of cash collateral and efforts to locate a new money investor, the Debtors will not be in a position to complete the Schedules and Statements within the thirty day time period specified in Bankruptcy Rule 1007(c) and Local Rule 1007-1(b). *See Declaration of Michael W. Husman in Support of First Day Pleadings* (the "Husman Declaration") [Docket No. 3], at ¶¶ 16-20 (discussing the Debtors'

cash-starved state); *Objection of Torchlight Loan Services, LLC to Motion of Debtors and Debtors in Possession for Entry of Interim and Final Orders (i) Authorizing the Use of Lenders' Cash Collateral, (ii) Granting Adequate Protection Pursuant to 11 U.S.C. §§ 361 and 363, and (iii) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001(b)* [Docket No. 40]; *Limited Objection of the Official Committee of Unsecured Creditors to Motion of Debtors Pursuant to 11 U.S.C. §§ 105(a) and 363(b) and Federal Rule of Bankruptcy Procedure 6004 Authorizing Debtors' Entry into a Financing Arrangement and Performance Thereunder in Connection with their Plan of Reorganization* [Docket No. 85]. In view of these critical matters and the volume of material that must be compiled and reviewed by the Debtors' staff in order to complete the Schedules and Statements with the information for the numerous vendors who provide goods and services to the thirty-two properties operated by the seven Debtors, there is more than ample "cause" for granting the requested extension. *See Husman Declaration*, at ¶ 6 (providing an overview of the Debtors' portfolio of thirty-two properties); *Interim Order Granting Motion of the Debtors and Debtors in Possession for Entry of Interim and Final Orders Establishing Adequate Assurance Procedures with Respect to their Utility Providers Pursuant to Section 366 of the Bankruptcy Code* [Docket No. 19] (identifying the Debtors' many utility providers and the thousands of utility accounts which must be paid on a monthly basis). The Debtors recognize the importance of the Schedules and Statements in their chapter 11 cases, and the Debtors do intend to complete the Schedules and Statements as quickly as possible under the circumstances.

14. The Court has granted similar relief to that requested herein in a number of cases in this district. *See, e.g., In re Rubicon US REIT, Inc.*, Case No. 10-10160 (BLS) (Bankr. D. Del. Jan. 26, 2010) (order granting debtors an additional 30 days to file their schedules and statements); *In re Dan River Holdings LLC*, Case No. 08-10726 (BLS) (Bankr. D. Del. Apr. 22,

2008) (order granting debtors an additional 30 days, for a total of 60 days from the petition date, to file their schedules and statements); *In re Powermate Holding Corp.*, Case No. 08-10498 (KG) (Bankr. D. Del. Apr. 14, 2008) (order granting a total extension of 74 days from the petition date for debtors to file their schedules and statements); *In re Buffets Holdings, Inc.*, Case No. 08-10141 (MFW) (Bankr. D. Del. Mar. 12, 2008) (order granting a total extension of 76 days from the petition date for debtors to file their schedules and statements); *In re Delta Fin. Corp.*, Case No. 07-11880 (CSS) (Bankr. D. Del. Jan. 1, 2008) (granting debtors an additional 60 days, for a total of 90 days from the petition date, to file their schedules and statements); *In re Three A's Holdings, L.L.C.*, Case No. 06-10886 (BLS) (Bankr. D. Del. Sept. 14, 2006) (same); *In re Kaiser Aluminum Corp.*, Case No. 02-10429 (JKF) (Bankr. D. Del. Mar. 5, 2002) (order granting 90-day extension of time for filing schedules and statements); *In re NationsRent, Inc.*, Case No. 01-11628 (PJW) (Bankr. D. Del. Jan. 18, 2002) (order granting 90-day extension of time for filing schedules and statements); *In re USG Corp.*, Case No. 01-2094 (JKF) (Bankr. D. Del. July 31, 2001) (order granting 90-day extension of time for filing schedules and statements in case involving 11 debtors); *In re Loewen Group Int'l, Inc.*, Case No. 99-1244 (PJW) (Bankr. D. Del. June 1, 1999) (order granting 165-day extension of time for filing schedules and statements). Accordingly, the Debtors' request for a 60 day extension of time to file the Schedules and Statements is within the range permitted by this Court. For the reasons set forth above, the Debtors believe the relief requested herein is appropriate and warranted under the circumstances.

### Notice

15. Notice of this Motion has been provided to: (a) the US Trustee, (b) counsel to the Committee, (c) counsel to the Special Servicer and (d) parties requesting services in these cases

pursuant to Bankruptcy Rule 2002. Due to the nature of the relief herein, the Debtors' respectfully submit that no further notice of this Motion is required.

*[remainder of page intentionally left blank]*

WHEREFORE, the Debtors respectfully request entry of an order substantially in the form annexed hereto as <u>Exhibit A</u>: (i) granting the relief requested herein and (ii) granting such other and further relief as this Court may deem proper.

Dated: April 5, 2011
       Wilmington, Delaware

Respectfully submitted,

<u>/s/ Stuart M. Brown</u>
Stuart M. Brown (DE 4050)
Michelle E. Marino (DE 4577)
DLA Piper LLP (US)
919 North Market Street, Suite 1500
Wilmington, Delaware 19801
Telephone: (302) 468-5700
Facsimile: (302) 394-2341
Email: stuart.brown@dlapiper.com
       michelle.marino@dlapiper.com

-and-

Richard A. Chesley (IL 6240877)
Kimberly D. Newmarch (DE 4340)
DLA PIPER LLP (US)
203 N. LaSalle Street, Suite 1900
Chicago, Illinois 60601
Telephone: (312) 368-4000
Facsimile: (312) 236-7516
Email: richard.chesley@dlapiper.com
       kim.newmarch@dlapiper.com

PROPOSED ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION