## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------x
:
In re : Chapter 11
:
PJ Finance Company, LLC, *et al.*,[1] : Case No. 11-10688 (BLS)
:
Debtors. : (Joint Administration Requested)
:
---------------------------------------------------------------x Related to Docket Nos. 5, 21, 34, 48 and 81

## THIRD INTERIM ORDER (I) AUTHORIZING THE USE OF LENDERS' CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION PURSUANT TO 11 U.S.C. §§ 361 AND 363 AND (III) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001(b)

Upon the motion (the "Motion") [D.I. 5], of the above-captioned debtors and debtors in possession (each a "Debtor" and collectively, the "Debtors"), (a) seeking this Court's authorization, pursuant to section 363(c) of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (as amended, the "Bankruptcy Code"), to use the Cash Collateral (as defined below) and, pursuant to Sections 361 and 363 of the Bankruptcy Code, to provide adequate protection to the Trustee[2] and the Special Servicer, for themselves and for the benefit of the holders of the CMBS, with respect to any diminution in the value of the Prepetition Lender's interests in the Prepetition Collateral (as defined below), including for the use of the Cash Collateral, the use, sale, lease, decline in market price or other diminution in value of the Prepetition Collateral other than the Cash Collateral, or the imposition of the automatic stay pursuant to Section 362(a) of the Bankruptcy Code and determining such adequate protection to be adequate under the circumstances of these cases; (b) seeking a preliminary hearing (the "Preliminary Hearing") on the

---

[1] The Debtors are the following seven entities (the last four digits of their respective taxpayer identification numbers, if any, follow in parentheses): PJ Finance Company, LLC (8895), PJ Holding Company Manager, LLC (8895), PJ Holding Company, LLC (8895), Alliance PJRT GP, Inc. (1787), Alliance PJWE GP, L.L.C. (8133), Alliance PJRT Limited Partnership (1789) and Alliance PJWE Limited Partnership (8198). The mailing address of each of the Debtors solely for purposes of notices and communications is 1200 North Ashland Avenue, Suite 600, Chicago, Illinois 60622.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings as set forth in the Motion.

EAST\44456165.4

Motion to consider entry of an emergency interim order pursuant to Bankruptcy Rule 4001(b) (the "First Interim Order") authorizing the Debtors to use Cash Collateral; and (c) requesting that a final hearing (the "Final Hearing") be scheduled, and that notice procedures in respect of the Final Hearing be established by this Court to consider entry of a final order (the "Final Order") authorizing on a final basis the Debtors' use of the Cash Collateral; and the Preliminary Hearing on the Motion having been held before this Court on March 8, 2011; and the First Interim Order having been entered by this Court on March 8, 2011 [D.I. 21]; and a second interim hearing on the Motion having been held before this Court on March 17, 2011 (the "Second Interim Hearing"); and the second interim order (the "Second Interim Order") having been entered by this Court on March 17, 2011 [D.I. 48]; and a third emergency interim hearing on the Motion having been held before this Court on April 6, 2011 (the "Third Interim Hearing") to consider entry of a third interim order pursuant to Bankruptcy Rule 4001(b) (this "Order") authorizing the Debtors to use Cash Collateral; and due and sufficient notice of the Motion and the Third Interim Hearing under the circumstances having been given; and upon the entire record made by the Debtors at the Preliminary Hearing, the Second Interim Hearing and the Third Interim Hearing, and this Court having found good and sufficient cause appearing therefor,

**THIS COURT HEREBY FINDS AND CONCLUDES AS FOLLOWS:**[3]

A. <u>Commencement of Cases</u>. On March 7, 2011 (the "Petition Date"), each of the Debtors filed with this Court a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The Debtors are in possession of and operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On March 16, 2011, the Office of the United States Trustee appointed an official committee of unsecured creditors (the "Creditors' Committee") in these Chapter 11 Cases.

---

[3] Pursuant to Bankruptcy Rule 7052, any findings of fact contained herein that may be construed as matters of law shall be treated as conclusions of law as if set forth below, and vice versa.

B. **Jurisdiction: Venue**. This Court has jurisdiction over the Chapter 11 Cases and the Motion pursuant to 28 U.S.C. §§ 157(b) and 1334. Consideration of the Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The predicates for the relief sought herein are sections 105, 361, 362, and 363 of the Bankruptcy Code and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure. Venue of the Chapter 11 Cases in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C. **Adequate Notice**. On March 7, 2011, the Debtors filed the Motion with this Court and pursuant to Bankruptcy Rules 2002, 4001 and 9014, and the Local Bankruptcy Rules of this Court, the Debtors provided notice of the Motion, the Preliminary Hearing, the Second Interim Hearing and the Third Interim Hearing by electronic mail, facsimile, hand delivery or overnight delivery to the following parties and/or to their counsel as indicated below: (a) the Office of the United States Trustee for the District of Delaware, (b) counsel for the Committee, (c) the Trustee, (d) counsel to the Special Servicer and (f) parties requesting notice in these cases pursuant to Federal Rule of Bankruptcy Procedure (the "Bankruptcy Rules") 2002 (collectively, the "Notice Parties"). Given the nature of the relief sought in the Motion, this Court concludes that the foregoing notice of the Motion, the extended Third Interim Budget (as defined in paragraph F of this Order) [D.I. 34], and the Third Interim Hearing was sufficient and adequate under the circumstances and complies with the Bankruptcy Code, the Bankruptcy Rules, and any other applicable law, and no further notice relating to this proceeding and the Third Interim Hearing is necessary or required.

D. **Cash Collateral Defined**. For purposes of this Order, the term "Cash Collateral" shall mean and include all "cash collateral" as defined by section 363(a) of the Bankruptcy Code and shall include and consist of, without limitation, all of the respective cash proceeds of the Postpetition Collateral (as defined below) and Prepetition Collateral in which any of the Master Servicer, the Special Servicer, and the Trustee holds an interest, including, without

3

limitation: (i) any and all insurance proceeds received prior to the Petition Date; (ii) any and all amounts used to fund the reserve for taxes; (iii) any and all amounts currently in, or to be deposited in the Borrower's Remainder Account (as that term is defined in the Prepetition Loan Documents); (iv) any and all amounts currently in, or to be deposited in the Cash Collateral Reserve Account (as that term is defined in the Prepetition Loan Documents); (v) any and all amounts currently in, or to be deposited in the Replacement Reserve Account (as that term is defined in the Prepetition Loan Documents); (iv) any and all amounts currently in, or to be deposited in the Required Repair Account (as that term is defined in the Prepetition Loan Documents); (iv) any and all amounts currently in, or to be deposited in the Extraordinary Receipts Account (as that term is defined in the Prepetition Loan Documents); and (iv) any and all amounts currently in, or to be deposited in the Casualty and Condemnation Proceeds Reserve Account (as that term is defined in the Prepetition Loan Documents).

      E.    <u>Exigent Circumstances</u>. If the Debtors' use of Cash Collateral were to be discontinued, the Properties will deteriorate, vacancy rates will rise, the operating shortfall will start to accelerate, employees will leave, the Manager may attempt to cancel the Management Agreements and tenants will terminate their leases, thereby severely impairing the value of the Prepetition Collateral and other assets of their estates. Accordingly, the Debtors and their estates will suffer immediate and irreparable harm unless the Debtors are immediately authorized to use Cash Collateral on the terms and conditions set forth herein and in accordance with the Third Interim Budget, defined below.

      F.    <u>Third Interim Budget</u>. Attached hereto as <u>Exhibit 1</u> is a budget (the "<u>Third Interim Budget</u>") setting forth on a line-item basis the Debtors' anticipated cumulative cash receipts and expenditures on a weekly basis and all necessary and required cumulative expenses which the Debtors expect to incur during each weekly period under the Third Interim Budget, which such Third Interim Budget was previously filed with the Court as an exhibit to the *Initial*

*Monthly Operating Report*, as filed on March 29, 2011 [D.I. 81]. The Third Interim Budget is an integral part of this Order.

G. <u>Immediate Entry of this Order</u>. The Debtors have requested immediate entry of this Order pursuant to, and have complied with, Bankruptcy Rule 4001(b)(2) and Local Bankruptcy Rule 4001-2. For the reasons stated above and as stated on the record at the Preliminary Hearing, the Second Interim Hearing and the Third Interim Hearing, this Court concludes that immediate entry of this Order is in the best interests of the Debtors' estates and creditors in order to avoid immediate and irreparable harm to the Debtors and their properties and estates.

Based upon the foregoing findings and conclusions, and upon the record made before this Court at the hearing on the Motion, and good and sufficient cause appearing therefore:

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT**;

1. <u>Motion Granted</u>. The Motion is granted on an emergency and interim basis. Subject to the terms hereof, this Order is valid immediately and is fully effective upon its entry. All objections to the entry of this Order that have not been withdrawn are hereby overruled; provided, however, that the objection to the Motion filed by Torchlight Loan Services, LLC, as Special Servicer (the "<u>Torchlight Objection</u>") [D.I. 40], is preserved in all respects for the Final Hearing.

2. <u>Authorization</u>. The Debtors are authorized to use Cash Collateral in accordance with and pursuant to the terms and provisions of this Order and the Third Interim Budget during the period (the "<u>Cash Collateral Period</u>") from the Petition Date through and including the Termination Date (as defined in paragraph 13 of this Order). Until such time as the Court holds the Final Hearing, the Debtors are authorized to use Cash Collateral to the extent set forth in the Third Interim Budget and in excess of the expenses set forth in the Third Interim Budget so long as the percentage deviation from the amount set forth in the Third Interim Budget,

5

both in the aggregate and in each budget category, shall not exceed ten percent (10%) for any line item or in the aggregate. Notwithstanding the foregoing, in the event that the Debtors use Cash Collateral in an amount less than the amount set forth in the Third Interim Budget in any applicable category, the Debtors shall be entitled to roll-forward the amount of the difference between (i) the amount set forth in the Third Interim Budget in such category and (ii) the amount of Cash Collateral actually used in such category, and apply that amount toward the next weekly period. Notwithstanding the foregoing, if the Master Servicer, the Special Servicer, and Trustee, in each of its sole discretion and as their respective interests may appear, permits the use of Cash Collateral in excess of any terms and conditions set forth in this Order (including, without limitation, the Third Interim Budget), such use shall be governed by the rights, priorities, benefits and protections of this Order.

3. <u>Deposit Accounts</u>. All cash receipts, Cash Collateral and all proceeds from the sale, transfer or other disposition of any Prepetition Collateral shall be promptly deposited in the same bank accounts into which the collections and proceeds of the Prepetition Collateral were deposited under the Prepetition Loan Documents (or in such other accounts as are designated by the Special Servicer from time to time in writing to the Debtors (the "<u>Deposit Accounts</u>")). Such collections and proceeds (a) shall remain subject to (i) all of the security interests and liens of the Trustee and (ii) all of the priorities and rights between the Trustee, Master Servicer or Special Servicer as governed by the Prepetition Loan Documents and (b) shall be treated in accordance with the terms and conditions of this Order. During the Cash Collateral Period, the Debtors shall continue to fund the tax reserves and insurance reserves in accordance with paragraph 10 of this Order. All Cash Collateral amounts, including those amounts to fund the tax reserves and insurance reserves may be used by the Debtors in accordance with the Third Interim Budget.

4. <u>Accounting of Cash Collateral: Access to Books and Records</u>. The Debtors shall, pursuant to section 363(c)(4) of the Bankruptcy Code, segregate and account for all

6

Cash Collateral which is now, and which may hereafter be, in their possession, custody or control, and other than in accordance with the Third Interim Budget shall not, without further order of this Court, transfer any of such Cash Collateral to any non-Debtor affiliates or subsidiaries. The Debtors shall provide to the Special Servicer, so as actually to be received within five business days following the end of each weekly period, weekly line-by-line variance reports for the preceding weekly periods and on a cumulative basis from the Petition Date to the report date, comparing actual cash receipts and disbursements to amounts projected in the Third Interim Budget. The Special Servicer shall also be provided with reasonable access to the Debtors' books and records related to the Prepetition Collateral.

5. <u>Postpetition Collateral Defined</u>. As used in this Order, the term "<u>Postpetition Collateral</u>" means the Prepetition Collateral and the Debtors' prepetition and existing as of the Petition Date and after acquired real and personal, tangible and intangible property and assets of the Borrowers, including, without limitation, the Lockbox and all rents and deposits deposited therein (to the extent allowed under 11 U.S.C. § 552(b)(1)).

6. <u>Prior Lien Defined</u>. As used in this Order, the term "<u>Prior Liens</u>" means only valid, enforceable, and non-avoidable liens and security interests other than the liens held by the Trustee, in the Prepetition Collateral or any other property or assets of the Debtors that were perfected prior to the Petition Date (or perfected on or after the Petition Date to the extent permitted by section 546(b) of the Bankruptcy Code), which are not subject to avoidance, disallowance, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law and which, with respect to the Prepetition Senior Liens, are senior in priority to the Prepetition Senior Liens under applicable law and after giving effect to any lien release, subordination or inter-creditor agreements. For the avoidance of doubt, the Prior Liens shall not include, or be deemed to include, any or all of the Prepetition Senior Liens, or Adequate Protection Senior Liens (as defined below).

7. <u>Adequate Protection Senior Obligations</u>. Until the repayment in full in cash of the value of the Prepetition Collateral securing the Prepetition Senior Obligations or the effective date respecting any order confirming a plan in the Debtors' cases, as adequate protection, the Trustee and Special Servicer, for themselves and for the benefit of the holders of the CMBS, as their interests appear, are hereby granted the following:

    a. <u>Replacement Liens</u>. Pursuant to sections 361(2), 362, 363(c)(2), and 363(e) of the Bankruptcy Code, the Trustee and the Special Servicer, for themselves and for the benefit of the holders of the CMBS, are hereby granted by each of the Debtors, continuing valid, binding, enforceable and perfected first priority liens and security interests in and on all of the Postpetition Collateral to the same extent, priority and enforceability held on the Prepetition Collateral as of the Petition Date (the "<u>Adequate Protection Senior Liens</u>"). The Adequate Protection Senior Liens shall be subordinate only to the Prepetition Senior Liens, the Prior Liens and the Carve-Out.

    b. <u>Adequate Protection Senior Claim</u>. Pursuant to section 507(b) of the Bankruptcy Code, the Trustee and the Special Servicer, for themselves and for the benefit of the holders of the CMBS, shall have an allowed super-priority administrative expense claim (the "<u>Adequate Protection Senior Claim</u>") against each Debtor and its respective estate to the extent of any diminution in the Prepetition Collateral and to the extent the Replacement Liens prove inadequate to protect such interests. The Adequate Protection Senior Claim shall be subordinate only to the Carve-Out.

    c. <u>Adequate Protection Senior Obligations</u>. The Adequate Protection Senior Liens and Adequate Protection Senior Claim shall secure the payment of the Adequate Protection Senior Obligations in an amount equal to any diminution in the value of the Trustee's and Special Servicer's interests in the Prepetition Collateral from and after the Petition Date (the "<u>Adequate Protection Senior Obligations</u>"), including, without limitation, any such diminution

8

resulting from the following: (i) the use by the Debtors of the Prepetition Collateral, including, without limitation, the Cash Collateral, (ii) the imposition of the automatic stay pursuant to section 362(a) of the Bankruptcy Code, (iii) the physical deterioration, consumption, use, sale, lease, or disposition of the Prepetition Collateral, or (iv) the imposition and payment of the Carve-Out. Other than the Carve-Out and Prior Liens, no other claims, administrative expenses, liens or security interests, whether for adequate protection or otherwise, shall be senior or equal to or *pari passu* with the Prepetition Senior Liens, Adequate Protection Senior Liens or Adequate Protection Senior Claims, without the express written consent of the Special Servicer given in accordance with the Prepetition Loan Documents (which consent may be withheld in its sole discretion). All parties retain and reserve all their rights to dispute the validity, priority, enforceability and perfection of any asserted Prior Lien and the Prepetition Lender's claims and liens.

8. <u>Credit Bid</u>. The Trustee and Special Servicer shall, to the extent of the Prepetition Senior Obligations, have the unqualified ability to credit bid for any assets of the Debtors that are subject to the Prepetition Lender's liens, offered at any sale, lease, or other disposition outside the ordinary course of business, including, without limitation, sales occurring pursuant to section 363 of the Bankruptcy Code or included as part of any reorganization plan subject to confirmation under section 1129(b)(2)(A)(iii) of the Bankruptcy Code.

9. <u>Perfection</u>. The Adequate Protection Senior Liens shall be, and they hereby are, deemed duly perfected and recorded under all applicable federal or state or other laws as of the Petition Date, and no notice, filing, mortgage recordation, possession, further order, or other act, shall be required to effect such perfection. The Trustee and the Special Servicer may (in its sole discretion and at its expense), but shall not be required to, file a certified copy of this Order in any filing or recording office in any state, county or other jurisdiction in which any Debtor has real or personal property and such filing or recording shall be accepted and shall constitute

9

sufficient evidence of perfection of such applicable parties' interests in the Postpetition Collateral at the time and on the date of entry of this Order, but with the priorities as set forth herein.

10. Tax and Insurance Reserve. The Debtors shall continue to make monthly payments to the Master Servicer to fund the reserves for taxes and insurance, in accordance with section 7.2 of the Prepetition Loan Agreement; provided, however that the monthly estimated payments required for reserve with respect to real property taxes shall be equal to the amount listed for "Property Taxes" as provided in the Third Interim Budget.

11. Attachment. To the extent the liens created by the Prepetition Loan Documents are valid, perfected and non-avoidable, such liens shall attach to any and all proceeds of the Prepetition Collateral realized by the estate of any Debtor in connection with the sale, transfer or other disposition of such Prepetition Collateral, subject to the lien priorities set forth herein.

12. Section 506(c) Waiver. Subject to entry of the Final Order, and in consideration of the use of Cash Collateral in accordance with the Third Interim Budget and the Carve-Out, no costs or expenses of administration or other charge, lien, assessment or claim incurred at any time (including, without limitation, any expenses set forth in the Budget by any Debtor or any other person or entity shall be imposed against the Trustee, the Special Servicer, the holders of the CMBS or the Prepetition Collateral under section 506(c) of the Bankruptcy Code or otherwise, and the Debtors, on behalf of their estates, waive any such rights.

13. Termination. Subject to the Carve-Out, the use of Cash Collateral authorized herein shall terminate (the effective date of such termination, the "Termination Date") effective the first business day after the Court holds the Final Hearing.

14. Rights Reserved: No Waiver. The rights, objections and defenses of the Debtors or any other party-in-interest to challenge the extent, priority, validity, priority or perfection of the Prepetition Lender's claim and lien, are expressly reserved. Nothing in the

10

Motion or this Order shall be deemed or construed to waive any right of the Debtors or constitute an admission against interest by the Debtors.

15.  Carve-Out: Professional Reserve.

a.  Generally. Notwithstanding anything to the contrary contained in this Order or other order of this Court, subject to the entry of a Final Order on the Motion, the liens and claims of or granted to the Trustee and the Special Servicer in this Order and/or the Prepetition Loan Documents shall be subject and subordinate to the payment, without duplication, of the following fees and claims (the amounts set forth below, together with the limitations set forth therein, collectively, the "Carve-Out"):

(i)  the claims of the respective retained professionals of the Debtors and any official committees appointed in these bankruptcy cases (collectively, the "Retained Professionals") for fees and expenses incurred at any time on and after the Petition Date and prior to the Termination Date; provided that, in each case, such fees and expenses of the Retained Professionals are ultimately allowed on a final basis by this Court under sections 330 or 331 of the Bankruptcy Code (such fees and expenses described in this clause (i), the "Pre-Termination Date Expenses" and the permitted amount thereof, the "Pre-Termination Date Amount");

(ii)  the claims of the Retained Professionals for fees and expenses which were incurred on and after the Termination Date; provided that, in each case, such fees and expenses of the Retained Professionals are ultimately allowed on a final basis by this Court under sections 330 or 331 of the Bankruptcy Code and do not exceed $1,000,000 in the aggregate for the Retained Professionals of the Debtors and do not exceed $250,000 in the aggregate for the Retained Professionals of the Creditors' Committee plus the fees and expenses incurred by any professionals engaged by any successor to the Debtors, including, without limitation, any trustee appointed under Chapter 11 or 7 of the Bankruptcy Code or any examiner with expanded powers, in an aggregate amount not to exceed $25,000 (such fees and expenses described in this clause (ii) the "Post-Termination Date Expenses" and the permitted amount thereof, the "Post-Termination Date Amount" and, together with the Pre-Termination Date Amount, the "Carve-Out Amount");

(iii)  the unpaid fees payable to the United States Trustee and Clerk of the Bankruptcy Court pursuant to Section 1930 of Title 28 of the United States Code; and

(iv)  unpaid operating expenses in accordance with the Third Interim Budget that were incurred prior to the Termination Date, solely to the extent that such claims would have been authorized to be paid by the Debtors prior to such date, pursuant to the Third Interim Budget, if the Termination Date had not occurred.

b.  Payment of Carve-Out Upon Sale. In the event of a sale or sales of all or substantially all of the assets of the Debtors, there shall be set aside and made available to the Debtors an amount of Cash Collateral sufficient to enable the Debtors to reserve for the payment of the Carve-Out prior to giving effect to any such sale or sales.

c.  Professional Reserve. So long as the Termination Date has not occurred pursuant to paragraph 14 or 16 hereof, the Debtors shall put into a segregated account an amount up to but not exceeding $2,000,000 (the "Professional Reserve"), payable $500,000 upon entry of the First Interim Order, $500,000 on or before the date that is thirty days after entry of the First Interim Order, and $1,000,000 on or before the date that is fifty days after entry of the First Interim Order. The Professional Reserve shall be held as security for the Debtors' payment of the Pre-Termination Date Amount to the Retained Professionals, pursuant to the Third Interim Budget, to each according to its respective Allocated Amount (as defined below). Notwithstanding anything to the contrary in this Order, (i) the right of each Retained Professional to seek payment from the Professional Reserve shall be limited to its respective Allocated Amount (as defined below), as the same may be adjusted from time to time by agreement within a particular class or Court order; and (ii) without the consent of the Special Servicer, the Debtors shall not, following a Termination pursuant to paragraph 13 hereof, deposit any Cash Collateral into the Professional Reserve. The Professional Reserve shall constitute Postpetition Collateral; provided that the liens, claims and security interests (including replacement liens) of the Prepetition Lender in the Professional Reserve shall be subject to the Carve-Out and payment from such Professional Reserve of the Allocated Amounts in accordance with this Order.

d.  Application of Professional Reserve. The term "Allocated Amount" shall mean on any date; (a) with respect to the Pre-Termination Date Amount, for each Retained Professional, the aggregate amount allocated in the Third Interim Budget for such Retained Professional minus the sum of (i) all payments received by such Retained Professional from Cash

12

Collateral pursuant to this Order for services rendered or expenses incurred on or before the Termination Date and (ii) the amount of any unapplied retainer held by such Retained Professional as of the Termination Date; and (b) with respect to the Post-Termination Date Amount, an amount for Retained Professionals of the Debtors equal to $1,000,000, an amount for Retained Professionals of the Creditors' Committee equal to $250,000 and an amount for any trustee appointed under Chapter 11 or 7 of the Bankruptcy Code or any examiner with expanded powers equal to $25,000. Notwithstanding anything to the contrary in this Order, the Allocated Amount for each Retained Professional in any Budget may not be decreased from the amount contained in the Third Interim Budget without the consent of the affected Retained Professional. As and when authorized by further order of this Court, the Debtors shall be authorized to access and apply funds in the Professional Reserve to pay the Carve-Out Amount. Any funds remaining in the Professional Reserve after payment in full of the Carve-Out Amount shall be transferred to the Special Servicer for application to the Prepetition Secured Obligations or as provided by further order of this Court. If any of the Professional Reserve is not used for the specific purpose of paying the Carve Out Amount or any Carve Out Amount or Cash Collateral used to make payment to a Retained Professional is subsequently disgorged or returned to Debtors, such amounts shall be remitted promptly by the Debtors to the Special Servicer for application to the Prepetition Secured Obligations or as provided by further order of this Court.

    e. <u>No Reduction of Amounts</u>. Subject to the terms and conditions of this Order, the Debtors shall be permitted to pay compensation and reimbursement of reasonable fees and expenses of the Retained Professionals allowed and payable under sections 328, 330 or 331 of the Bankruptcy Code, as the same may be due and payable, that constitute Pre-Termination Date Expenses and such payments shall not reduce or be deemed to reduce the Post-Termination Date Amount.

13

EAST\44456165.4

f. <u>Transaction Fee</u>. Subject to the entry of an Order approving Debtors' engagement of CBRE Capital Advisors, Inc. ("<u>CBRE</u>"), and to the extent that any transaction fee is owed to CBRE under its Court-approved engagement letter with the Debtors (the "<u>Transaction Fee</u>"), such Transaction Fee shall be paid exclusively out of the proceeds of the financing transaction or sale transaction giving rise to the Transaction Fee ("<u>Qualified Transaction</u>") and not out of the Carve Out Amount or any other Cash Collateral. Notwithstanding any other provision in this Order, CBRE's right to payment of the Transaction Fee out of the Qualified Transaction shall be senior to all other right to payment or lien upon the proceeds of the Qualified Transaction.

g. <u>No Payment Pending a Final Hearing</u>. Notwithstanding any other provisions of this Order, no payments of fees and expenses or the Transaction Fee shall be made to any Retained Professional or CBRE prior to the entry of the Final Order.

16. <u>Survival</u>. The provisions of this Order and any actions taken pursuant hereto shall: (a) survive the Termination Date and entry of any order (i) converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code; (ii) substantively consolidating any of the Debtors or their respective estates; or (iii) dismissing or closing any of the chapter 11 cases; and (b) shall continue in full force and effect notwithstanding the Termination Date or entry of any such order. This Order shall supersede the Second Interim Order nunc pro tunc to the Petition Date.

17. <u>Successors and Assigns</u>. The provisions of this Order shall be binding upon and inure to the benefit of the Master Servicer, the Special Servicer, the Trustee, holders of the CMBS, the Debtors and their respective estates, and their respective successors and assigns, including, without limitation, any trustee or other fiduciary hereafter appointed as a legal representative of any of the Debtors or their estates in these chapter 11 cases.

14

18. <u>Final Hearing</u>. The Motion is set for a Final Hearing to be held at [9:00 a.m. a.m./p.m.] (Eastern time) on May 4, 2011, with an objection deadline of 4:00 p.m. (Eastern time) on 4/28, 2011 (the "**Objection Deadline**"). Any objection to entry of the Final Order shall be filed with this Court, and served upon the respective counsel to the Debtors, the Creditors' Committee and the Special Servicer, on or before the Objection Deadline. The Torchlight Objection shall be deemed filed and served respecting the Final Hearing.

Dated: Wilmington, Delaware
4/6, 2011

_____
The Honorable Brendan L. Shannon
United States Bankruptcy Judge