IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------x
In re: : Chapter 11
:
PJ Finance Company, LLC, *et al.*,[1] : Case No. 11-10688 (BLS)
:
Debtors. : Jointly Administered
:
: **Hearing Date: May 4, 2011 at 9:30 a.m. (EDT)**
---------------------------------------------------------------x **Objection Deadline: April 27, 2011 at 4:00 p.m. (EDT)**

## MOTION OF TORCHLIGHT LOAN SERVICES, LLC FOR ENTRY OF AN ORDER (I) DISMISSING THE ABOVE-CAPTIONED CHAPTER 11 CASES, OR, ALTERNATIVELY, (II) CONVERTING THESE CASES TO CASES UNDER CHAPTER 7 FOR CAUSE PURSUANT TO 11 U.S.C. § 1112(b)

Torchlight Loan Services, LLC, f/k/a ING Clarion Capital Loan Services, LLC, successor by appointment to ING Clarion Partners, LLC ("Torchlight"), as Special Servicer for U.S. Bank National Association, as successor trustee for the registered holders of Credit Suisse First Boston Mortgage Securities Corp., Commercial Pass-Through Certificates, Series 2007-C2, for its Motion for Entry of an Order (i) Dismissing the Above-Captioned Chapter 11 Cases (these "Cases"), or, Alternatively, (ii) Converting these Cases to Cases Under Chapter 7 for Cause Pursuant to 11 U.S.C. § 1112(b) (the "Motion"), and in support thereof respectfully represents:

### I. Introduction

1. These Cases have been filed solely for the purpose of a strategic benefit in negotiations with Torchlight.[2] The filing of the voluntary petitions (these "Petitions") on March

---

[1] The Debtors are the following seven entities (the last four digits of their respective taxpayer identification numbers, if any, follow in parentheses): PJ Finance Company, LLC (8895), PJ Holding Company Manager, LLC (8895), PJ Holding Company, LLC (8895), Alliance PJRT GP, Inc. (1787), Alliance PJWE GP L.L.C. (8133), Alliance PJRT Limited Partnership (1789) and Alliance PJWE Limited Partnership (8198). The mailing address of each of the Debtors solely for purposes of notices and communications is 1200 North Ashland Avenue, Suite 600, Chicago, Illinois 60602.

7, 2011 (the "Petition Date") was not necessitated by any urgency. There was not a payment default, Torchlight was not even threatening to exercise its rights to take possession of its collateral and the Loan Agreement does not mature until 2016. It appears that the Debtors found it expedient to file these Petitions to gain an advantage over Torchlight.[3] The Petitions were accompanied by the Declaration of Michael W. Husman in Support of First Day Pleadings (Docket No. 3) (the "Declaration").

2. The Debtors assert that these Cases were filed because the Properties yield "insufficient rents" to satisfy the "day to day operations," since all rent receivables are swept into a lockbox account intended for, *inter alia*, "a capital expenditure/repair reserve." The Debtors further assert that "the funding of such reserves is excessive."

3. The Complaint filed by Alliance, the prior co-owner of the Properties, alleges that the Debtors purposefully mismanaged the Properties and cut staffing of the manager by 70% in order to reduce rental receipts, and in turn foreclose upon a prior existing mezzanine loan in order to remove Alliance from the Properties.[4] While Torchlight has not been integrally involved in the oversight of the Properties like Alliance previously was, it stands to reason that the Debtors saw another lucrative opportunity within their grasp. These Cases are an attempt by

---

(...CONTINUED)

[2] Alliance PJRT Limited Partnership and Alliance PJWE Limited Partnerships (collectively, the "Borrowers") have borrowed $475 million (plus accrued and unpaid interest, legal fees, and other fees and charges, the "Indebtedness") pursuant to that certain Amended and Restated Loan Agreement, dated November 9, 2006 (the "Prepetition Loan Agreement"), which is secured by 32 apartment complexes comprised of 9,504 units in Arizona, Florida, Georgia, Tennessee, and Texas (the "Properties"). The Properties are currently managed by WestCorp Management Group One, Inc. (the "WestCorp") through that certain Sub-Management Agreement, dated July 1, 2008. Torchlight acts as the special servicer with respect to this Indebtedness.

[3] As previously stated at the March 17, 2011 hearing, while the Debtors and their counsel were engaged in negotiations with Torchlight and the undersigned counsel for a protracted period of time, notice of the bankruptcy filings and the expedited first day hearings were not provided to either party.

[4] *See* the complaint (the "Complaint"), attached hereto as Exhibit A, filed by the Properties' prior co-owners, the Alliance entities ("Alliance").

the Debtors to grab more equity in the Properties prior to improving management so that "the value of the [Properties] could exceed $600 million."[5]

4.  On the Petition Date, the Debtors took the position that Torchlight's collateral is worth $200 million less than the loan balance. This valuation, although not supported by any evidence, begs the question why the borrower would want to keep the properties?

5.  These Cases have been filed in bad faith, and it is clear that if Torchlight credit bids its Indebtedness in the proposed 363 transaction, or elects to receive net present value in exchange for the full amount of its claim (through a section 1111(b) election) and the collateral is valued at $275 million, there is no likelihood of successfully rehabilitating the Debtors and their businesses. Accordingly, to preserve the value of the estates and reduce costs associated with the reorganization, Torchlight requests this Court to dismiss these Cases, or, alternatively, to convert these Cases to chapter 7 under the Code.

## II. Background

6.  On November 9, 2006, the Borrowers entered into the Prepetition Loan Agreement with Column Financial Inc. (the "Originating Lender"), pursuant to which the Originating Lender made a loan of $475 million. The Originating Lender then sold the Prepetition Loan Agreement to Credit Suisse First Boston Mortgage Securities Corp., which it then securitized by issuance of commercial mortgage-backed securities pursuant to that certain Pooling and Servicing Agreement, dated May 1, 2007 (the "Pooling and Servicing Agreement") with U.S. Bank National Association, as the successor trustee (the "Prepetition Lender").

---

[5] *See* Complaint, ¶2.

Pursuant to the Pooling and Servicing Agreement, Wells Fargo Bank, N.A. acts as the master servicer and Torchlight acts as the special servicer.

7. At some point in late 2008, Equibase Capital Group, LLC ("Equibase"), the parent affiliate of the Debtors, and the Debtors purchased a portion of the mezzanine financing on the Properties.[6] Simultaneously, Equibase gained control of Alliance Residential Management, LLC, the prior manager of the Properties, and cut staffing by 70% such that the effective management of the Properties would decline.[7] Then, over the objection of the Prepetition Lender and in contravention of the Loan Documents, Equibase transferred management control of the Properties to WestCorp, through a sub-management agreement. Citing certain defaults of the mezzanine loan, Equibase then foreclosed upon the equity of the Borrowers using an Article 9 UCC foreclosure sale. In effect, this placed Equibase in control of the Debtors and the Properties, effectively ousting Alliance from the partnership.

8. Equibase grasped control of the Properties because they believed the value of the Properties would "increase to $550 million or $575 million in a relatively short [period of] time."[8] It appears that Equibase continued to keep staffing levels of the Properties at a minimum even after obtaining control of the Borrowers. Equibase and WestCorp erroneously believed that this would provide them with an opportunity to substantially de-lever and grasp even more equity in the Properties.

9. Accordingly, on March 7, 2011 (the "Petition Date"), the Debtors filed these Petitions, along with the *Motion of the Debtors and Debtors In Possession For an Order*

---

[6] See Complaint, ¶4.
[7] See Complaint, ¶¶34-35.
[8] See Complaint, ¶2.

*Pursuant to 11 U.S.C. §§ 105(A) and 363(B) and Federal Rule of Bankruptcy Procedure 6004 Authorizing Debtors' Entry into a Financing Arrangement and Performance Thereunder In Connection with their Plan of Reorganization* [Docket No. 8] (the "Proposed Financing Motion"). The Proposed Financing Motion seeks a new money investment for infusion of capital for needed repairs of the Properties and approval for entry into a stalking horse agreement with certain non-debtor affiliates.

10. The Debtors hope to place Gaia Real Estate Investments LLC ("Gaia") and Kenneth Woolley ("Woolley", and together with Gaia, the "Investors") as the new 100% equity owners of the reorganized Debtors, Newco. Approval of the proposed transaction will also provide a stamp of approval for retaining WestCorp as the Properties' manager, a manager that the Prepetition Lender does not believe can be designated as a Qualified Manager under the Loan Documents.

11. The Debtors and the Investors are so incestuously interconnected that it brings into question the "good faith" nature of these Petitions. Woolley is the Chairman of WestCorp, the current manager of the Properties, and the Managing Partner of Gaia.[9] Contrary to the Debtors' assertion that WestCorp is a third-party and further supporting the fact the Petitions have not been filed in good faith, WestCorp and Equibase are in a joint venture focusing on multifamily properties, and WestCorp is <u>not</u> "a third-party."[10] For this Court's ease of reference, attached hereto as Exhibit D is a chart detailing the relationship between the Debtors and these non-debtor affiliates.

---

[9] *See* Biography of Ken Woolley, a copy of which is attached hereto as Exhibit B.

[10] *See* Declaration, ¶6; List of Equibase news releases, a copy of which is attached hereto as Exhibit C.

12. On March 17, 2011, this Court entered the *Second Interim Order (I) Authorizing The Use Of Lenders' Cash Collateral, (II) Granting Adequate Protection Pursuant to 11 U.S.C. §§361 And 363 And (III) Scheduling A Final Hearing Pursuant To Bankruptcy Rule 4001(b)* [Docket No. 48] (the "Second Interim Cash Collateral Order"), which permits Torchlight to "credit bid for any assets of the Debtors," including the proposed transaction. The Second Interim Cash Collateral Order, ¶8. To date, Torchlight has also preserved its right to elect treatment of its claim under section 1111(b) of the Bankruptcy Code to receive the net present value of its $475 million secured claim. In the event Torchlight exercises either of these rights, the Debtors will have no remaining assets to administer these Cases or to make any distributions to creditors beyond Torchlight.

### III. Argument

**A.    Cause Exists to Dismiss These Cases.**

13. This Court should dismiss these Cases under section 1112(b) of the Bankruptcy Code because the Debtors are unable to effectuate a plan of reorganization, and dismissal of these Cases as contemplated by this Motion is in the best interest of the Debtors' estates.

14. Under section 1112(b) of the Bankruptcy Code, a court may dismiss a debtor's chapter 11 case "for cause." 11 U.S.C. § 1112(b); *see Santa Fe Minerals, Inc. v. BEPCO, L.P. (In re 15375 Memorial Corp.)*, 589 F.3d 605 (3d Cir. (Del.) 2009) (ordering dismissal of bankruptcy petitions for lack of good faith); *In re Integrated Telecom Express, Inc.*, 384 F.3d 108 (3d Cir. (Del.) 2004); *In re SGL Carbon Corp.*, 200 F.3d 154, 159-62 (3d 1999). Section 1112(b) of the Bankruptcy Code states, in pertinent part: "…on request of any party in interest or the United States trustee or bankruptcy administrator, and after notice and a hearing, the court may…dismiss a case under this chapter…for cause…." A determination of cause is made by the

6

RLF1 3978837v. 1

court on a case-by-case basis. *See Timbers of Inwood Forest*, 808 F.2d at 371 ("[t]he inquiry under §1112 is case-specific, focusing on the circumstances of each debtor").

15. The legislative history of section 1112(b) of the Bankruptcy Code indicates that a court has wide discretion to use its equitable powers to dispose of a debtor's case. H.R. Rep. No. 595, 95th Cong., 1st Sess. 405 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 117 (1978), reprinted in 1978 U.S.C.C.A.N. 57878; *see also In re NuGelt, Inc.*, 142 B.R. 661, 665 (Bankr. Del. 1992) ("[c]ourts have wide latitude in determining whether cause exists to convert or dismiss"); *In re Halvajian*, 216 B.R. 502, 513 (D.N.J. 1998) ("the Bankruptcy Court has broad discretion in determining whether cause exists to dismiss or convert a case"); *In re Prosser*, 2008 WL 2369187 (D.V.I., June 6, 2008) ("[t]he bankruptcy court has broad discretion in deciding whether to dismiss or convert a chapter 11 case") (internal quotations omitted). In addition, a bankruptcy court is not required to explain its reasons for dismissal in detail because such decisions are particularly delegated to the bankruptcy court's sound discretion. *See In re Mazzocone*, 183 B.R. 402 (Bankr. E.D.Pa. 1995), (noted "considerable authority for the proposition that ... any decision in a situation where sufficient factors exist to justify either a decision to convert or one to dismiss a case [pursuant to § 1112(b)], the exercise of its discretion by the bankruptcy court should be respected"). For reasons more fully explained below, the Court should use its grant of broad authority to dismiss these Cases.

i. **Petitions Were Not Filed Under Good Faith.**

16. Bankruptcy petitions filed under chapter 11 "are subject to dismissal under 11 U.S.C. §1112(b) unless filed in good faith, and the burden is on the bankruptcy petitioner to establish that its petition has been filed in good faith." *In re Integrated Telecom Express, Inc.*, 384 F.3d 108, 118 (3d Cir. (Del.) 2004). In light of the facts discussed above, the "totality of

7

facts and circumstances" clearly show that the Debtors have not filed these Petitions in good faith. *See In re Integrated Telecom Express, Inc.*, 384 F.3d 108, 118 (3d Cir. (Del.) 2004) ("Whether the good faith requirement has been satisfied is a 'fact intensive inquiry' in which the court must examine 'the totality of facts and circumstances'").

17. It is clear from the facts preceding these Cases, the Debtors filed these Petitions not because "it serves a valid reorganizational purpose," but "merely to obtain tactical litigation advantages." *In re SGL Carbon Corp.*, 200 F.3d 154, 163 (3d Cir. (Del.) 1999); *see also In re 15375 Memorial Corp.*, 589 F.3d 605, 618 (3d Cir. (Del.) 2009). The goal of obtaining a <u>substantial</u> haircut on the Pre-Petition Loan and thoroughly entrenching the Debtors and their non-debtor affiliates is clearly the Debtors' goal. Accordingly, this Court should find that the Debtors have failed to meet their "burden of establishing good faith." *Solow v. PPI Enters. (U.S.), Inc. (In re PPI Enters. (U.S.), Inc.)*, 324 F.3d 197, 211 (3d Cir. 2001).

### ii. **Debtors' Inability to Effectuate a Plan.**

18. Section 1112(b) of the Bankruptcy Code provides a nonexclusive list of grounds for dismissal. *In re Domiano*, 442 B.R. 97, 105 (Bankr. M.D. Pa. 2010) ("Section 1112(b) lists sixteen illustrative examples of what constitutes 'cause' for conversion or dismissal of a Chapter 11 proceeding. The statutory examples of cause are illustrative and non-exclusive"); *In re BH S & B Holdings, LLC*, 439 B.R. 342, 346 (Bankr. S.D.N.Y. 2010) ("Subsection (b)(4) contains sixteen examples of events that may constitute cause. This list, however, is 'not exhaustive' and courts are free to consider other factors."); *In re Mechanical Maintenance, Inc.*, 128 B.R. 382, 386 (E.D. Pa. 1991) ("A list of [] grounds that constitute "cause" is then set forth in the statute. Those [] grounds are non-exclusive."). One such ground is where a party-in-interest shows that there is an "inability to effectuate a plan [of reorganization]." 11 U.S.C. § 1112(b)(2) [now

replaced by 1112(b)(4)(M) ("inability to effectuate substantial consummation of a confirmed plan")]. Here, the Court may dismiss the Debtors' chapter 11 bankruptcy case because it has been reasonably shown that the Debtors are unable to effectuate a plan. *See DCNC North Carolina I, L.L.C. v. Wachovia Bank, N.A.*, 2009 WL 3209728, at *5 (E.D.Pa. Oct. 5, 2009) ("Following the 2005 BAPCPA amendments, Section 1112(b) no longer expressly lists 'inability to effectuate a plan' as an example of cause. 'Inability to effectuate a plan' remains a viable basis for dismissal because the listed examples of cause are not exhaustive.").

19. Inability to effectuate a plan arises when a debtor lacks the capacity to "formulate a plan or carry one out" or where the "core" for a workable plan of reorganization "does not exist." *See In re Cantu*, 398 Fed.Appx. 76 (5th Cir. 2010) (finding cause existed because of the Debtors' an inability to effectuate a plan that was feasible); *Preferred Door Co.*, 990 F.2d 547, 549 (10th Cir. 1993) (finding an inability to effectuate a plan arises where debtor lacks capacity to formulate a plan or carry one out); *United Sav. Ass'n v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 376, 108 S.Ct. 626, 632 (1988) ("there must be a reasonable possibility of a successful reorganization within a reasonable time."). As the Supreme Court stated, "[h]owever honest in its efforts the debtor may be, and however sincere its motives, the District Court is not bound to clog its docket with visionary or impracticable schemes for resuscitation." *Tennessee Publishing Co. v. American Nat'l Bank*, 299 U.S. 18, 22, 57 S.Ct. 85, 87 (1936).

20. Here, it is simply impossible to effectuate a plan of reorganization because Torchlight, the single largest creditor, has i) the ability to credit bid its Indebtedness in connection with the Proposed Financing Motion and leave the estates with no assets, or ii)

9

RLF1 3978837v. 1

exercise its rights under section 1111(b) of the Bankruptcy Code to receive the net present value of its $475 million (fully secured) claim.[11] A plan cannot be confirmed over Torchlight's objection. Both of these outcomes will result in the Debtors' inability to effectuate any plan of reorganization. In sum, Torchlight has met its burden of proof that these Cases should be dismissed under section 1112(b) of the Bankruptcy Code due to the inability to effectuate a plan of reorganization.

### iii. Bests Interests of the Estates.

21. Once a court determines that cause exists to dismiss a chapter 11 case, the court evaluates whether dismissal is in the best interests of the creditors and of the estate. *See In re Am. Capital Equipment, LLC*, 296 Fed.Appx. 270, 274 (3d Cir. 2008); *In re Mazzocone*, 183 B.R. 402, 411 (Bankr. E.D. Pa. 1995), *aff'd* 200 B.R. 568 (E.D. Pa. 1996); *In re SGL Carbon Corp.*, 200 F.3d 154, 159 (3d Cir. (Del.) 1999) (stating that "dismissal for cause [is justified], if it is in the best interest of the creditors and the estate"). A variety of factors demonstrate that it is in the best interest of the creditors and the Debtors' estates to dismiss these Cases.

22. A dismissal of a chapter 11 bankruptcy case meets the best interests of the creditors test where a debtor has nothing to reorganize, and the debtor's assets are fixed and liquidated. *See In re BTS, Inc.*, 247 B.R. 301, 310 (Bankr. N.D. Okl. 2000); *In re Camden Ordinance Mfg. Co. of Ark., Inc.*, 245 B.R. 794, 799 (E.D. Pa. 2000) (finding that a reorganization to salvage business which ceased business was infeasible); *In re Brogdon Inv. Co.*, 22 B.R. 546, 549 (Bankr. N.D. Ga. 1982) (dismissing a chapter 11 bankruptcy proceeding in

---

[11] At this time, Torchlight is not choosing to elect treatment of its claim under section 1111(b) of the Code, and nothing herein shall be construed to be such an election. Further, Torchlight hereby expressly reserves its right to make such an election at a later time in these Cases.

10

part where there was "simply nothing to reorganize" and no reason to continue the reorganization). By the Debtors' own admission, it has no equity in the assets, and Torchlight has a significant deficiency claim, as such, there are no assets around which the Debtors can reorganize. Thus, it is in the best interest of the creditors to dismiss these Cases rather than pay the costs associated with a reorganization without any hope of a distribution - - such costs would only further reduce the value of the assets securing Torchlight's Indebtedness. There is no likelihood of a recovery to any creditor other than Torchlight.

23. The element of the best interest of the "estate" focuses upon whether the economic value of the estate is greater inside or outside of bankruptcy. *See In re OptInRealBig.com, LLC*, 345 B.R. 277, 290 (Bankr. D. Colo. 2006) (*quoting In re Staff Inv. Co.*, 146 B.R. 256, 261 (Bankr. E.D. Cal. 1993) ("The element of the best interest of the estate focuses upon whether the economic value of the estate is greater inside or outside of bankruptcy. The estate is defined in terms of interests in property.")); *In re Clark*, 1995 WL 495951, at *5 (N.D. Ill. Aug. 17, 1995). The prime criterion for assessing the interests of the estate is the maximization of its value as an economic enterprise. *See id; In re Babayoff*, 2011 WL 611659, at *15 (Bankr. E.D.N.Y. Feb. 16, 2011) (holding that the Court should seek "vigorous maximization of the value of the [Debtors'] economic enterprise").

24. Here, dismissal of these Cases will maximize the estates' value because the alternative, continued progress through this chapter 11 reorganization, is unnecessary and will impose significant additional administrative costs upon the estates. In fact, the Debtors have

11

obtained a carve-out of $1 million for fees and expenses of the Debtors' counsel,[12] while these Cases only "have trade payables outstanding in an amount of approximately $4.4 million for expenses incurred in the ordinary course of operating the Properties."[13] This doesn't include the costs of the Debtors' financial advisors ($125,000 a month), two law firms for the Committee and the Committee's financial advisor ($75,000 per month). Pursuant to the Debtors' Revised 13 week Budget, the proposed amount to be paid to Debtors' counsel ($1.5 million) is almost 35% of the amount owed to trade creditors, when you add in the budgeted amounts for CBRE, KCC and Committee Professionals, the total is an astounding $2,529,000 for professional fees, almost **60%** of the total outstanding trade debt. Accordingly, to maximize the value of the recovery to the only creditor with any chance of recovery, dismissal of the Cases is preferred in this instance.

25. If the Court rules that these Cases should be dismissed, Torchlight will be ready to install a property manager and use its Cash Collateral to properly maintain and run the Properties so that no tenant is displaced or loses necessary services.

B. **Conversion of the Cases.**

26. Alternatively, this Court should convert these Cases to chapter 7. Simply because the Debtors wish to remain in chapter 11 does not mean that it should be so. *See United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs. (In re Timbers of Inwood Forest Assocs., Ltd)*, 808 F.2d 363, 374 (5th Cir. 1987) (Clark, C.J., concurring) ("Reorganization [under Chapter 11]

---

[12] *See* The Second Interim Cash Collateral Order, ¶15(a)(ii). Curiously, the Debtors originally requested a carve-out for their counsels' fees and expenses of an amount "**not to exceed $100,000**," yet somehow this amount multiplied by **ten times** when the proposed order was submitted to this Court for entry. Given the nature of these pleadings, $1 million for carve-out purposes is wholly unnecessary and unreasonable. *See Proposed Interim Order (Exhibit 2) to the Motion of the Debtors and Debtors In Possession For Entry of Interim and Final Orders (I) Authorizing the Use of Lenders' Cash Collateral, (II) Granting Adequate Protection Pursuant to 11 U.S.C. §§ 361 and 363 and (III) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001(b)* [Docket No. 5], ¶14(a)(ii).

[13] *See* Declaration, ¶15.

12

RLF1 3978837v. 1

is not a Holy Grail to be pursued at any length."); *see also In re Great American Pyramid Joint Venture*, 144 B.R. 780, 789 (Bankr. W.D. Tenn. 1992) ("Not surprisingly, all troubled businesses cannot be rehabilitated or successfully reorganized under chapter 11, which chapter is clearly not a panacea for all problems."). The Debtors are not "reorganizing" and have no hope of rehabilitation. *See generally* 7 COLLIER ON BANKRUPTCY ¶ 1112.06[6][a][ii], p. 1112-28 to 29 (footnotes omitted) ("'Rehabilitation' is not another word for reorganization. Rehabilitation means to establish a business. Whereas confirmation of a plan could include a liquidation plan, rehabilitation does not include liquidation.") (*citing In re 15375 Mem'l Corp.*, 386 B.R. 548, 552 (Bankr. D. Del. 2008).

27. It is apparent that the Debtors' attempt to reorganize or rehabilitate is destined for failure; Torchlight's potential credit bid or possible section 1111(b) election will negate any possibility of a successful plan of reorganization. Accordingly, these Cases should - - indeed must - - be converted to Chapter 7. *Stage I Land Co. v. United States*, 71 B.R. 225, 231 (D. Minn. 1986) ("The stated purpose of Chapter 11 of the Bankruptcy Code is the rehabilitation of a viable business. Absent a reasonable possibility of an effective reorganization, a case should be dismissed at its outset for cause."); *see also In re Macon Prestressed Concrete Co.*, 61 B.R. 432, 436 (Bankr. M.D. Ga. 1986) ("If it is apparent that the debtor has no profitable core around which to structure a plan of reorganization, if the debtor is faced with continuing losses, and if the debtor's assets are declining in value, the best interest of creditors may require the court to order liquidation of the debtor's estate under Chapter 7."); *see also In re Chips 'N Twigs, Inc.*, 58 B.R. 109, 112 (Bankr. E.D. Pa. 1986) ("[I]f there are insufficient assets to cover all administration expenses in a chapter 11 case, typically expenses should not be incurred in the ordinary course of operating the business, but rather the case should be converted to a liquidation

13

proceeding under chapter 7"); *see In re Winshall Settlor's Trust*, 758 F.2d 1136, 1137 (6th Cir. 1985) ("The purpose of Chapter 11 reorganization is to assist financially distressed business enterprises by providing them with breathing space in which to return to a viable state . . .' [I]f there is not a potentially viable business in place worthy of protection and rehabilitation, the Chapter 11 effort has lost its raison d'etre . . . .'"; *see also In re Great American Pyramid*, 144 B.R., at 791 ("[T]he debtors' privilege to seek to reorganize must be balanced against protection of creditors' competing and countervailing interests on a case-by-case basis.").

28. Under Sections 1112(b)(1) and (2) of the Bankruptcy Code, a Court shall convert a debtor's chapter 11 case to chapter 7 unless there are unusual circumstances identified by the Court that establish that conversion is not in the best interests of creditors and the estate, and the debtor can establish the grounds set forth in 1112(b)(2). *See In re Orbit Petroleum, Inc.*, 395 B.R. 145, 149 (Bankr. D. N.M. 2008); 7 COLLIER ON BANKRUPTCY ¶ 1112.05[2], p. 1112-44-45. Moreover, Section 1112(b)(4) of the Bankruptcy Code specifies that a debtor's chapter 11 case shall be converted to chapter 7 for cause if, among other things, there is "continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation."[14]

29. The Debtors may not avoid converting these Cases to chapter 7 by trying to consummate the transaction contemplated by the Proposed Financing Motion. Grounds for conversion are present here. As discussed above, cause for converting these Cases exists, as there is no reasonable likelihood of the Debtors proposing and effectuating a plan of reorganization.[15]

---

[14] *See generally* 7 COLLIER ON BANKRUPTCY ¶ 1112.04[6] (notwithstanding the "and" after 1112(b)(4)(O), the list of items that constitute "cause" in 11112(b)(4) is not exclusive and the "and" should really be an "or").

[15] *See* Section III.A. above.

30. There are no unusual circumstances present in these Cases that would justify keeping them in chapter 11. These Cases should now be converted to chapter 7 so that a trustee can efficiently minimize costs and expenses, and orchestrate an orderly disposition of the Debtors' assets.

31. This Court should convert these Cases to chapter 7. It is unjust for the Court to permit these Chapter 11 cases to be financed "on the back" of Torchlight for the sole benefit of the Debtors, the non-debtor affiliates, and their professionals who have reaped, and will continue to reap, the benefit from the Properties and the chapter 11 administration of these Cases. The Supreme Court has stated that creditors should not bear the brunt of reorganization. *See Case v. Los Angeles Lumber Prods. Co., Ltd.*, 308 U.S. 107, 119 n. 14 (1939) ("The preservation of business enterprises must not be at the expense of creditors." (citation omitted).[16] Conversion to chapter 7 and appointment of a trustee is appropriate.

32. For the reasons set forth herein, Torchlight respectfully requests that this Court dismiss these Cases, or in the alternative, convert these Cases to cases under chapter 7 of the Code.

---

[16] "Congress designed the reorganization process to provide a forum for the negotiated resolution of the debtor's case in a manner that is as accommodating as possible . . . [but] not every case is capable of bearing the weight of this idea. In reality, while the chapter 11 forum provides a medium for negotiation and an opportunity to better accommodate the interests of a broad range of constituents by potentially preserving the value of the debtor as a going concern, the Code does not guarantee this result or even require its pursuit beyond the point at which the costs are not justified or the intended benefits of the process are unlikely to be obtained. Moreover, nothing in the Code establishes that a chapter 11 case should be maintained solely because it offers the only hope for a particular class of creditors or interest holders to receive something on account of their claims or interests." 7 COLLIER ON BANKRUPTCY ¶ 1112.04[5][b], p. 1112-24 (footnotes omitted).

WHEREFORE, Torchlight requests that this Court (i) dismiss or, alternatively, convert these Cases to cases under chapter 7 of the Code, and (ii) grant such other and further relief as is just.

Dated: Wilmington, Delaware
April 13, 2011

**RICHARDS, LAYTON & FINGER, P.A.**

*/s/ T-McRt*

Paul N. Heath (Bar No. 3704)
Chun I. Jang (Bar No. 4790)
Travis A. McRoberts (Bar No. 5274)
One Rodney Square
920 N. King Street
Wilmington, DE 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701
heath@rlf.com
jang@rlf.com
mcroberts@rlf.com

--and--

ANDREWS KURTH LLP
Monica S. Blacker (TX Bar No. 00796534)
1717 Main Street, Suite 3700
Dallas, Texas 75201
Telephone: (214) 659-4400
Facsimile: (214) 659-4401
monicablacker@andrewskurth.com

**COUNSEL FOR TORCHLIGHT LOAN SERVICES LLC**