## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-----------------------------------------------------------x

|  |  |
|---|---|
| In re | : Chapter 11 |
|  | : |
| PJ Finance Company, LLC, *et al.*,[1] | : Case No. 11-10688 (BLS) |
|  | : |
| Debtors. | : (Jointly Administered) |
|  | : |

-----------------------------------------------------------x  Related to Docket Nos. 5, 21, 34, 48, 100 and 230

### FIFTH INTERIM ORDER (I) AUTHORIZING THE USE OF LENDERS' CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION PURSUANT TO 11 U.S.C. §§ 361 AND 363 AND (III) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001(b)

Upon the motion (the "Motion") [D.I. 5], of the above-captioned debtors and

debtors in possession (each a "Debtor" and collectively, the "Debtors"), (a) seeking this Court's

authorization, pursuant to section 363(c) of title 11 of the United States Code, 11 U.S.C. §§ 101,

*et seq.* (as amended, the "Bankruptcy Code"), to use Cash Collateral (as defined below) and,

pursuant to Sections 361 and 363 of the Bankruptcy Code, to provide adequate protection to the

Master Servicer,[2] the Trustee and the Special Servicer (collectively, the "Mortgage Loan Parties"),

for themselves and for the benefit of the holders of the CMBS, with respect to any diminution in

the value of the Mortgage Loan Parties' interests in the Debtors' properties (collectively, the

"Mortgaged Properties") by virtue of any valid, enforceable and unavoidable mortgage

(collectively, the "Prepetition Mortgages") and any other collateral, as set forth in the Prepetition

Loan Documents (as defined herein) by virtue of any valid, enforceable and unavoidable security

interest (collectively, the "Other Collateral", and together with the Mortgaged Properties,

---

[1] The Debtors are the following seven entities (the last four digits of their respective taxpayer identification numbers, if any, follow in parentheses): PJ Finance Company, LLC (8895), PJ Holding Company Manager, LLC (8895), PJ Holding Company, LLC (8895), Alliance PJRT GP, Inc. (1787), Alliance PJWE GP, L.L.C. (8133), Alliance PJRT Limited Partnership (1789) and Alliance PJWE Limited Partnership (8198). The mailing address of each of the Debtors solely for purposes of notices and communications is 1200 North Ashland Avenue, Suite 600, Chicago, Illinois 60622.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings as set forth in the Motion.

collectively, the "Prepetition Collateral"), including, to the extent applicable, for the use of the Cash Collateral, the use, sale, lease, decline in market price or other diminution in value of the Prepetition Collateral other than the Cash Collateral, or the imposition of the automatic stay pursuant to Section 362(a) of the Bankruptcy Code and determining such adequate protection to be adequate under the circumstances of these cases; (b) seeking a preliminary hearing (the "Preliminary Hearing") on the Motion to consider entry of an emergency interim order pursuant to Bankruptcy Rule 4001(b) (the "First Interim Order") authorizing the Debtors to use Cash Collateral; and (c) requesting that a final hearing (the "Final Hearing") be scheduled, and that notice procedures in respect of the Final Hearing be established by this Court to consider entry of a final order (this "Final Order") authorizing on a final basis the Debtors' use of the Cash Collateral; and the Preliminary Hearing on the Motion having been held before this Court on March 8, 2011; and the First Interim Order having been entered by this Court on March 8, 2011 [D.I. 21]; and a second interim hearing on the Motion having been held before this Court on March 17, 2011 (the "Second Interim Hearing"); and the second interim order (the "Second Interim Order") having been entered by this Court on March 17, 2011 [D.I. 48]; and a third interim hearing on the Motion having been held before this Court on April 6, 2011 (the "Third Interim Hearing"); and the third interim order (the "Third Interim Order") having been entered by this Court on April 6, 2011 [D.I. 100] ; and a fourth interim hearing on the Motion having been held before this Court on June 2, 2011 (the "Fourth Interim Hearing" and together with the Preliminary Hearing, the Second Interim Hearing, the Third Interim Hearing and the Fourth Interim Hearing, collectively, the "Interim Hearings"); and the fourth interim order (the "Fourth Interim Order" and together with the First Interim Order, the Second Interim Order, the Third Interim Order and the Fourth Interim Order, collectively, the "Interim Orders") having been entered by this Court on June 2, 2011 [D.I. 230]; and a further hearing ("Fifth Interim Hearing") to consider entry of this fifth interim order (this "Order") on the Motion having been scheduled

for July 20, 2011 pursuant to Bankruptcy Rule 4001(b) authorizing the Debtors to use Cash Collateral; and due and sufficient notice of the Motion and the Fifth Interim Hearing under the circumstances having been given; and upon the entire record made by the Debtors at the Interim Hearings and the Fifth Interim Hearing, and this Court having found good and sufficient cause appearing therefor,

## THIS COURT HEREBY FINDS AND CONCLUDES AS FOLLOWS:[3]

A.      Commencement of Cases. On March 7, 2011 (the "Petition Date"), each of the Debtors filed with this Court a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.   On March 8, 2011, this Court entered an order approving the joint administration of the Debtors' chapter 11 cases (the "Chapter 11 Cases").   The Debtors are in possession of and operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On March 16, 2011, the Office of the United States Trustee appointed an official committee of unsecured creditors (the "Creditors' Committee") in these Chapter 11 Cases.  No trustee or examiner has been appointed in these Chapter 11 Cases.

B.      Jurisdiction: Venue. This Court has jurisdiction over the Chapter 11 Cases and the Motion pursuant to 28 U.S.C. §§ 157(b) and 1334.   Consideration of the Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  The predicates for the relief sought herein are sections 105, 361, 362, and 363 of the Bankruptcy Code and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure.  Venue of the Chapter 11 Cases in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C.      Adequate Notice. On March 7, 2011, the Debtors filed the Motion with this Court and pursuant to Bankruptcy Rules 2002, 4001 and 9014, and the Local Bankruptcy Rules of this Court, the Debtors provided notice of the Motion, the Interim Hearings and the Fifth Interim

---

[3]       Pursuant to Bankruptcy Rule 7052, any findings of fact contained herein that may be construed as matters of law shall be treated as conclusions of law as if set forth below, and vice versa.

Hearing by electronic mail, facsimile, hand delivery or overnight delivery to the following parties and/or to their counsel as indicated below: (a) the Office of the United States Trustee for the District of Delaware, (b) counsel for the Creditors' Committee, (c) the Trustee, (d) counsel to the Special Servicer, and (f) parties requesting notice in these cases pursuant to Federal Rule of Bankruptcy Procedure (the "Bankruptcy Rules") 2002 (collectively, the "Notice Parties"). Given the nature of the relief sought in the Motion, this Court concludes that the foregoing notice of the Motion, the Budget (as defined in paragraph F of this Order), and the Fifth Interim Hearing was sufficient and adequate under the circumstances and complies with the Bankruptcy Code, the Bankruptcy Rules, and any other applicable law, and no further notice relating to this proceeding and the Fifth Interim Hearing is necessary or required.

D.    Cash Collateral Defined. For purposes of this Order, the term "Cash Collateral" shall mean and include all "cash collateral" as defined by section 363(a) of the Bankruptcy Code in which any of Mortgage Loan Parties holds a valid, enforceable and unavoidable lien or security interest and shall include and consist of, without limitation, all of the respective cash proceeds of the Postpetition Collateral (as defined below) and Prepetition Collateral in which any of the Mortgage Loan Parties holds an interest, including, without limitation: (i) any and all insurance proceeds received prior to the Petition Date; (ii) any and all amounts used to fund the reserve for taxes; (iii) any and all amounts currently in, or to be deposited in the Borrower's Remainder Account (as that term is defined in the Prepetition Loan Documents); (iv) any and all amounts currently in, or to be deposited in the Cash Collateral Reserve Account (as that term is defined in the Prepetition Loan Documents); (v) any and all amounts currently in, or to be deposited in the Replacement Reserve Account (as that term is defined in the Prepetition Loan Documents); (vi) any and all amounts currently in, or to be deposited in the Required Repair Account (as that term is defined in the Prepetition Loan Documents); (vii) any and all amounts currently in, or to be deposited in the Extraordinary

Receipts Account (as that term is defined in the Prepetition Loan Documents); and (viii) any and all amounts currently in, or to be deposited in the Casualty and Condemnation Proceeds Reserve Account (as that term is defined in the Prepetition Loan Documents).

E.   <u>Exigent Circumstances</u>.   If the Debtors' use of Cash Collateral were to be discontinued, the Properties will deteriorate, vacancy rates will rise, the operating shortfall will start to accelerate, employees will leave, the Manager may attempt to cancel the Management Agreements and tenants will terminate their leases, thereby severely impairing the value of the Prepetition Collateral and other assets of the Debtors' estates. Accordingly, the Debtors and their estates will suffer immediate and irreparable harm unless the Debtors are immediately authorized to use Cash Collateral on the terms and conditions set forth herein and in accordance with the Budget, defined below.

F.   <u>Budget</u>.   Attached hereto as <u>Exhibit 1</u> is a budget (as may be amended in accordance with this paragraph, the "<u>Budget</u>") setting forth on a line-item basis the Debtors' anticipated cumulative cash receipts and expenditures on a weekly basis which the Debtors expect to incur during each weekly period under the Budget. The Budget is an integral part of this Order. The Debtors shall provide the Special Servicer and the Creditors' Committee with an updated Budget for at least the next succeeding thirteen (13) week period within ten (10) days prior to the end of each calendar month, with the first such updated Budget to be delivered on or before August 21, 2011. The Budget and any modifications to, or extensions, amendments or updates of, the Budget shall be in form and substance acceptable to and approved in writing by the Creditors' Committee and the Special Servicer, which consent shall not be unreasonably withheld, or upon order of the Court.

G.   <u>Immediate Entry of this Order</u>.   The Debtors have requested immediate entry of this Order pursuant to, and have complied with, Bankruptcy Rule 4001(b)(2) and Local Bankruptcy Rule 4001-2. For the reasons stated above and as stated on the record at the Interim

Hearings and the Fifth Interim Hearing, this Court concludes that immediate entry of this Order is in the best interests of the Debtors' estates and creditors in order to avoid immediate and irreparable harm to the Debtors and their properties and estates.

Based upon the foregoing findings and conclusions, and upon the record made before this Court at the hearing on the Motion, and good and sufficient cause appearing therefore:

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT**;

1.     <u>Motion Granted</u>.  The Motion is granted, and the use of Cash Collateral on an interim basis is authorized, subject to the terms and conditions set forth in this Order.  Subject to the terms hereof, this Order is valid immediately and is fully effective upon its entry.  All objections to the entry of this Order that have not been withdrawn are hereby overruled, provided however, that the objection to the Motion filed by Torchlight Loan Services, LLC, as Special Servicer ("<u>Torchlight</u>") [D.I. 40] and the supplemental objection to the Motion filed by Torchlight [D.I. 212] (collectively with the objection, the "<u>Torchlight Objection</u>") are preserved in all respects to the Final Hearing.  All actions taken in connection with or reliance on the Interim Orders are hereby reaffirmed in full as if taken in connection with or in reliance on this Order.

2.     <u>Authorization</u>.  The Debtors are authorized to use Cash Collateral in accordance with and pursuant to the terms and provisions of this Order and the Budget (as may be amended in accordance with paragraph F above) during the period (the "<u>Cash Collateral Period</u>") from the Petition Date through and including the Termination Date (as defined in paragraph 13 of this Order).  Until such time as the Court concludes the Final Hearing, the Debtors are authorized to use Cash Collateral to the extent set forth in the Budget and in excess of the expenses set forth in the Budget so long as the percentage deviation from the amount set forth in the Budget shall not exceed ten percent (10%) for any line item or ten percent (10%) in the aggregate; provided, however, that if the variance for a particular line item exceeds 10%, but the total dollar amount expended in any week in excess of the budget for that line item is less than $1,000, such variance

shall be deemed to have been consented to by the Mortgage Loan Parties and shall not be a violation of this Fifth Interim Order. Notwithstanding the foregoing, in the event that the Debtors use Cash Collateral in an amount less than the amount set forth in the Budget, or have used an amount that was less than the aggregate amount set forth in any prior budgets attached to the Interim Orders (the "Interim Order Budgets"), in any applicable category, the Debtors shall be entitled to roll-forward the amount of the difference between (i) the amount set forth in the Interim Order Budgets or the Budget, as the case may be, in such category and (ii) the amount of Cash Collateral actually used in such category, and apply that difference toward the current and successive weekly periods until exhausted. If the Special Servicer, in its sole discretion, and with the prior consent of the Creditors' Committee, in writing or pursuant to order of this Court on notice to all parties, permits the use of Cash Collateral in excess of any terms and conditions set forth in this Order (including, without limitation, the Budget), such use shall be governed by the rights, priorities, benefits and protections of this Order. Notwithstanding anything set forth above, the 10% variance requirement shall not apply to or include (i) any item set forth in the Budget under the heading "Cash Inflows," (ii) the line item in the Budget labeled "AZ Hail Damage," (iii) any increase in the actual bank charges over the "Bank Charges" line item in the Budget, (iv) the line item in the Budget labeled "Taxes," (v) the line item in the Budget labeled "Insurance" or (vi) the line item in the Budget labeled "Security Deposit Refunds." Notwithstanding anything set forth in this paragraph, with respect to those expenditures set forth in the Budget labeled "Construction Management Fees," the Debtors shall obtain the prior written consent of the Special Servicer, which consent shall not be unreasonably withheld, to enter into any contract after the date of this Order in excess of $100,000 for which a construction management fee will be due. If the Debtors do not first obtain the aforementioned prior written consent of the Special Servicer, the Debtors shall not be authorized to pay the applicable construction management fee associated with the contract that was not approved by the Special Servicer.

3.    Deposit Accounts.  All cash receipts, Cash Collateral and all proceeds from the sale, transfer or other disposition of any Prepetition Collateral (the "Prepetition Collateral Proceeds") shall be promptly deposited into the same bank accounts into which the collections and proceeds of the Prepetition Collateral were deposited under the Prepetition Loan Documents (or in such other accounts as are designated by the Special Servicer from time to time in writing to the Debtors) (the "Deposit Accounts").  To the extent that any Mortgage Loan Party holds a valid, enforceable and unavoidable security interest in the Prepetition Collateral Proceeds, such Prepetition Collateral Proceeds (a) shall remain subject to (i) all of the security interests and liens of the Mortgage Loan Parties and (ii) all of the priorities and rights between and among the Mortgage Loan Parties as governed by the Prepetition Loan Documents and (b) shall be treated in accordance with the terms and conditions of this Order.  During the Cash Collateral Period, the Debtors shall continue to fund the tax and insurance reserves in accordance with paragraph 10 of this Order.  All Cash Collateral amounts, including those amounts to fund the reserves, may be used by the Debtors in accordance with the Budget.

4.    Accounting of Cash Collateral:  Access to Books and Records.  The Debtors shall, pursuant to section 363(c)(4) of the Bankruptcy Code, segregate and account for all Cash Collateral which is now, and which may hereafter be, in their possession, custody or control, and other than in accordance with the Budget shall not, without further order of this Court, transfer any of such Cash Collateral to any non-Debtor affiliates or subsidiaries.  The Debtors shall provide to the Special Servicer and the Creditors' Committee, so as actually to be received within five (5) business days following the end of each weekly period, weekly line-by-line variance reports for the preceding weekly periods and on a cumulative basis from the Petition Date to the report date, comparing actual cash receipts and disbursements to amounts projected in the applicable Budget.  The Debtors shall provide the Special Servicer and the Creditors' Committee with an updated Budget for at least the next succeeding thirteen (13) week period

within ten (10) days prior to the end of each calendar month, with the first such updated Budget to be delivered on or before August 21, 2011. The Budget and any modifications to, or extensions, amendments or updates of, the Budget shall be in form and substance acceptable to and approved in writing by the Special Servicer and the Creditors' Committee, which consent shall not be unreasonably withheld, or upon order of the Court. The Special Servicer and the Creditors' Committee shall each be provided with reasonable access to the Debtors' books and records related to the Prepetition Collateral.

5.    Postpetition Collateral Defined.    As used in this Order, the term "Postpetition Collateral" means (i) the Prepetition Collateral and (ii) all of the Debtors' prepetition, existing as of the Petition Date and after acquired real and personal, tangible and intangible property and assets of the Borrowers, including, without limitation, the Lockbox and all rents and deposits deposited therein (to the extent allowed under 11 U.S.C. § 552(b)(1)); provided, however, that the Postpetition Collateral shall not include any claims, causes of action, or proceeds thereof, (i) under section 544, 545, 547, 548, 549 or 550 of the Bankruptcy Code (collectively, the "Avoidance Actions") or (ii) arising from any successful action by the estates or its representatives against the directors and/or officers of the Debtors or third parties for breaching their fiduciary duties to the Debtors, the Debtors' estates and/or the Debtors' creditors, including the proceeds of any director or officer liability insurance policy (collectively, the "D&O Action Proceeds").

6.    Prior Lien Defined.    As used in this Order, the term "Prior Liens" means only valid, enforceable, and un-avoidable liens and security interests other than the liens held by the Trustee, in the Prepetition Collateral or any other property or assets of the Debtors that were perfected prior to the Petition Date (or perfected on or after the Petition Date to the extent permitted by section 546(b) of the Bankruptcy Code), which are not subject to avoidance, disallowance, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy

law and which, with respect to the Prepetition Senior Liens, are senior in priority to the Prepetition Senior Liens under applicable law and after giving effect to any lien release, subordination or inter-creditor agreements. For the avoidance of doubt, the Prior Liens shall not include, or be deemed to include, any or all of the Prepetition Senior Liens, or Adequate Protection Senior Liens (as defined below).

7. Adequate Protection. Until the repayment in full in cash of the value of any interests of the Mortgage Loan Parties in the Prepetition Collateral (the "Prepetition Senior Obligations") or the effective date respecting any order confirming a plan in the Debtors' cases, as adequate protection, the Mortgage Loan Parties, for themselves and for the benefit of the holders of the CMBS, as their interests appear, are hereby granted the following:

a. Adequate Protection Payments. On or before each of August 11, 2011 and September 11, 2011, the Debtors shall pay to the Mortgage Loan Parties $750,000 to be applied by the Special Servicer in accordance with the Prepetition Loan Documents, or further order of the Court.

b. Replacement Liens. Pursuant to sections 361(2), 362, 363(c)(2), and 363(e) of the Bankruptcy Code, the Mortgage Loan Parties, for themselves and for the benefit of the holders of the CMBS, are hereby granted by each of the Debtors, continuing valid, binding, enforceable and perfected first priority liens and security interests in and on all of the Postpetition Collateral to the same extent, priority and enforceability held on the Prepetition Collateral as of the Petition Date (the "Adequate Protection Senior Liens"). The Adequate Protection Senior Liens (i) shall be subordinate only to the Prepetition Senior Liens, the Prior Liens and the Carve-Out, and (ii) shall not attach to or be collectible from the Avoidance Actions and the proceeds thereof, and the D&O Action Proceeds.

c. Adequate Protection Senior Claim. To the extent provided by section 507(b) of the Bankruptcy Code, the Mortgage Loan Parties, for themselves and for the

benefit of the holders of the CMBS, shall have an allowed super-priority administrative expense claim (the "Adequate Protection Senior Claim") against each Debtor and its respective estate to the extent of any diminution in the Prepetition Collateral and to the extent the Replacement Liens prove inadequate to protect such interests. The Adequate Protection Senior Claim shall not be collectible against the Carve-Out, the Avoidance Actions and the proceeds thereof, and the D&O Action Proceeds.

d. Adequate Protection Senior Obligations. The Adequate Protection Senior Liens and Adequate Protection Senior Claim shall secure the payment of the Adequate Protection Senior Obligations (defined below) in an amount equal solely to the extent of any actual diminution in the value of the Mortgage Loan Parties' interests in the Prepetition Collateral from and after the Petition Date (the "Adequate Protection Senior Obligations"), resulting from the following: (i) the use by the Debtors of the Prepetition Collateral, including, without limitation, the Cash Collateral, (ii) the imposition of the automatic stay pursuant to section 362(a) of the Bankruptcy Code, (iii) the physical deterioration, consumption, use, sale, lease, or disposition of the Prepetition Collateral, or (iv) the imposition and payment of the Carve-Out; provided, however, that the use of Cash Collateral in accordance with the interim budgets and Budget does not create the presumption of diminution or non-diminution in the value of any interest of the Mortgage Loan Parties' interests in the Prepetition Collateral; provided further, however, any waiver of the Debtors' rights under sections 506(c) or 552 of the Bankruptcy Code does not alter the manner in which diminution in value is determined; provided further, however, that notwithstanding anything contained in this Order to the contrary, the Adequate Protection Senior Lien and the Adequate Protection Senior Claim shall not extend to the estates and assets of the Debtors that did not grant prepetition liens against, or security interests in, their assets in favor of the Mortgage Loan Parties. Other than the Carve-Out, the Avoidance Actions, the D&O Action Proceeds, and Prior Liens, no other claims, administrative expenses, liens or security interests,

whether for adequate protection or otherwise, shall be senior or equal to or *pari passu* with the Prepetition Senior Liens, Adequate Protection Senior Liens or Adequate Protection Senior Claims, without the express written consent of the Special Servicer given in accordance with the Prepetition Loan Documents (which consent may be withheld in its sole discretion). All parties retain and reserve all their rights to dispute the validity, priority, enforceability and perfection of any asserted Prior Lien and the Mortgage Loan Parties' claims and liens.

8.    <u>Credit Bid</u>.  The Mortgage Loan Parties shall, to the extent they hold a valid, enforceable and unavoidable lien or security interest in the Prepetition Collateral, have the unqualified ability to credit bid for any assets of the Debtors that are subject to the Mortgage Loan Parties' liens, offered at any sale, lease, or other disposition outside the ordinary course of business, including, without limitation, sales occurring pursuant to section 363 of the Bankruptcy Code or included as part of any reorganization plan subject to confirmation under section 1129(b)(2)(A)(iii) of the Bankruptcy Code.

9.    <u>Perfection</u>.  To the extent that any of the Mortgage Loan Parties holds a valid, enforceable and unavoidable lien or security interest in the Prepetition Collateral, the Adequate Protection Senior Liens shall be, and they hereby are, deemed duly perfected and recorded under all applicable federal or state or other laws as of the Petition Date, and no notice, filing, mortgage recordation, possession, further order, or other act, shall be required to effect such perfection. The Mortgage Loan Parties may (in their sole discretion and expense), but shall not be required to, file a certified copy of this Order in any filing or recording office in any state, county or other jurisdiction in which any Debtor has real or personal property and such filing or recording shall be accepted and shall constitute sufficient evidence of perfection of such applicable parties' interests in the Postpetition Collateral at the time and on the date of entry of this Order, but with the priorities as set forth herein.

10.    Tax and Insurance Reserve.  The Debtors shall continue to make monthly payments to the Master Servicer to fund the reserves for taxes and insurance, in accordance with section 7.2 of the Prepetition Loan Agreement; provided, however that the monthly estimated payments required for reserve with respect to real property taxes shall be equal to the amount listed for "Property Taxes" as provided in the Budget.

11.    Attachment.   To the extent the liens created by the Prepetition Loan Documents are valid, perfected and non-avoidable, such liens shall attach to any and all proceeds of the Prepetition Collateral realized by the estate of any Debtor in connection with the sale, transfer or other disposition of such Prepetition Collateral, subject to the lien priorities set forth herein.

12.    Section 506(c) Waiver.  Subject to the Carve-Out and entry of the Final Order, and in consideration of the use of Cash Collateral in accordance with the Budget and the Carve-Out, no costs or expenses of administration or other charge, lien, assessment or claim incurred at any time (including, without limitation, any expenses set forth in the Budget by any Debtor or any other person or entity shall be imposed against the Mortgage Loan Parties and the holders of the CMBS or the Prepetition Collateral under section 506(c) of the Bankruptcy Code or otherwise, and the Debtors, on behalf of their estates, waive any such rights.

13.    Termination.   Subject to the Carve-Out, the use of Cash Collateral authorized herein shall terminate (the effective date of such termination, the "Termination Date") effective the first business day after a final order of the Court terminates the use of Cash Collateral or upon the occurrence of an Event of Default as set forth in paragraph 14.

14.    Events of Default.  The occurrence of any of the following events, unless waived in writing by the Special Servicer, shall constitute an event of default (collectively, the "Events of Default"):

a.    the failure by the Debtors to (i) comply with the Budget and any variance permitted herein or (ii) to perform, in any material respect, any other terms, provisions, conditions, covenants, or obligations under this Fourth Interim Order, subject to a grace period and right to cure of five (5) business days after delivery to the Debtors, with a copy to counsel for the Creditors' Committee or the Special Servicer, as the case may be, of a notice of a failure to perform;

b.    the Debtors' obtaining of credit or the incurring of indebtedness that is (i) secured by a security interest, mortgage or other lien on all or any portion of the Postpetition Collateral which is equal or senior to any security interest, mortgage or other lien of the Mortgage Loan Parties (whether for adequate protection or otherwise), (ii) entitled to priority administrative status which is equal or senior to that granted to the Mortgage Loan Parties (whether for adequate protection or otherwise), or in each case any Debtor applies for, consents to, or acquiesces in, any such relief or (iii) found by the Court to be in material violation of the terms and conditions of the Prepetition Loan Documents;

c.    the entry of an order by the Court granting, or any Debtor applies for, consents to, or acquiesces in, relief from or modifying the automatic stay of section 362 of the Bankruptcy Code (i) to allow any creditor to execute upon or enforce a lien on or security interest in any Postpetition Collateral having a value in excess of $10 million, or (ii) with respect to any lien of or the granting of any lien on any Postpetition Collateral to any state or local environmental or regulatory agency or authority, which in either case would have a material adverse effect on the business, operations, property, assets, or condition, financial or otherwise, of the Debtors;

d.    reversal, vacatur, or modification (other than a modification with the express prior written consent of the Special Servicer) of this Order or any Debtor applies for, consents to, or acquiesces in, any such relief;

e.	(i) dismissal of any of the Chapter 11 Cases, (ii) conversion of any of the Chapter 11 Cases to cases under Chapter 7 of the Bankruptcy Code, or (iii) appointment of a Chapter 11 trustee or examiner with enlarged powers or other responsible person, or any Debtor applies for, consents to, or acquiesces in, any such relief; provided, however, that the use of Cash Collateral shall continue to be permitted in accordance with the Budget for a period of thirty calendar days from the Termination Date with respect to events (ii) and (iii) herein;

f.	a default by any of the Debtors in reporting financial information as and when required under this Order, subject to a grace period and right to cure of five (5) business days after delivery to the Debtors, with a copy to counsel for the Creditors' Committee or the Special Servicer, as the case may be, of a notice of a failure to provide such information;

g.	failure of the Debtors on or before July 25, 2011 to deliver to the Special Servicer a pro forma projection of the operations of the Portfolio through October 2019 incorporating the assumptions embodied in the plan term sheet under negotiations between the Special Servicer and the Debtors (with a copy to counsel for the Committee, however, failure to deliver to Committee counsel shall not constitute an Event of Default);

h.	failure of the Debtors on or before August 31, 2011 to file a plan and related disclosure statement in their cases that are reasonably acceptable in form and substance to the Special Servicer (and reasonably acceptable to the Committee, however, failure of the plan to be reasonably acceptable to Committee shall not constitute an Event of Default).

15.	Rights and Remedies Upon Event of Default. Immediately upon the occurrence and during the continuation of an Event of Default (except with respect to an Event of Default described in Paragraph 14(h)), the Special Servicer may declare a termination, reduction or restriction of the ability of the Debtors to use any Cash Collateral. The Special Servicer shall give notice of termination, or reduction or restriction, by facsimile (or other electronic means) to counsel to the Debtors, the Debtors', counsel to the Creditors' Committee, and the Office of the

United States Trustee.  Unless otherwise ordered by the Court, upon the expiration of ten (10) business days after the notice of the termination, reduction or restriction (the "Remedies Notice Period") the Debtors' right to use Cash Collateral shall automatically cease in the event of a termination notice, or shall be reduced or restricted according to such notice.  During the Remedies Notice Period, the Debtors and the Creditors' Committee shall be entitled to seek an emergency hearing with the Court seeking a determination whether a valid Event of Default has been declared and/or any other appropriate relief related to the Debtors' continued use of Cash Collateral.  Unless the Court determines otherwise during the Remedies Notice Period, with respect to a termination notice  the automatic stay shall automatically be terminated at the end of the Remedies Notice Period without further notice to or order of the Court (the "Termination Date"), and the Debtors shall no longer have the right to use or seek to use Cash Collateral and the Mortgage Loan Parties shall be permitted to exercise any and all remedies set forth herein, in the Prepetition Loan Documents, as applicable, and as otherwise available at law against the Postpetition Collateral, without further order of or notice, application or motion to the Court, and without restriction or restraint by any stay under sections 362 or 105 of the Bankruptcy Code, or otherwise, against the enforcement of the liens and security interest in the Postpetition Collateral or any other rights and remedies granted to the Mortgage Loan Parties with respect thereto pursuant to the Prepetition Loan Documents, the Pooling and Servicing Agreement, or this Order, as applicable ("Termination").  Upon the date that the automatic stay is terminated and the Debtors' right to use or seek to use Cash Collateral is terminated as set forth in this paragraph, the Master Servicer under the Pooling and Servicing Agreement, shall be entitled to retain, on behalf of the Mortgage Loan Parties, all funds that it holds as of such date and all funds it receives thereafter, and shall not be obligated to transfer any such funds to the Lockbox or any other account to which the Debtors may have access, unless the Court orders otherwise, subject, however, to the Carve-Out.  Notwithstanding the foregoing, in the event of an Event of Default

described in Paragraph 14(h) above, the Special Servicer and the Debtors shall seek an expedited hearing on Debtors' continued use of Cash Collateral and the Special Servicer's objection thereto.

16. <u>Rights Reserved: No Waiver</u>. The rights, objections and defenses of the Debtors or any other party-in-interest (including, but not limited to, the Creditors' Committee) to challenge the extent, priority, validity, priority, perfection or standing of the Mortgage Loan Parties' claim and lien, are expressly reserved. Nothing in the Motion or this Order shall be deemed or construed to waive any right of the Debtors or any other party-in-interest (including, but not limited to, the Creditors' Committee) or constitute an admission against interest by the Debtors or any other party-in-interest (including, but not limited to, the Creditors' Committee). Any party-in-interest, including the Debtors and the Creditors' Committee shall file any challenge to the extent, priority, validity, perfection or standing of the Mortgage Loan Parties within forty-five (45) days of entry of the Final Order.

17. <u>Carve-Out: Professional Reserve</u>.

a. <u>Generally</u>. Notwithstanding anything to the contrary contained in this Order or other order of this Court, the liens and claims of or granted to the Mortgage Loan Parties in this Order and/or the Prepetition Loan Documents shall be subject and subordinate to the payment, without duplication, of the following fees and claims (the amounts set forth below, together with the limitations set forth therein, collectively, the "<u>Carve-Out</u>"):

(i) the claims of the respective retained professionals of the Debtors, the Creditors' Committee and any other statutorily appointed committee in these Chapter 11 Cases (collectively, the "<u>Retained Professionals</u>") for fees and expenses incurred at any time on and after the Petition Date and prior to the Termination Date (the Termination Date with respect to an Event of Default described in Paragraph 14(h) above shall be the date the Court denies Debtors' request for continued use of Cash Collateral by a final order); <u>provided</u> that, in each case, such fees and expenses of the Retained Professionals are ultimately allowed on a final basis by this Court under sections 330 or 331 of the Bankruptcy Code (such fees and expenses described in this clause (i), the "<u>Pre-Termination Date Expenses</u>" and the permitted amount thereof, the "<u>Pre-Termination Date Amount</u>");

(ii)    the claims of the Retained Professionals for fees and expenses which were incurred on and after the Termination Date; provided that, in each case, such fees and expenses of the Retained Professionals are ultimately allowed on a final basis by this Court under sections 330 or 331 of the Bankruptcy Code and do not exceed $1,250,000 in the aggregate for all of the Retained Professionals, plus the fees and expenses incurred by any professionals engaged by any successor to the Debtors, including, without limitation, any trustee appointed under Chapter 11 or 7 of the Bankruptcy Code or any examiner with expanded powers, in an aggregate amount not to exceed $25,000 (such fees and expenses described in this clause "(ii)" the "Post-Termination Date Expenses" and the permitted amount thereof, the "Post-Termination Date Amount" and, together with the Pre-Termination Date Amount, the "Carve-Out Amount");

(iii)    the reasonable and documented expenses payable to members of the Creditors Committee;

(iv)    the unpaid fees payable to the United States Trustee and Clerk of the Bankruptcy Court pursuant to Section 1930 of Title 28 of the United States Code; and

(v)    unpaid operating expenses in accordance with the Budget that were incurred prior to the Termination Date, solely to the extent that such claims would have been authorized to be paid by the Debtors prior to such date, pursuant to the Budget, if the Termination Date had not occurred.

b.    Payment of Carve-Out Upon Sale. In the event of a sale or sales of all or substantially all of the assets of the Debtors, there shall be set aside and made available to the Debtors an amount of Cash Collateral or other proceeds of the disposition of the Post-Petition Collateral sufficient to enable the Debtors to reserve for the payment of the Carve-Out prior to giving effect to any such sale or sales. In the event the Portfolio is sold in single or multiple Property lots, then the Carve-Out shall be funded on an allocated basis according to the release price schedule in the Prepetition Loan Documents.

c.    Professional Reserve. Pursuant to the Interim Orders, the Debtors have placed into the Professional Reserve (as defined in the Interim Orders) an amount totaling $2,000,000. The Professional Reserve shall be held as security for the Debtors' payment of the Pre-Termination Date Amount and the Pre-Termination Date Expenses to the Retained Professionals, pursuant to the interim budgets and Budget, to each according to its respective Allocated Amount (as defined below). Notwithstanding anything to the contrary in this Order,

(i) the right of each Retained Professional to seek payment from the Professional Reserve shall be limited to its respective Allocated Amount (as defined below), as the same may be adjusted from time to time by agreement within a particular class or Court order; and (ii) except for the Carve-Out Amount, without further Court order or the consent of the Special Servicer, the Debtors shall not, following a Termination pursuant to paragraph 13 hereof, deposit any additional Cash Collateral into the Professional Reserve. The Professional Reserve shall constitute Post-petition Collateral; provided that any liens, claims and security interests (including replacement liens) of the Mortgage Loan Parties in the Professional Reserve shall be subject to the Carve-Out and payment from such Professional Reserve of the Allocated Amounts, the Pre-Termination Date Amount and the Pre-Termination Date Expenses, the Post-Termination Date Amounts and the Post-Termination Date Expenses in accordance with this Order.

        d.    Application of Professional Reserve. The term "Allocated Amount" shall mean on any date; (a) with respect to the Pre-Termination Date Amount, for each Retained Professional, the aggregate amount allocated in the interim budgets and the Budget for such Retained Professional minus the sum of (i) all payments received by such Retained Professional from Cash Collateral pursuant to the Interim Orders and this Order for services rendered or expenses incurred on or before the Termination Date and (ii) the amount of any unapplied retainer held by such Retained Professional as of the Termination Date; (b) with respect to the Post-Termination Date Amount, the pro-rata amount for all Retained Professionals is equal to $1,250,000, and an amount for any trustee appointed under Chapter 11 or 7 of the Bankruptcy Code or any examiner with expanded powers is equal to $25,000. Notwithstanding anything to the contrary in this Order, the Allocated Amount for each Retained Professional in any interim budget or the Budget may not be decreased from the amount contained in the interim budgets and the Budget without the consent of the affected Retained Professional. As and when authorized by further order of this Court, the Debtors shall be authorized to access and apply funds in the

Professional Reserve to pay the Carve-Out Amount, including the Pre-Termination Date Amount and the Pre-Termination Date Expenses, the Post-Termination Date Amounts and the Post-Termination Date Expenses, following the Termination Date. Any funds remaining in the Professional Reserve after payment in full of the lesser of the Carve-Out Amount or the aggregate of all the Pre-Termination Date Amount and the Pre-Termination Date Expenses, the Post-Termination Date Amounts and the Post-Termination Date Expenses shall be transferred to the Special Servicer for application to the Prepetition Secured Obligations or as provided by further order of this Court. If any of the Professional Reserve is not used for the specific purpose of paying the Carve Out Amount, or any Carve Out Amount or Cash Collateral used to make payment to a Retained Professional is subsequently disgorged or returned to Debtors, such amounts shall be retained or disbursed by the Debtors as provided by further order of this Court.

   e. <u>No Reduction of Amounts</u>. Subject to the terms and conditions of this Order, the Debtors shall be permitted to pay compensation and reimbursement of reasonable fees and expenses of the Retained Professionals allowed and payable under sections 328, 330 or 331 of the Bankruptcy Code, as the same may be due and payable, that constitute Pre-Termination Date Amount and Pre-Termination Date Expenses and such payments shall not reduce or be deemed to reduce the Post-Termination Date Amount or Post-Termination Date Expenses.

   f. <u>Transaction Fee</u>. Subject to the entry of an order approving Debtors' engagement of CBRE Capital Advisors, Inc. ("<u>CBRE</u>"), and to the extent that any transaction fee is owed to CBRE under its Court-approved engagement letter with the Debtors (the "<u>Transaction Fee</u>"), such Transaction Fee shall be paid exclusively out of the proceeds of the financing transaction or sale transaction giving rise to the Transaction Fee ("<u>Qualified Transaction</u>") and not out of the Carve Out Amount or any other Cash Collateral. Notwithstanding any other provision in this Order, CBRE's right to payment of the Transaction

Fee out of the Qualified Transaction shall be senior to all other right to payment or lien upon the proceeds of the Qualified Transaction.

18.    Reservation of Certain Third Party Rights.  The Creditors' Committee is hereby granted standing and the authority to seek to challenge, on behalf of the Debtors' estates, (a) the validity, extent, priority, or perfection of the mortgages, security interests and liens of any of the Mortgage Loan Parties, and (b) the validity, allowability, priority, or amount of the Pre-petition Loan, mortgages and any related debt, raising any and all claims and defenses without further motion seeking authority to bring such action and without further order of this Court (a "Challenge"); provided, however, that the Committee, prior to commencing a Challenge, shall affirmatively coordinate with the Debtors any investigation of the issues described in this paragraph.  Nothing in this Order vests or confers on any entity (as defined in the Bankruptcy Code), except for the Creditors' Committee, standing or authority to pursue any cause of action belonging to the Debtors or their estates, including any Challenge.  Except as explicitly provided for herein, this Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect or incidental beneficiary.  Any Challenge must be filed on or before forty-five (45) days after entry of the Final Order.

19.    Effect of this Order.  This Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect nunc pro tunc to the Petition Date immediately upon execution thereof.

20.    Survival.  The provisions of this Order and any actions taken pursuant hereto shall:  (a) survive the Termination Date and entry of any order (i) converting any of the Chapter 11 Cases to a case under Chapter 7 of the Bankruptcy Code;  (ii) substantively consolidating any of the Debtors or their respective estates; or (iii) dismissing or closing any of the Chapter 11 Cases; and (b) shall continue in full force and effect notwithstanding the

Termination Date or entry of any such order. This Order shall supersede the Interim Orders nunc pro tunc to the Petition Date.

21. <u>Successors and Assigns</u>. The provisions of this Order shall be binding upon and inure to the benefit of the Mortgage Loan Parties, holders of the CMBS, the Debtors and their respective estates, and their respective successors and assigns, including, without limitation, any trustee or other fiduciary hereafter appointed as a legal representative of any of the Debtors or their estates in these Chapter 11 Cases.

22. <u>Final Hearing</u>. The Motion is set for a Final Hearing to be held at _10:30_ a.m./p.m. (Eastern time) on September 2 1, 2011, with an objection deadline of 4:00 p.m. (Eastern Daylight Time) on _9/14_, 2011 (the "**Objection Deadline**"). The Debtors may file replies to any objections filed on or before 3 days following the Objection Deadline. Any objection to entry of the Final Order shall be filed with this Court, and served upon the respective counsel to the Debtors, the Creditors' Committee, the Special Servicer and the Office of the United States Trustee, on or before the Objection Deadline. The Torchlight Objection shall be deemed filed and served respecting the Final Hearing.

23. <u>Retention of Jurisdiction</u>. The Court has and will retain jurisdiction to enforce this order according to its terms.

Dated: Wilmington, Delaware
_9/20_, 2011

The Honorable Brendan L. Shannon
United States Bankruptcy Judge