# Exhibit A

# Plan

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------------- X
                        :

IN RE:                           :       CHAPTER 11
                        :

PJ FINANCE COMPANY, LLC, *et al.*,  :      CASE NO. 11-10688 (BLS)
                        :

DEBTORS.                 :       (JOINTLY ADMINISTERED)
                        :

-------------------------------------------------------------- X

**JOINT PLAN OF REORGANIZATION OF THE DEBTORS AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

**HAHN & HESSEN LLP**
Mark T. Power (NY Bar No. MP-1607)
Joseph Orbach (NY Bar No. JO-1263)
488 Madison Avenue
15th Floor
New York, NY 10022
Telephone: (212) 478-7350
Fascimile: (212) 478-7400

and

**LANDIS RATH & COBB LLP**
William E. Chipman, Jr. (DE Bar No. 3818)
Kimberly A. Brown (DE Bar No. 5138)
919 Market Street, Suite 1800
Wilmington, DE 19801
Telephone: (302) 467-4400
Fascimile: (302) 467-4450

Counsel for the Official Committee of Unsecured
Creditors

Dated:   September 19, 2011
        Wilmington, Delaware

**DLA PIPER LLP (US)**
Richard A. Chesley (IL Bar No. 6240877)
Kimberly D. Newmarch (DE Bar No. 4340)
Daniel M. Simon (IL Bar No. 6297629)
203 North LaSalle Street, Suite 1900
Chicago, IL 60601
Telephone: (312) 368-4000
Facsimile: (312) 236-7516

and

Stuart Brown (DE Bar No. 4050)
R. Craig Martin (DE Bar No. 5032)
Michelle Marino (DE Bar No. 4577)
919 North Market Street
15th Floor
Wilmington, DE 19801-3046
Telephone: (302) 468-5700
Facsimile: (302) 394-2341

Counsel for Debtors

**TABLE OF CONTENTS**

ARTICLE I.    DEFINED TERMS AND RULES OF INTERPRETATION ........................................................1

    A.    Defined Terms ....................................................................................................1
    B.    Rules of Interpretation ....................................................................................12
    C.    Exhibits ............................................................................................................12

ARTICLE II.    ADMINISTRATIVE AND PRIORITY CLAIMS ........................................................12

    A.    Administrative Claims ....................................................................................12
    B.    Professional Compensation and Reimbursement Claims .................................12
    C.    Priority Tax Claims ..........................................................................................13
    D.    General .............................................................................................................13

ARTICLE III.    CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS .................13

    A.    Summary ..........................................................................................................13
    B.    Classification and Treatment of Claims and Equity Interests .......................14
    C.    Special Provision Governing Unimpaired Claims ..........................................16
    D.    Nonconsensual Confirmation ..........................................................................16

ARTICLE IV.    MEANS FOR IMPLEMENTATION OF THE PLAN ........................................................16

    A.    Implementation of Plan ....................................................................................16
    The Debtors propose to implement and consummate this Plan on and after the Effective Date ................16
    B.    Plan Funding ....................................................................................................16
    C.    Appointment of Estate Representatives ..........................................................16
    D.    Rights and Powers of the Reorganized Debtors and the Liquidating Trustee .................17
    E.    Directors/Officers of the Debtors on the Effective Date ..............................18
    F.    Operations of the Debtors Between the Confirmation Date and the Effective Date .................18
    G.    Transfer and Vesting of Property ....................................................................18
    H.    Establishment of the Administrative Claims Bar Date ...................................18
    I.    Term of Injunctions or Stays ..........................................................................18
    J.    Creditors' Committee ......................................................................................18

ARTICLE V.    PROVISIONS GOVERNING DISTRIBUTIONS ........................................................19

    A.    Initial Distribution Date ....................................................................................19
    B.    Disputed Reserves ..........................................................................................19
    C.    Subsequent Distributions ................................................................................20
    D.    Delivery of Distributions ................................................................................20
    E.    Manner of Cash Payments Under the Plan ....................................................21
    F.    Time Bar to Cash Payments by Check ............................................................21
    G.    Compliance with Tax Requirements ................................................................21
    H.    No Payments of Fractional Dollars and Minimum Distributions ...................21
    I.    Interest on Claims ............................................................................................21
    J.    No Distribution in Excess of Allowed Amount of Claim ..............................21
    K.    Setoff and Recoupment ..................................................................................22

ARTICLE VI.    DISPUTED CLAIMS ........................................................22

    A.    No Distribution Pending Allowance ................................................................22
    B.    Resolution of Disputed Claims ......................................................................22
    C.    Objection Deadline ..........................................................................................22

EAST\46796355.2
EAST\45294409.10

D.      Estimation of Claims ...................................................................................................22

ARTICLE VII.    TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ......................23
    A.      Assumption and Rejection of Executory Contracts and Unexpired Leases ...................23
    B.      Claims Based on Assumption of Executory Contracts and Unexpired Leases ..............23
    C.      Claims Based on Rejection of Executory Contracts or Unexpired Leases ....................23

ARTICLE VIII.   CONDITIONS PRECEDENT TO THE EFFECTIVE DATE ..........................................23

ARTICLE IX.     INDEMNIFICATION, RELEASE, INJUNCTIVE AND RELATED PROVISIONS ................24
    A.      Compromise and Settlement .........................................................................................24
    B.      Releases .......................................................................................................................24
    C.      Exculpation ..................................................................................................................25
    D.      Preservation of Causes of Action ................................................................................25
    E.      Injunction .....................................................................................................................26
    F.      Release of Liens ...........................................................................................................26

ARTICLE X.      RETENTION OF JURISDICTION ..............................................................................27

ARTICLE XI.     MISCELLANEOUS PROVISIONS .............................................................................28
    A.      Final Fee Applications .................................................................................................28
    B.      Payment of Statutory Fees ...........................................................................................28
    C.      Modification of Plan ....................................................................................................28
    D.      Revocation of Plan .......................................................................................................28
    E.      Successors and Assigns ................................................................................................28
    F.      Governing Law and Construction .................................................................................29
    G.      Reservation of Rights ...................................................................................................29
    H.      Article 1146 Exemption ...............................................................................................29
    I.      Section 1125(e) Good Faith Compliance .....................................................................29
    J.      Further Assurances .......................................................................................................29
    K.      Service of Documents ..................................................................................................29
    L.      Filing of Additional Documents ..................................................................................30
    M.      No Stay of Confirmation Order ...................................................................................30

**JOINT PLAN OF REORGANIZATION OF THE DEBTORS AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

Pursuant to title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.*, the Debtors and the Creditors' Committee hereby respectfully propose the following joint plan of reorganization under chapter 11 of the Bankruptcy Code.

## ARTICLE I.

### DEFINED TERMS AND RULES OF INTERPRETATION

A.    *Defined Terms*

Unless the context otherwise requires, the following terms shall have the following meanings when used in capitalized form herein:

1.    "*Accrued Professional Compensation*" means, at any given moment, all accrued and/or unpaid fees and expenses (including, without limitation, fees or expenses allowed or awarded by a Final Order of the Bankruptcy Court or any other court of competent jurisdiction) for legal, financial advisory, accounting and other services and reimbursement of expenses that are awardable and allowable under sections 328, 330(a) or 331 of the Bankruptcy Code, arising under sections 503(b)(2), 503(b)(3), 503(b)(4) or 503(b)(6) of the Bankruptcy Code or otherwise rendered prior to the Effective Date, or thereafter in connection with (a) applications Filed pursuant to sections 328, 330 and 331 of the Bankruptcy Code; (b) motions seeking the enforcement of the provisions of the Plan or Confirmation Order, by all Professionals in the Chapter 11 Cases that the Bankruptcy Court has not denied by a Final Order, to the extent that any such fees and expenses have not previously been paid regardless of whether a fee application has been filed for any such amount; and (c) applications for allowance of Administrative Expenses. To the extent that the Bankruptcy Court or any higher court denies by a Final Order any amount of a Professional's fees or expenses, then those amounts shall no longer be Accrued Professional Compensation.

2.    "*Adequate Protection Payments*" means the three payments made to the Senior Lender during the administration of the Chapter 11 Cases in the aggregate amount of $4,694,434.00.

3.    "*Administrative Claims Bar Date*" means the first Business Day that is forty-five (45) days after the entry of the Confirmation Order and is the deadline for a holder of an Administrative Claim to file a request with the Bankruptcy Court for payment of such Administrative Claim.

4.    "*Administrative Claims*" means Claims that have been timely filed before the Administrative Claims Bar Date, pursuant to the deadline and procedure set forth in the Confirmation Order (except as otherwise provided by a separate order of the Bankruptcy Court), for costs and expenses of administration under sections 503(b) (including claims under 503(b)(9)), 507(b) or 1114(e)(2) of the Bankruptcy Code, including, without limitation: (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estates and operating the businesses of the Debtors (such as wages, salaries or commissions for services and payments for goods and other services and leased premises) and (b) all fees and charges assessed against the Estates under chapter 123 of title 28 of the U.S. Code, 28 U.S.C. §§ 1911-1930; *provided, however,* that such Administrative Claims shall not include claims for Accrued Professional Compensation.

5.    "*Affiliate*" has the meaning set forth in section 101(2) of the Bankruptcy Code.

6.    "*Allowed*" means, with respect to any Claim or Equity Interest, except as otherwise provided herein: (a) a Claim or Equity Interest that has been scheduled by the Debtors in their schedules of liabilities as other than disputed, contingent or unliquidated; (b) a Claim or Equity Interest that either is not Disputed or has been allowed by a Final Order; (c) a Claim or Equity Interest that is allowed: (i) in any stipulation of amount and nature of Claim executed prior to the entry of the Confirmation Order and approved by the Bankruptcy Court; (ii) in any stipulation with the Liquidating Trustee of the amount and nature of Claim or Equity Interest executed on or after

the entry of the Confirmation Order; or (iii) in or pursuant to any contract, instrument or other agreement entered into or assumed in connection herewith; (d) a Claim or Equity Interest that is allowed pursuant to the terms hereof; or (e) a Disputed Claim as to which a proof of claim has been timely Filed and as to which no objection has been Filed by the Claims Objection Bar Date.

7.      *"Bankruptcy Code"* means sections 101, *et seq.* of title 11 of the United States Code, and applicable portions of titles 18 and 28 of the United States Code.

8.      *"Bankruptcy Court"* means the United States Bankruptcy Court for the District of Delaware.

9.      *"Bankruptcy Rules"* means the Federal Rules of Bankruptcy Procedure, promulgated under 28 U.S.C. § 2075, the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, the Local Rules of Civil Practice and Procedure of the United States District Court for the District of Delaware, and general orders and chambers procedures of the Bankruptcy Court, each as applicable to the Chapter 11 Cases and as amended from time to time.

10.     *"Bar Date"* means Ocober 17, 2011 as the date set by the Bar Date Order as the deadline to File proofs of Claim, except for Claims for Accrued Professional Compensation or Administrative Claims.

11.     *"Bar Date Order"* means the Order Establishing Bar Dates for Filing Proofs of Claim and Fixing Procedure for Notice and Filing, dated September 1, 2011 [Docket No. 403].

12.     *"Beneficiaries"* means holders of Allowed Claims and Equity Interests entitled to receive Distributions under the Plan, whether or not such Claims or Equity Interests were Allowed Claims or Equity Interests on the Effective Date.

13.     *"Business Day"* means any day, other than a Saturday, Sunday or "legal holiday" (as that term is defined in Federal Rules of Bankruptcy Procedure 9006(a)).

14.     *"Cash"* means legal tender of the United States of America or the equivalent thereof, including bank deposits, checks and readily marketable securities or instruments issued by an Entity, including, without limitation, readily marketable direct obligations of, or obligations guaranteed by, the United States of America, commercial paper of domestic corporations carrying a Moody's rating of "A" or better, or equivalent rating of any other nationally recognized rating service, or interest bearing certificates of deposit or other similar obligations of domestic banks or other financial institutions having a shareholders' equity or capital of not less than one hundred million dollars ($100,000,000.00) having maturities of not more than one (1) year, at the then best generally available rates of interest for like amounts and like periods.

15.     *"Cash Investment Yield"* means the net yield, if any, from the investment of Cash held pending distribution to creditors in accordance with the provisions of the Plan.

16.     *"Causes of Action"* means any and all claims, actions, causes of action, choses in action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, remedies, rights of set-off, third-party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, defenses, counterclaims and crossclaims (including, without limitation, all claims and any avoidance, recovery, subordination or other actions against insiders and/or any other entities under the Bankruptcy Code) of any of the Debtors, the Debtors-in-Possession, and/or the Estates that are or may be pending on the Effective Date against any person or entity other than a Debtor, based in law or equity, including, without limitation, under the Bankruptcy Code, whether direct, indirect, derivative or otherwise and whether asserted or unasserted as of the Confirmation Date; *provided, however,* that *"Causes of Action"* shall exclude any Causes of Action released in this Plan.

17.     *"Chapter 11 Cases"* means the chapter 11 cases commenced when the Debtors each filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code on the Petition Date and assigned the following case numbers: 11-10688(BLS), 11-10692(BLS), 11-10693(BLS), 11-10695(BLS), 11-10697(BLS), 11-10699(BLS) and 11-10700(BLS), which are jointly administered under case number 11-10688(BLS).

2

18.     *"Claim"* means a "claim" (as that term is defined in section 101(5) of the Bankruptcy Code) against a Debtor.

19.     *"Claims Agent"* means Kurtzman Carson Consultants LLC, the court appointed claims agent in these Chapter 11 cases.

20.     *"Claims Objection Bar Date"* means the deadline for objecting to scheduled Claims or proofs of Claim, which shall be 90 days after the Effective Date; *provided, however,* that the Liquidating Trustee or the Reorganized Debtors may seek one or more extensions of this date by Filing an appropriate motion with the Bankruptcy Court.

21.     *"Class"* means a category of holders of Claims or Equity Interests as set forth in Article III herein pursuant to section 1122(a) of the Bankruptcy Code.

22.     *"Confirmation Date"* means the date on which the Confirmation Order is entered by the Bankruptcy Court on the docket in these Chapter 11 Cases.

23.     *"Confirmation Order"* means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, which order shall be in form and substance satisfactory to the Plan Proponents and Plan Sponsors.

24.     *"Contracts"* means any agreement, contract, or lease between or among one or more of the Debtors and a third party other than those Executory Contracts or Leases set forth on Exhibit A to this Plan which are designated to be rejected as of the Effective Date, as such Exhibit may be supplemented from time to time prior to the entry of the Confirmation Order.

25.     *"Creditor"* shall have the meaning in Bankruptcy Code § 101(10).

26.     *"Creditors' Committee"* means the official committee of unsecured creditors for the Chapter 11 Cases appointed by the U.S. Trustee for the District of Delaware, pursuant to section 1102 of the Bankruptcy Code, on March 16, 2011 [Docket No. 43], as such committee was modified by the U.S. Trustee for the District of Delaware on March 24, 2011 [Docket No. 75] and June 3, 2011 [Docket No. 235].

27.     *"Debtors"* or *"Debtors-in-Possession"* means, collectively, PJ Finance Company, LLC, PJ Holding Company Manager, LLC, PJ Holding Company, LLC, Alliance PJRT GP, Inc., Alliance PJWE GP, LLC, Alliance PJRT Limited Partnership and Alliance PJWE Limited Partnership.

28.     *"Disbursing Agent"* means the Liquidating Trustee.

29.     *"Disclosure Statement Order"* means the order approving the Disclosure Statement entered by the Bankruptcy Court on [_____], 2011.

30.     *"Disclosure Statement"* means the *Disclosure Statement for the Joint Plan of Reorganization of the Debtors and the Official Committee of Unsecured Creditors under Chapter 11 of the Bankruptcy Code*, dated September 19, 2011 [Docket No. ____], prepared and distributed in accordance with the Bankruptcy Code, Bankruptcy Rules and any other applicable law, and approved by the Bankruptcy Court in the Disclosure Statement Order, as it is amended, supplemented or modified from time to time.

31.     *"Disputed Reserve"* means any reserve fund created pursuant to Article V.B.1 herein.

32.     *"Disputed"* means, with respect to any Claim or Equity Interest or any portion thereof,: (a) is listed on the Schedules as unliquidated, disputed or contingent, unless a proof of Claim has been timely filed; (b) as to which a Debtor, Creditors' Committee, any other party in interest or the Liquidating Trustee has interposed a timely objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules; or (c) as otherwise disputed by the Liquidating Trustee or the Reorganized Debtors in accordance with applicable law, which objection, request for estimation or dispute has not been withdrawn or determined by a Final Order. The Senior Lender Secured Claim is a Disputed Claim.

3

33.    *"Distributions"* means the distributions of Cash or other consideration to be made under and in accordance with the Plan.

34.    *"Effective Date"* means the date selected by the Plan Proponents (with the consent of the Plan Sponsors) that is the first Business Day after the entry of the Confirmation Order on which: (a) the Confirmation Order becomes a Final Order and no stay of the Confirmation Order is in effect, unless the Debtors elect in their sole discretion (with the consent of the Plan Sponsors) to consummate the Plan on an earlier date if an appeal is timely filed; and (b) all conditions specified in Article VIII have been satisfied or waived.

35.    *"Entity"* means an "entity" as that term is defined in section 101(15) of the Bankruptcy Code.

36.    *"Equity Interest"* means any equity interest in a Debtor that existed immediately prior to the Petition Date.

37.    *"Estate"* means the estate of each Debtor created on the Petition Date by section 541 of the Bankruptcy Code.

38.    *"Executory Contracts and Leases"* means all Contracts and leases for non-residential real property which qualify as "executory contracts" under section 365 of the Bankruptcy Code

39.    *"Federal Judgment Rate"* means the post-judgment interest rate established by section 1961 of title 28 of the U.S. Code and provided by the Federal Reserve and published every Monday for the preceding week.

40.    *"File"* or *"Filed"* or *"Filing"* means, with respect to any pleading, the entry of such pleading on the docket of the Chapter 11 Cases and properly served in accordance with the Bankruptcy Rules.

41.    *"Final Decree"* means the decree contemplated under Bankruptcy Rule 3022.

42.    *"Final Order"* means an order, determination or judgment of the Bankruptcy Court, or other court of competent jurisdiction with respect to the subject matter thereof, which has not been reversed, stayed, modified or amended, and as to which the time to appeal, petition for certiorari or move for reargument or rehearing or reconsideration has expired and no appeal or petition for certiorari or appropriate motionhas been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be Filed has been resolved by the highest court to which the order, determination or judgment was appealed or from which certiorari was sought or has otherwise been dismissed with prejudice.

43.    *"General Bar Date"* means October 17, 2011 as established in the Bar Date Order.

44.    *"General Unsecured Claims"* means Claims against any Debtor that are not Administrative Claims, Secured Claims of Governmental Units, Priority Tax Claims, Senior Lender Secured Claim, Other Secured Claims, Unsecured Priority Claims, General Unsecured Cure Claims or Deficiency Claim of Senior Lender.

45.    *"General Unsecured Cure Claims"* means Claims of creditors related to contracts that are assumed in the Plan pursuant to Section 365 of the Bankruptcy Code.

46.    *"General Unsecured Fund"* means the amount of $4,000,000.00 funded by the Debtors from Cash on hand and the New Money Investment on the Effective Date. In the event the Senior Lender makes an election in accordance with Section 1111(b), the Reorganized Debtors shall fund an additional $1,000,000.00 (but not in excess of the amount required to pay all Allowed General Unsecured Claims in full after giving full effect to the Trade Term Payments) to the General Unsecured Fund on or before the first anniversary of the Effective Date.

47.    *"Impaired"* means "impaired" within the meaning of sections 1123(a)(4) and 1124 of the Bankruptcy Code, with respect to a Claim, Equity Interest, or Class of Claims or Equity Interests.

48.    *"Initial Distribution Date"* means that date that is no later than sixty business days after the Effective Date.

49.    *"Insider"* has the meaning set forth in section 101(31) of the Bankruptcy Code.

4

50.　*"Intercompany Claims"* means Claims held by a Debtor against another Debtor.

51.　*"Lien"* shall mean any lien, mortgage, charge, security interest, pledge or other encumbrance against or interest in property to secure payment or performance of a claim, debt or litigation.

52.　*"Lien Release Price"* means the product of (x) the subject Property's or Properties' percentage allocation as reflected on the Lien Release Schedule, multiplied by (y) the then remaining balance due under the New Senior Election Debt or the New Senior No Election Secured Note, as applicable, multiplied by (z) 105%.

53.　*"Lien Release Schedule"* means the schedule attached to and incorporated into the New Loan Agreement reflecting the List of the Properties and each Property's percentage allocation of the aggregate value of the Properties.

54.　*"Liquidating Trustee"* means that person selected jointly by the Plan Proponents, who will be vested post-confirmation with power, authority and control over certain property of the Debtors and the Estates and with the empowerment and obligation to make certain distributions in accordance with this Plan.

55.　*"Local Bankruptcy Rules"* means the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware.

56.　*"New Loan Agreement"* means the Senior Secured Loan Agreement and related security and loan documents in substantially the form as provided in the Plan Supplement.

57.　*"New Money Investment"* means the investment to be made in the Reorganized Debtors as of the Effective Date by the Plan Sponsor in an amount not less than $10 million, which the Plan Sponsors shall be obligated to fund pursuant to the terms of a plan support agreement, the terms of which shall be reasonably acceptable to the Plan Proponents and filed with the Bankruptcy Court as part of the Plan Supplement.

58.　*"New Senior Debt"* means (i) the New Senior Election Debt if the Senior Lender elects to have the Senior Lender Claim treated in accordance with section 1111(b) of the Bankruptcy Code, or (ii) the New Senior No Election Debt if the Senior Lender does not elect to have the Senior Lender Claim treated in accordance with section 1111(b) of the Bankruptcy Code.

59.　*"New Senior Debt Excess Cash Flow"* means the sum of (v) all Cash receipts of the Reorganized Debtors measured annually on a calendar year basis, derived from the ordinary course operation of the Properties, (w) any availability for general working capital of return overfunding of any Reserve, (x) interest income available to the Reorganized Debtors as working capital, (y) any recovery of a prepaid deposit, and (z) the beginning cash balance in such calendar year, less (i) expenses incurred, directly or indirectly under any contract requiring reimbursement of expenses incurred by the contracting counter-party, during such measuring period by the Reorganized Debtors' for operating expenses, (ii) debt service including interest and New Senior Debt Scheduled Amortization on the New Senior Debt, as applicable, (iii) funding of the Reserves, (iv) the payment(s) to be made to the General Unsecured Fund, including, without limitation, any funding of the General Unsecured Fund on the first anniversary of the Effective Date in the event the Senior Lender elects the New Senior Election Debt treatment, (v) the Trade Term Payments, and (vi) a minimum cash balance of not less than $2 million for working capital for the next successive year. *"New Senior Debt Excess Cash Flow"* shall not include any other source of revenue or receipts, including, without limitation, unsecured trade credit extended to the Reorganized Debtors, any security deposits paid by or to tenants of the Properties, any secured or unsecured financing proceeds, any proceeds realized upon the disposition of any Property, casualty proceeds and condemnation awards. *"New Senior Debt Excess Cash Flow"* shall be more fully described in the New Loan Agreement. New Senior Debt Excess Cash Flow shall be distributed in accordance with the priorities of the New Senior Debt Waterfall.

60.　*"New Senior Debt Replacement Reserve"* means a reserve funded monthly and controlled by the Reorganized Debtors and used exclusively to pay for capital expenditures for the Properties and ordinary course make ready unit expenses, as more fully described in the New Loan Agreement, from the Reorganized Debtors' Cash flow in an amount equal to one-twelfth of the annual amount budgeted by the Reorganized Debtors for the applicable year; *provided, however,* the budget for the funding of the New Senior Debt Replacement Reserve shall be within the parameters below:

5

$950.00 per unit with respect to the calendar year 2012;

$950.00 per unit with respect to the calendar year 2013;

Not more than $950.00 and not less than $750.00 per unit with respect to the calendar year 2014;

Not more than $750.00 and not less than $550.00 per unit with respect to the calendar year 2015;

Not more than $750.00 and not less than $550.00 per unit with respect to the calendar year 2016;

Not more than $750.00 and not less than $550.00 per unit with respect to the calendar year 2017;

Not more than $750.00 and not less than $550.00 per unit with respect to the calendar year 2018;

Not more than $750.00 and not less than $550.00 per unit with respect to the calendar year 2019;

Not more than $500.00 and not less than $350.00 per unit with respect to the calendar year 2020, if applicable;

Not more than $500.00 and not less than $350.00 per unit with respect to the calendar year 2021, if applicable; and

Not more than $500.00 and not less than $350.00 per unit with respect to the calendar year 2022, if applicable;

The amount to be reserved in each calendar year beginning for calendar year 2014 shall be determined by the Reorganized Debtors, in their sole discretion, subject to the limitations above, in accordance with the Reorganized Debtors' capital expense budget for the next succeeding calendar year, which shall be delivered to the Senior Lender on or before December 1 of each year in advance of the applicable year, with the first such budget to be delivered on or before December 1, 2013.

61.     "*New Senior Debt Scheduled Amortization*" means an annual Distribution paid on or before December 31 of each year during the term of the Plan and applied to the outstanding principal balance of the New Senior Debt, as follows:

(a) with respect to the New Senior Election Debt, the amount of:

$0 with respect to the calendar year 2012;

$2,000,000 with respect to the calendar year 2013;

$3,000,000 with respect to the calendar year 2014;

$4,000,000 with respect to the calendar year 2015;

$6,000,000 with respect to the calendar year 2016;

$7,000,000 with respect to the calendar year 2017;

$8,000,000 with respect to the calendar year 2018; and

$9,000,000 with respect to the calendar year 2019;

(b) with respect to the New Senior No Election Debt, the amount of:

(i) on account of the New Senior No Election Secured Note, no scheduled amortization payments;

(ii) on account of the New Senior No Election Unsecured Note,. the amount of:

EAST\46796355.2
EAST\45294409.10

$0 with respect to the calendar year 2012;

$0 with respect to the calendar year 2013;

$5,000,000 with respect to the calendar year 2014;

$5,000,000 with respect to the calendar year 2015;

$5,000,000 with respect to the calendar year 2016;

$5,000,000 with respect to the calendar year 2017;

$5,000,000 with respect to the calendar year 2018;

$5,000,000 with respect to the calendar year 2019;

$5,000,000 with respect to the calendar year 2020;

$5,000,000 with respect to the calendar year 2021; and

$0 with respect to the calendar year 2022.

62.     *"New Senior Debt Sinking Fund"* means in the context of the New Senior Election Debt only, as more fully described in the New Loan Agreement, a reserve funded annually into an interest bearing account owned by the Reorganized Debtors, as and when provided for under the New Senior Debt Waterfall, under the control of the Senior Lender, and on which the Senior Lender shall have a first priority Lien; *provided, however*, that the Reorganized Debtors shall be permitted to use the New Senior Debt Sinking Fund in connection with any transaction, the proceeds of which are intended to and shall satisfy the New Senior Debt. By way of explanation and not limitation, the New Senior Debt Sinking Fund may be used to pay third parties not affiliated with the Reorganized Debtors or the holders of the Equity Interests in the Reorganized Debtors, any customary and ordinary work, commitment, syndication and similar fees and deposits in advance of consummating any such transaction, the proceeds of which shall satisfy the New Senior Debt.

63.     *"New Senior Debt Waterfall"* means the priority and amount of the annual Distribution of the New Senior Debt Excess Cash Flow during the term of the New Senior Debt and upon maturity or earlier satisfaction thereof:

(a) with respect to the New Senior Election Debt, the New Senior Debt Excess Cash Flow shall be Distributed *pro tanto*, as follows:

First, to the Plan Sponsors in an amount up to 25% of the New Money Investment until the principal amount of the New Money Investment is paid in full; *provided, however*, any deficiency in the payment in any year shall be payable in the next succeeding year in addition to 25% of the New Money Investment for such year until the principal amount of the New Money Investment is paid in full;

Second, to the Plan Sponsors in an amount equal to the accrued and unpaid interest on the outstanding balance of the New Money Investment, accruing at the rate of 12% per annum;

Third, to the Plan Sponsors and to fund the New Senior Debt Sinking Fund in proportion of 80% and 20%, respectively, of the remaining balance of the New Senior Debt Excess Cash Flow; *provided, however*, with respect to calendar year 2012 no New Senior Debt Excess Cash Flow shall be Distributed to the Plan Sponsors or to fund the New Senior Debt Sinking Fund (with such remaining New Senior Debt Excess Cash Flow to be retained by the Reorganized Debtors for working capital); *provided further, however*, with respect to calendar year 2013 only 50% of the remaining New Senior Debt Excess Cash Flow shall be Distributed to the Plan Sponsors and the deposit into the New Senior Debt Sinking Fund shall be limited in an amount up to $500,000 (with any remaining New Senior Debt Excess Cash Flow to be retained by the Reorganized Debtors for

7

working capital); *provided further, however*, with respect to calendar year 2014 only 65% of the remaining New Senior Debt Excess Cash Flow shall be Distributed to the Plan Sponsors (with any remaining New Senior Debt Excess Cash Flow to be retained by the Reorganized Debtors for working capital); and *provided further, however*, the Reorganized Debtors shall not be required to fund the New Senior Debt Sinking Fund with a deposit in excess of (i) $1,500,000.00 with respect to any calendar year (with any excess being paid to the Senior Lender to apply to reduce the principal balance of the New Senior Election Debt) and (ii) $10,000,000.00 in the aggregate;

Fourth, upon the funding of the New Senior Debt Sinking Fund in the aggregate amount of $10,000,000, to the Plan Sponsors and to the Senior Lender to apply to reduce the principal balance of the New Senior Election Debt in proportion of 80% and 20%, respectively, of the remaining balance of the New Senior Debt Excess Cash Flow; and

Fifth, upon the payment in full of all obligations due under the New Senior Election Debt, to the Plan Sponsors 100% of the remaining New Senior Excess Cash Flow; and

(b) with respect to the New Senior No Election Debt, the New Senior Debt Excess Cash Flow shall be Distributed *pro tanto,* as follows:

First, to the Plan Sponsors in an amount up to 35% of the New Money Investment until the principal amount of the New Money Investment is paid in full; *provided, however*, any deficiency in the payment in any year shall be payable in the next succeeding year in addition to 35% of the New Money Investment for such year until the principal amount of the New Money Investment is paid in full;

Second, to the Plan Sponsor in an amount equal to the accrued and unpaid interest on the outstanding balance of the New Money Investment, accruing at the rate of 20% per annum;

Third, to the Plan Sponsors and to the Senior Lender to be applied to reduce the outstanding principal balance of the New Senior No Election Unsecured Note in proportion of 70% and 30%, respectively, of the remaining New Senior Excess Cash Flow;

Fourth, upon payment in full of all obligations due under the New Senior No Election Unsecured Note, to the Plan Sponsors and to the Senior Lender to be applied to reduce the outstanding principal balance of the New Senior No Election Secured Note in proportion of 70% and 30%, respectively, of the remaining New Senior Excess Cash Flow; and

Fifth, upon payment in full of all obligations due under the New Senior No Election Unsecured Note and the New Senior No Election Secured Note, to the Plan Sponsors 100% of the remaining New Senior Excess Cash Flow.

64.    "*New Senior Election Debt*" means in full satisfaction of the Senior Lender Claim the Senior Lender shall receive a new senior secured note in accordance with the New Loan Agreement, the essential terms of which shall include: (a) the initial principal shall be an amount equal to the greater of (i) the amount of the Senior Lender Secured Claim, or (ii) $370,000,000, (b) with interest at the fixed rate per annum of (i) 3.5% accruing during the first three years of the term of the New Senior Election Debt, (ii) 3.75% accruing during the fourth through sixth years of the term of the New Senior Election Debt, and (iii) 4.0% accruing during the seventh through eighth years of the term of the New Senior Election Debt, payable monthly in arrears; *provided, however*, interest Distributions due on the Effective Date and thereafter shall be deemed paid when due as an off-set against the Adequate Protection Payments until exhausted, (c) with a maturity date of December 31, 2019, (d) Distributions in accordance with the New Senior Debt Scheduled Amortization, (e) Distributions of the New Senior Debt Excess Cash Flow under and in accordance with the New Senior Debt Waterfall, (f) which secured note and the New Loan Agreement shall provide that such note can only be satisfied and the Senior Lender's Lien released and discharged by making Cash Distributions in an aggregate amount not less than the Senior Lender Claim, which aggregate Cash Distributions shall have a net present value as of the Effective Date of not less than the greater of (x) Senior Lender Secured Claim or (y) $370,000,000, and (f) with recourse only to the Properties, leases and rents and secured by a

8

continuing first priority Lien on the Properties, leases, rents, New Senior Debt Sinking Fund, Reserves, Contracts and other property as more fully described in the New Loan Agreement.

65. *"New Senior No Election Debt"* means in full satisfaction of the Senior Lender Claim, comprising the Senior Lender Secured Claim and the Senior Lender Deficiency Claim, the Senior Lender shall receive the New Senior No Election Secured Note and the New Senior No Election Unsecured Note.

66. *"New Senior No Election Secured Note"* means in full satisfaction of the Senior Lender Secured Claim, the Senior Lender shall receive a new senior secured note the essential terms of which include (a) the initial principal amount equal to the Senior Lender Secured Claim, as agreed between the Plan Proponents or as determined by the Bankruptcy Court, (b) with interest at the fixed rate per annum of (i) 3.0% accruing during the first three years of the term of the New Senior No Election Note, (ii) 3.25% accruing during the fourth through sixth years of the term of the New Senior No Election Note, (iii) 3.5% accruing during the seventh through eighth years of the term of the New Senior No Election Note, and (iii) 3.75% accruing during the ninth through eleventh years of the term of the New Senior No Election Debt, payable monthly in arrears; *provided, however*, interest Distributions due on the Effective Date and thereafter shall be deemed paid when due as an off-set against the Adequate Protection Payments until exhausted, (c) with a maturity date of December 31, 2022, (d) Distributions of the New Senior Debt Excess Cash Flow under and in accordance with the New Senior Debt Waterfall, and (e) with recourse only to the Properties, leases and rents and secured by a continuing first priority Lien on the Properties, leases, rents, Reserves, Contracts and other property as more fully described in the New Loan Agreement.

67. *"New Senior No Election Unsecured Note"* means in full satisfaction of the Senior Lender Deficiency Claim, the Senior Lender shall receive an unsecured note the essential terms of which include (a) the initial principal amount equal to the product of (x) the Senior Lender Deficiency Claim, multiplied by (y) 40%, (b) with interest accruing at the fixed rate of 4% per annum, (c) a maturity date of December 31, 2022, (d) Distributions in accordance with the New Senior Debt Scheduled Amortization, and (e) Distributions of the New Senior Debt Excess Cash Flow under and in accordance with the New Senior Debt Waterfall.

68. *"Other Secured Claims"* means Claims, other than Secured Claims of Governmental Units or the Senior Lender Secured Claim, against the Debtors that are secured by a lien on property in which the Estates have an interest, which liens are valid, perfected and enforceable under applicable law or by reason of a Final Order, or that are subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Claim holder's interest in the Estates' interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code.

69. *"Person"* shall mean any individual, corporation, limited liability company, general partnership, limited partnership, limited liability partnership, association, joint stock company, joint venture, estate, trust, unincorporated organization, government or any political subdivision thereof or any other entity as such term is defined in section 101(15) of the Bankruptcy Code.

70. *"Petition Date"* means March 7, 2011, the date on which the Debtors filed the Chapter 11 Cases.

71. *"PJ Finance"* means PJ Finance Company, LLC, one of the Debtors in these jointly administered Chapter 11 Cases.

72. *"PJ Hold Co."* means PJ Holding Company, LLC, one of the Debtors in these jointly administered Chapter 11 Cases.

73. *"PJ Manager"* means PJ Holding Company Manager, LLC, one of the Debtors in these jointly administered Chapter 11 Cases.

74. *"PJRT GP"* means Alliance PJRT GP, Inc., one of the Debtors in these jointly administered Chapter 11 Cases.

75. *"PJRT LP"* means Alliance PJRT Limited Partnership, one of the Debtors in these jointly administered Chapter 11 Cases.

EAST\46796355.2
EAST\45294409.10

76. *"PJWE GP"* means Alliance PJWE GP, LLC, one of the Debtors in these jointly administered Chapter 11 Cases.

77. *"PJWE LP"* means Alliance PJWE Limited Partnership, one of the Debtors in these jointly administered Chapter 11 Cases.

78. *"Plan"* means this plan of reorganization under chapter 11 of the Bankruptcy Code, either in its present form or as it may be altered, amended, modified or supplemented from time to time in accordance with the Bankruptcy Code, the Bankruptcy Rules or herewith, as the case may be.

79. *"Plan Expense Reserve"* means that certain reserve account, not to exceed $250,000.00, established and funded on the Effective Date by the Liquidating Trustee from the General Unsecured Fund, which reserve account shall be used to pay all fees and expenses incurred by the Liquidating Trustee or any professionals engaged by the Liquidating Trustee, in connection with administering this Plan.

80. *"Plan Proponents"* means collectively the Debtors and the Creditors' Committee.

81. *"Plan Sponsors"* means collectively, the Debtors' current equity holders, or an entity formed by such holders to act as Plan Sponsors hereunder, or any third party who funds all, or a portion of, the New Money Investment.

82. *"Post-Confirmation Expense"* shall mean any fees, costs and expenses (including, without limitation, United States Trustee fees, Liquidating Trustee fees, attorneys' fees and the fees of other professionals) necessary to complete the liquidation of the General Unsecured Claims after the Effective Date.

83. *"Pre-petition Loan Agreement"* means that certain Amended and Restated Loan Agreement, dated as of November 9, 2006, made by PJRT LP and PJWE LP, as borrowers, to and for the benefit of Column Financial Inc., as lender, which was subsequently sold to Credit Suisse First Boston Mortgage Securities Corp. and thereafter contributed to the Credit Suisse Commercial Mortgage Trust 2007-C2 and pooled with other commercial real estate loans, the beneficial interests of which were then securitized by the issuance of Commercial Mortgage Pass-Through Certificates Series 2007-C2, commercial mortgage-backed securities pursuant to that certain Pooling and Servicing Agreement, dated May 1, 2007 with U.S. Bank National Association as successor trustee.

84. *"Priority Tax Claims"* means Claims of governmental units of the kind specified in section 507(a)(8) of the Bankruptcy Code.

85. *"Professional Fee Claim Bar Date"* means the date that is 45 days after the Confirmation Date.

86. *"Professional"* means any person or Entity employed pursuant to a Final Order in accordance with sections 327, 328 or 1103 of the Bankruptcy Code, and to be compensated for services rendered and awarded reimbursement of expenses incurred prior to and including the Effective Date pursuant to sections 327, 328, 329, 330 or 331 of the Bankruptcy Code.

87. *"Properties"* means those certain thirty-two multi-family properties owned by the Debtors and which are more fully described in the Amended and Restated Loan Agreement that is the basis of the Senior Lender Secured Claim.

88. *"Releasees"* means the Creditors' Committee, Plan Sponsors, and the Reorganized Debtors and their respective current and former Representatives, as applicable; *provided, however,* that the foregoing released parties shall be released only from liabilities arising out of actions taken in such capacity.

89. *"Releasing Parties"* means, collectively, the Debtors, their Estates, the Debtors' Representatives, holders of Allowed General Unsecured Claims or Equity Interests.

90. *"Reorganized Debtors"* means the Debtors in the period from and after the Effective Date.

10

91.     "*Representatives*" means, with regard to an Entity, officers, directors, employees, advisors, members, attorneys, professionals, accountants, investment bankers, financial advisors, consultants, agents and other representatives (including their respective officers, directors, employees, independent contractors, members and professionals).

92.     "*Reserves*" means collectively the reserve accounts and the proceeds thereof pertaining to the operation of the Properties and the Reorganized Debtors' obligations under the New Loan Agreement required to be funded under the Plan or the New Loan Agreement, including, without limitation, the reserves for the payment of real property and other applicable taxes, insurance, security deposits and the New Senior Debt Replacement Reserve. "*Reserves*" shall not include the Disputed Reserve, Plan Expense Reserve or similar reserves established and funded for the benefit of the holders of Allowed General Unsecured Claims or the Liquidating Trustee.

93.     "*Schedules*" mean the schedules of assets and liabilities, schedules of executory contracts and statements of financial affairs filed by the Debtors pursuant to section 521 of the Bankruptcy Code.

94.     "*Secured Governmental Unit Claims*" means Claims held by a "governmental unit" as such term is defined in 11 U.S.C.§ 101(27) that are secured by a Lien in the Debtors' property.

95.     "*Senior Lender*" means collectively, Credit Suisse Commercial Mortgage Trust Series 2007-C2 and U.S. Bank, National Association, as trustee, with respect to the certain Pooling and Servicing Agreement dated April 1, 2007 with Credit Suisse First Boston.

96.     "*Senior Lender Claim*" means the Allowed Claim of the Senior Lender, evidenced by the Pre-petition Loan Agreement equal to the sum of the Senior Lender Secured Claim and the Senior Lender Deficiency Claim. The Senior Lender Claim is a Disputed Claim.

97.     "*Senior Lender Deficiency Claim*" means that portion of the Senior Lender's Allowed Claim that exceeds the value of the Properties and other property of the Estates of PJRT LP and PJWE LP securing the Senior Lender Secured Claim.

98.     "*Senior Lender Secured Claim*" means that portion of the Senior Lender's Allowed Claim in an amount up to the value of the Properties, and other property of the Estates of PJRT LP and PJWE LP securing the Senior Lender's Allowed Claim, as more fully described in the Pre-petition Loan Agreement.

99.     "*Solicitation Package*" means the documents and materials described in Article VI.A   of the Disclosure Statement.

100.    "*Specified Rate*" means the interest rate equal to the greater of (a) any rate provided for in the underlying contract between the creditor and the Debtor(s), (b) any rate provided for under applicable state law, or (c) the federal judgment rate in effect on the Effective Date of the Plan.

101.    "*Trade Term Payments*" means the payments by the Reorganized Debtors to their trade vendors holding Allowed General Unsecured Claims in consideration of the extension of ordinary course unsecured trade credit to the Reorganized Debtors as described in section IV.D of the Plan.

102.    "*U.S. Trustee*" means the United States Trustee appointed under Article 591 of title 28 of the United States Code to serve in the District of Delaware.

103.    "*Unimpaired*" means not "impaired" within the meaning of section 1124 of the Bankruptcy Code, with respect to a Claim, Equity Interest, or Class of Claims or Equity Interests.

104.    "*Unsecured Priority Claims*" means Claims accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than Priority Tax Claims.

105.    "*Voting Deadline*" means the deadline of 12:00 a.m. (midnight) Prevailing Eastern Time on [_____], 2011, to accept or reject the Plan.

11

B. *Rules of Interpretation*

     1.     For purposes herein: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neutral gender shall include the masculine, feminine and the neutral gender; (b) any reference herein to a contract, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (c) any reference herein to an existing document or exhibit having been filed or to be filed shall mean that document or exhibit, as it may thereafter be amended, modified or supplemented; (d) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (e) the words "herein," "hereof" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (f) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (g) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (h) any term used in capitalized form herein that is not otherwise defined, but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

     2.     The provisions of Federal Rule of Bankruptcy Procedure 9006(a) shall apply in computing any period of time prescribed or allowed hereby.

     3.     All references herein to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

C. *Exhibits*

     All exhibits, if any, to the Plan shall be filed with the Clerk of the Bankruptcy Court not later than the earlier of (i) ten (10) days prior to the commencement of the hearing on confirmation of the Plan and (ii) five (5) days prior to the deadline for filing objections to confirmation of the Plan. Such exhibits may be inspected in the office of the Clerk of the Bankruptcy Court during normal hours of operation of the Bankruptcy Court. Holders of Claims or Equity Interests may also obtain a copy of such exhibits, once filed, from the Debtors by a written request sent to the following address:

     DLA Piper LLP (US)
     203 North LaSalle Street, Suite 1900
     Chicago, Illinois 60601
     Attn.: Daniel Simon, Esq.

## ARTICLE II.

## ADMINISTRATIVE AND PRIORITY CLAIMS

A. *Administrative Claims*

     The Reorganized Debtors shall pay each holder of an Allowed Administrative Claim the full unpaid amount of such Allowed Administrative Claim in Cash on the later of five business days: (1) after the Effective Date (or, if not then due, within five business days after the date when such Allowed Administrative Claim is due); (2) if such Claim is Allowed after the Effective Date, on the date that is five business days after such Claim is Allowed (or, if not then due, five business days after the date when such Allowed Administrative Claim is due); (3) at such earlier time and upon such terms as may be agreed upon by such holder and the Reorganized Debtors; or (4) at such time and upon such terms as set forth in an order of the Bankruptcy Court; *provided, however*, that Administrative Claims do not include Administrative Claims Filed after the Administrative Claims Bar Date.

B. *Professional Compensation and Reimbursement Claims*

     All Professionals employed by the Debtors or the Creditors' Committee in these Chapter 11 Cases shall file all requests for allowance of compensation and reimbursement of expenses pursuant to sections 328, 330 or 503(b)

of the Bankruptcy Code for services performed and expenses incurred in these Chapter 11 Cases through the Effective Date by no later than the Professional Fee Claim Bar Date. The Reorganized Debtors and the Creditors' Committee, but not the Liquidating Trustee, shall have 30 days from the Professional Fee Claim Bar Date to formally object to any such fee requests. The Confirmation Order shall establish the date the Bankruptcy Court shall hear and determine, all applications for final allowances of compensation or reimbursement of expenses under section 328, 330 or 503(b) of the Bankruptcy Code.

C.      *Priority Tax Claims*

The Reorganized Debtors shall pay each holder of an Allowed Priority Tax Claim the full unpaid amount of such Allowed Priority Tax Claim in Cash, on the later of (i) five business days after the Effective Date, (ii) five business days after the date such Allowed Priority Tax Claim becomes Allowed and (iii) the date such Allowed Priority Tax Claim is payable under applicable non-bankruptcy law.

D.      *General*

Allowed Administrative Claims and Allowed Priority Tax Claims shall be paid from the Debtors' Cash on hand and the proceeds of the New Money Investment.

## ARTICLE III.

### CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

A.      *Summary*

1.      Except for Administrative Claims and Priority Tax Claims, all Claims against and Equity Interests in a particular Debtor are placed in consolidated Classes. In accordance with section 1123(a)(1) of the Bankruptcy Code, the Debtors have not classified Administrative Claims or Priority Tax Claims, as described in Article II.

2.      The following table classifies Claims against and Equity Interests in each Debtor, collectively, for all purposes, including voting, confirmation and Distribution pursuant hereto and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code. The Plan deems a Claim or Equity Interest to be classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that such Claim or Equity Interest or any portion thereof qualifies within the description of such different Class. A Claim or Equity Interest is in a particular Class only to the extent that any such Claim or Equity Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date. Each Class set forth below is treated hereunder as a distinct Class for voting and distribution purposes.

3.      *Summary of Classification and Treatment of Classified Claims and Equity Interests.*

| Class | Claim | Status | Voting Rights |
|---|---|---|---|
| 1. | Secured Claims of Governmental Units | Not impaired | Not entitled to Vote |
| 2. | Senior Lender Secured Claim | Impaired | Entitled to Vote |
| 3. | Other Secured Claims | Not impaired | Not entitled to Vote |
| 4. | Unsecured Priority Claims | Not impaired | Not entitled to Vote |
| 5. | General Unsecured Claims | Impaired | Entitled to Vote |

EAST\46796355.2
EAST\45294409.10

| Class | Claim | Status | Voting Rights |
|---|---|---|---|
| 6. | General Unsecured Cure Claims | Not impaired | Entitled to Vote |
| 7. | Senior Lender Deficiency Claim (if applicable) | Impaired | Entitled to Vote |
| 8. | Equity Interests | No distribution | Deemed to Reject |

B.    *Classification and Treatment of Claims and Equity Interests*

    1.    *Secured Claims of Governmental Units (Class 1)*

        (a)    *Classification*: Class 1 consists of the Secured Governmental Unit Claims.

        (b)    *Treatment*: Except to the extent the holder agrees to other, lesser treatment, each holder of an Allowed Secured Governmental Unit Claim shall be paid in respect of such Claim the full amount thereof in Cash (A) by the later of five business days (or as soon as practicable) after (i) the Effective Date or (ii) the date on which such Claim becomes an Allowed Secured Claim of Governmental Units or (B) will be paid in full or as provided under 11 U.S.C. § 1129(a)(9)(C) in equal monthly payments commencing no later than the first day of the first month which is thirty (30) days after entry of the Confirmation Order.  To the extent such payments are paid over time, such payments shall be calculated to result in payment in full of the Allowed Secured Governmental Unit Claim with all accrued interest no later than the fifth anniversary of the Petition Date.

        (c)    *Voting*: Class 1 is Unimpaired and, therefore, the holders of Secured Governmental Claims are deemed to have accepted the Plan.

    2.    *Senior Lender Secured Claim (Class 2)*

        (a)    *Classification*:  Class 2 consists of the Senior Lender Secured Claim.

        (b)    *Treatment*:  In full satisfaction of the Senior Lender Secured Claim, the Senior Lender shall receive the New Senior Debt.

        (c)    *Voting*:  Class 2 is Impaired and, therefore, the holder of the Senior Lender Secured Claim is entitled to vote to accept or reject the Plan.

    3.    *Other Secured Claims(Class 3)*

        (a)    *Classification*:  Class 3 consists of all Other Secured Claims.

        (b)    *Treatment*:  Except to the extent the holder agrees to other, lesser treatment, at the election of the Debtors in full settlement and satisfaction of each holder of an Allowed Other Secured Claim shall (i) be paid in respect of such Claim the full amount thereof, in Cash, by the later of five business days (or as soon as practicable) after (A) the Effective Date, or (B) the date on which such Claim becomes an Allowed Other Secured Claim, or (ii) receive the property that secures such Allowed Other Secured Claim.

        (c)    *Voting*:  Class 3 is Unimpaired and, therefore, holders of Other Secured Claims are deemed to have accepted the Plan.

    4.    *Unsecured Priority Claims (Class 4)*

        (a)    *Classification:*  Class 4 consists of all Unsecured Priority Claims.

EAST\46796355.2
EAST\45294409.10

(b) *Treatment:* Except to the extent the holder agrees to other, lesser treatment, each holder of an Allowed Unsecured Priority Claim shall be paid in respect of such Claim the full amount thereof, in Cash, by the later of five business days (or as soon as practicable) after (i) the Effective Date, or (ii) the date on which such Claim becomes an Allowed Unsecured Priority Claim.

(c) *Voting:* Class 4 is Unimpaired and, therefore, holders of Unsecured Priority Claims are deemed to have accepted the Plan.

5.      *General Unsecured Claims (Class 5)*

(a) *Classification:* Class 5 consists of all General Unsecured Claims other than General Unsecured Cure Claims and the Deficiency Claim of the Senior Lender.

(b) *Treatment:* In full satisfaction, settlement and discharge of the Allowed General Unsecured Claims the holders of Allowed General Unsecured Claims shall receive the the treatment provided for under the Plan. Holders of Allowed General Unsecured Claims shall receive pro-rata Cash Distributions from the net General Unsecured Fund, with an initial Distribution to be paid by the later of sixty business days after (i) the Effective Date, or (ii) ten business days after the date on which such Claim becomes an Allowed General Unsecured Claim. The Liquidating Trustee is authorized to make interim distributions from time to time in its business judgment and to reserve sufficient funds to result in all Class 5 Creditors receiving the same percentage Distribution in Cash, without regard to time or interest.

(c) *Voting:* Class 5 is Impaired and holders of General Unsecured Claims are entitled to vote to accept or reject the Plan.

6.      *General Unsecured Cure Claims(Class 6)*

(a) *Classification:* Class 6 Consists of all General Unsecured Cure Claims.

(b) *Treatment:* Except to the extent the holder agrees to other, lesser treatment, Allowed Claims in Class 6 will be paid by the Reorganized Debtors 100% of the Allowed amount of such Claims, within five business days after the date on which such Claim becomes an Allowed General Unsecured Cure Claim, or as soon as practicable thereafter.

(c) *Voting:* Class 6 is Unimpaired and, therefore, holders of General Unsecured Cure Claims are deemed to have accepted the Plan.

7.      *Senior Lender Deficiency Claim (Class 7) (If applicable)*

(a) *Classification:* If the Senior Lender does not elect to have its Senior Lender Claim treated in accordance with Section 1111(b) of the Bankruptcy Code, then Class 7 will consist of the Senior Lender Deficiency Claim, in an amount agreed to by the Debtors and the Senior Lender, or as determined by the Bankruptcy Court as of the Effective Date.

(b) *Treatment:* In full satisfaction, settlement and discharge of the Senior Lender Deficiency Claim, the Senior Lender shall receive the New Senior No Election Unsecured Note.

(c) *Voting:* Class 7 is Impaired and the holder of the Senior Lender Deficiency Claim is entitled to vote to accept or reject the Plan.

8.      *Equity Interests (Class 8)*

(a) *Classification:* Class 8 consists of Equity Interests in all of the Debtors.

(b) *Treatment:* Holders of Equity Interests will receive no property or distribution under the Plan on account of such Equity Interests.

15

(c)    *Voting:* Class 8 will receive no distribution under the Plan and, therefore, holders of Equity Interests are deemed to reject the Plan.

C.    *Special Provision Governing Unimpaired Claims*

Except as otherwise provided in the Plan, nothing under the Plan shall affect the rights of the Liquidating Trustee in respect of any Claim classified in an Unimpaired Class, including, without limitation, all rights in respect of objections to such Claims and any legal and equitable defenses to or rights of setoff or recoupment against any such Claim.

D.    *Nonconsensual Confirmation*

The Plan Proponents (with the consent of the Plan Sponsors) reserve the right to seek confirmation of the Plan under Section 1129(b) of the Bankruptcy Code. To the extent that any Class votes to reject the Plan, the Debtors (with the consent of the Plan Sponsors) further reserve the right to modify the Plan in accordance with Article XI.C herein.

## ARTICLE IV.

## MEANS FOR IMPLEMENTATION OF THE PLAN

A.    *Implementation of Plan*

The Debtors propose to implement and consummate this Plan on and after the Effective Date. The Plan is premised upon the substantive consolidation of the Debtors for all purposes related to this Plan, including for purposes of voting, confirmation and distribution.

B.    *Plan Funding*

The New Money Investment and the Debtors' Effective Date Cash on hand shall be used to pay Allowed Administrative Claims, Allowed Priority Tax Claims, Accrued Professional Compensation approved by the Bankruptcy Court, and all Claims in Classes 1, 3 (in the event the collateral is not returned to the Allowed Claim holder), 4 and 6. In addition, the New Money Investment and the Debtors' Effective Date Cash on hand shall also be used on the Effective Date to fund the General Unsecured Fund (which shall be available to make Distributions to holders of Allowed General Unsecured Claims on a pro rata basis after payment in full of all expenses of the Liquidating Trustee) in accordance with the terms of this Plan. The Reorganized Debtors shall use the balance of the New Money Investment and the Reorganized Debtors' Cash derived from the operation of the Properties after payment of all operating expenses, capital expenditures and funding of all reserves contemplated by the New Senior Debt derived post-Effective Date to make all necessary payments to Class 2 and, if applicable, Class 7 Claims.

In exchange for the New Money Investment, the Plan Sponsors will be issued 100% of the new equity interests in the Reorganized Debtors on the Effective Date.

C.    *Appointment of Estate Representatives.*

The Plan will be administered by the Liquidating Trustee and the Reorganized Debtors as set forth herein. The initial Liquidating Trustee shall be declared by the Plan Proponent, together with a copy of its form retention agreement, by a notice to be filed on the earlier of (i) ten days prior to the commencement of the hearing on confirmation of the Plan and (ii) five days prior to the deadline for filing objections to confirmation of the Plan. The Reorganized Debtors and the Creditors' Committee shall jointly select any successor Liquidating Trustees as may become necessary. As of the Effective Date, the Liquidating Trustee will be vested with exclusive power, authority and control over the General Unsecured Fund to pay Allowed General Unsecured Claims and with the empowerment and obligation to make Distributions in accordance with the Plan to holders of Allowed General Unsecured Claims. With respect to Allowed General Unsecured Claims, the Liquidating Trustee will be deemed as of the Effective Date to be the general representative of the Estates as authorized under the Bankruptcy Code for all

purposes and in all respects, with all necessary and appropriate power to act for, on behalf of and in the name of the Debtors with the same power and effect as if each of his or her actions in furtherance of his or her duties as a responsible person and as a Bankruptcy Court-appointed officer. The initial Liquidating Trustee, and each successor Liquidating Trustee, shall serve until the later of (a) the entry of the Final Decree or (b) payment of final Distributions to holders of Allowed General Unsecured Claims pursuant to the Plan.

D.      *Rights and Powers of the Reorganized Debtors and the Liquidating Trustee.*

The Liquidating Trustee and the Reorganized Debtors shall be deemed the Estates' representative in accordance with section 1123 of the Bankruptcy Code and shall have all the rights and powers set forth herein.

The Reorganized Debtors shall be authorized and empowered as a representative of the Estates to act to institute, prosecute, settle, compromise, abandon or release all Causes of Action at its own expense, and shall have the powers of a trustee under sections 704 and 1106 of the Bankruptcy Code and Rule 2004 of the Bankruptcy Rules in order to effectuate the aforementioned actions in connection with the Causes of Action. The Reorganized Debtors shall be authorized and empowered with respect to all Claims, other than General Unsecured Claims, as a representative of the Estates and shall have the powers of a trustee under sections 704 and 1106 of the Bankruptcy Code and Rule 2004 of the Bankruptcy Rules, including without limitation, the right to (1) effect all actions and execute all agreements, instruments and other documents necessary to implement the provisions of the Plan; (2) liquidate any assets; (3) make Distributions to holders of Allowed Claims in accordance with this Plan; (4) object to Disputed Claims and prosecute, settle or otherwise resolve such objections; (5) establish and administer any necessary reserves for Disputed Claims that may be required; (6) perform administrative services related to implementation of this Plan; and (7) complete and file the federal, state and local tax returns, and pursuant to section 505(b) of the Bankruptcy Code, request an expedited determination of any unpaid tax liability of such Debtor or its Estate for any tax incurred during the administration of such Debtor's Chapter 11 Case, as determined under applicable tax laws.

The Reorganized Debtors promptly following the Effective Date shall solicit from their trade vendors that hold Allowed General Unsecured Claims ordinary course unsecured trade credit, consistent with the terms they provided to their most credit-worthy customers. In consideration of each such trade vendor's offer of such post-Effective Date unsecured trade credit, the Reorganized Debtors shall pay such trade vendor 20% of such trade vendor's Allowed General Unsecured Claim; *provided, however,* that such payment together with the Distributions to such trade vendor from the General Unsecured Fund shall not exceed 100% of such trade vendor's Allowed General Unsecured Claim; and, *provided, however,* the Reorganized Debtors shall not be obligated to enter into such agreements resulting in their payment in the aggregate under all such agreements in excess of $1,000,000.00. The Reorganized Debtors shall be assisted in the implementation and administration of this aspect of the Plan by the Liquidating Trustee, among other things, to determine the identity of the holders and amount of Allowed General Unsecured Claims, the pro rata Distributions to the holders of Allowed General Unsecured Creditors, and the extent, if any, that the funding of the General Unsecured Fund on the first anniversary of the Effective Date, if applicable, should be reduced to prevent such trade vendors from receiving more than 100% of their respective Allowed General Unsecured Claims.

With respect to General Unsecured Claims, the Liquidating Trustee shall be retained by the Creditors' Committee pursuant to a retention agreement, the form of which shall be filed with the Bankruptcy Court, which agreement shall appoint, authorize and empower the Liquidating Trustee to act as a representative of the Estates and shall have the powers of a trustee under sections 704 and 1106 of the Bankruptcy Code and Rule 2004 of the Bankruptcy Rules, including without limitation, the right to (1) effect all actions and execute all agreements, instruments and other documents necessary to implement the provisions of the Plan with respect to General Unsecured Claims; (2) make Distributions to holders of Allowed General Unsecured Claims in accordance with this Plan; (3) object to Disputed General Unsecured Claims and prosecute, settle or otherwise resolve such objections and, as applicable, assert any defenses and rights of setoff or recoupment of the Estates; (4) establish and administer any necessary reserves for Disputed General Unsecured Claims that may be required; (5) perform administrative services related to implementation of this Plan; (6) prepare and file post-confirmation reports with the U.S. Trustee and pay any post-confirmation fees owing to the U.S. Trustee and (7) employ and compensate professionals, which professionals may include Professionals that have represented the Debtors or the Creditors' Committee in these

17

Chapter 11 Cases, and other agents necessary for the aforementioned tasks. The Liquidating Trustee shall be permitted to pay any necessary expenses incurred, including compensation of professionals, in accordance with this Plan without seeking Court approval.

E.      *Directors/Officers of the Debtors on the Effective Date.*

On the Effective Date, the authority, power and incumbency of the persons then acting as directors and officers of the Debtors shall be terminated. The directors and executive officers of the Reorganized Debtors who will serve on the Effective Date shall be appointed by the Plan Sponsors and set forth in the Plan Supplement.

F.      *Operations of the Debtors Between the Confirmation Date and the Effective Date*

The Debtors shall continue to operate as Debtors in Possession during the period from the Confirmation Date through and until the Effective Date.

G.      *Transfer and Vesting of Property*

On the Effective Date all of the Debtors' right, title and interests in the Properties and all other property of the Estates, whether it be real or personal, including, without limitation, any funded reserve under the Pre-petition Loan Agreement, shall be transferred to and vest in the Reorganized Debtors free and clear of all Claims, Liens and encumbrances, except for the New Senior Debt; *provided, however,* that the General Unsecured Fund and Plan Expense Reserve shall be transferred to a bank account designated and controlled by and vest in the Liquidating Trustee.

H.      *Establishment of the Administrative Claims Bar Date*

1.      The Plan establishes the Administrative Claims Bar Date, which will be approved by the Bankruptcy Court pursuant to the Confirmation Order.

2.      Except as otherwise provided in Article IV.H.4 herein, on or before 4:00 p.m., prevailing Eastern time, on the Administrative Claims Bar Date, each holder of an Administrative Claim shall file with the Bankruptcy Court a request for payment of Administrative Claim by electronic filing, mailing, hand delivering or delivering by courier service such request for payment of Administrative Claim to the Bankruptcy Court and serve a copy so as to be received substantially contemporaneous with filing on counsel to the Debtors, the Creditors' Committee and the Senior Lender, and the Office of the United States Trustee for the District of Delaware.

3.      The request for payment of an Administrative Claim will be timely filed only if it is *actually received* by the Bankruptcy Court by 4:00 p.m., prevailing Eastern time, on the Administrative Claims Bar Date.

4.      Notwithstanding anything in this Article IV.G, Professionals shall not be required to file a request for payment of any Administrative Claim on or before the Administrative Claims Bar Date for fees and expenses arising under sections 328, 330, 331 or 503(b)(2-5) of the Bankruptcy Code, as such Professionals will instead file final fee applications by the Professional Fee Claim Bar Date.

I.      *Term of Injunctions or Stays*

Unless otherwise provided, all injunctions or stays provided for in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Chapter 11 Cases are closed.

J.      *Creditors' Committee*

Upon the Effective Date, the Creditors' Committee shall dissolve, and its members and Professionals shall be released and discharged from all further authority, duties, responsibilities and obligations relating to and arising from the Chapter 11 Cases, *provided, however,* that the Creditors' Committee shall be deemed to continue to exist and have authority to act in these Chapter 11 Cases, and its Professionals shall be deemed retained, after such date solely with respect to (a) applications Filed pursuant to sections 330 and 331 of the Bankruptcy Code, (b) motions

18

seeking the enforcement of the provisions of the Plan or the Confirmation Order, (c) review and, if appropriate, objection to any request for compensation or expense reimbursement filed by a Professional, (d) seek reimbursement of expenses sought by a member of the Creditors' Committee, (e) select jointly with the Reorganized Debtors any successor Liquidating Trustee, (f) ) if the Effective Date occurs before the Confirmation Order becomes a Final Order, the Creditors' Committee may continue to exist and to serve for the purposes of pursuing any appeal of the Confirmation Order and (g) take such other actions as may be specified in the Liquidating Trustee's retention agreement.

## ARTICLE V.

## PROVISIONS GOVERNING DISTRIBUTIONS

A.     *Initial Distribution Date*

On the Initial Distribution Date or as soon thereafter as is reasonably practicable, the Liquidating Trustee shall make, or shall make adequate reserves for, the Distributions required to be made under the Plan with respect to Allowed General Unsecured Claims. All other distributions to holders of Allowed Claims shall be made at the times specified in Article III.B of this Plan.

B.     *Disputed Reserves*

1.     *Establishment of Disputed Reserves*

On the Initial Distribution Date, the Liquidating Trustee shall establish a separate Disputed Reserve for Disputed General Unsecured Claims. The Liquidating Trustee shall reserve in Cash or other property, for Distribution on account of each Disputed General Unsecured Claim, the full asserted amount (or such lesser amount as may be estimated by the Bankruptcy Court in accordance with Article VIII.D hereof) with respect to each such Disputed General Unsecured Claim.

After making all Distributions required to be made on the applicable date under Article III B of the Plan, the Reorganized Debtors shall establish a separate Disputed Reserve for each of Classes 1, 3 and 4 having Disputed Claims. Each such Disputed Reserve established by the Reorganized Debtors shall be administered by the Reorganized Debtors. The Reorganized Debtors shall reserve in Cash or other property, for Distribution on account of each Disputed Claim in the respective Classes, the full asserted amount (or such lesser amount as may be estimated by the Bankruptcy Court in accordance with Article VI.D hereof) with respect to each such Disputed Claim.

2.     *Maintenance of Disputed Reserves*

To the extent that the property placed in a Disputed Reserve consists of Cash, that Cash shall be deposited in an interest-bearing account, or other account with fewer fees, whichever preserves the corpus of such Disputed Reserve the most, at the Liquidating Trustee's or the Reorganized Debtors' respective sole discretion. The Liquidating Trustee or the Reorganized Debtors, as applicable, shall hold property in the Disputed Reserves in trust for the benefit of the holders of Disputed Claims in the relevant Class of Claims ultimately determined to be Allowed. Each Disputed Reserve shall be closed by the Liquidating Trustee or the Reorganized Debtors, as applicable, when all Distributions and other dispositions of Cash or other property required to be made hereunder will have been made in accordance with the terms of the Plan and all Disputed Claims on account of which such Disputed Reserve was created and funded shall be deemed extinguished upon the last such Disputed Claim becoming Allowed or disallowed by a Final Order of the Bankruptcy Court. Upon closure of a Disputed Reserve for a particular Class of Claims, all Cash (including any Cash Investment Yield) or other property held in that Disputed Reserve shall be used to pay any remaining unpaid amounts due to Claimants for the applicable Class in accordance with Article III.B or shall be returned to the Reorganized Debtors if all such Allowed Claims have been fully satisfied as set forth in Article III.B.

EAST\46796355.2
EAST\45294409.10

3. *Establishment of Plan Expense Reserve*

On the Effective Date, the Liquidating Trustee may establish a reserve in an amount not in excess of $250,000.00 from the General Unsecured Fund for the payment of the fees and expenses of the Liquidating Trustee and any professionals the Liquidating Trustee has or anticipates hiring in order to carry out the duties of the Liquidating Trustee. The Liquidating Trustee may increase or decrease such reserve as the Liquidating Trustee deems appropriate in his or her business judgment in accordance with the terms of his or her retention agreement. Any funds remaining in such expense reserve after payment of all such expenses shall be used to make payment to the holders of Allowed Claims in Class 5.

C. *Subsequent Distributions*

Any Distribution that is not made on the Initial Distribution Date or on any other date specified herein because the Claim that would have been entitled to receive that Distribution is not an Allowed Claim on such date, shall be held by the Liquidating Trustee or the Reorganized Debtors, as applicable, in a Disputed Reserve pursuant to Article V.B herein and Distributed as soon as practicable and in accordance with the terms of this Plan, after such Claim is Allowed by a Final Order of the Bankruptcy Court.

D. *Delivery of Distributions*

1. *General Provisions; Undeliverable Distributions*

Subject to Bankruptcy Rule 9010 and except as otherwise provided herein, Distributions to the holders of Allowed Claims shall be made by the Liquidating Trustee or the Reorganized Debtors at (a) the address of each holder as set forth in the Schedules, unless superseded by the address set forth on proofs of Claim Filed by such holder or (b) the last known address of such holder if no proof of Claim is Filed or if the Liquidating Trustee or the Reorganized Debtors, as applicable, has been notified in writing of a change of address. If any Distribution is returned as undeliverable, the Liquidating Trustee or the Reorganized Debtors, as applicable, may, in its/their discretion, make such efforts to determine the current address of the holder of the Claim with respect to which the Distribution was made as the Liquidating Trustee or the Reorganized Debtors deem appropriate, but no Distribution to any holder shall be made unless and until the Liquidating Trustee or Reorganized Debtor has determined the then-current address of the holder, at which time the Distribution to such holder shall be made to the holder without interest from and after the Effective Date through the date of Distribution. Amounts in respect of any undeliverable Distributions made by the Liquidating Trustee or the Reorganized Debtors shall be returned to, and held in trust by, the Liquidating Trustee or Reorganized Debtors, as applicable until the Distributions are claimed or are deemed to be unclaimed property under section 347(b) of the Bankruptcy Code as set forth below in Article V.D.2. The Liquidating Trustee or Reorganized Debtors shall have the discretion to determine how to make Distributions in the most efficient and cost-effective manner possible; *provided, however*, that their discretion may not be exercised in a manner inconsistent with any express requirements of the Plan.

2. *Unclaimed Property*

Except with respect to property not Distributed because it is being held in a Disputed Reserve, Distributions that are not claimed by the expiration of one year from the Effective Date shall be deemed to be unclaimed property under section 347(b) of the Bankruptcy Code and if on account of an Allowed Claim in Class 5 may be used to make payment on other Claims in such Class, and the Claims with respect to which those Distributions are made shall be automatically cancelled. After the expiration of that one-year period, the right of any Entity to those Distributions shall be discharged and forever barred. Nothing contained in the Plan shall require the Liquidating Trustee or the Reorganized Debtors to attempt to locate any holder of an Allowed Claim. All funds or other property that relates to any such cancelled Class 5 Claim pursuant to this Article shall be distributed by the Liquidating Trustee, as applicable to the holders of other Claims in the same class in accordance with the provisions of the Plan.

EAST\46796355.2
EAST\45294409.10

E. *Manner of Cash Payments Under the Plan*

Cash payments made pursuant to the Plan shall be in United States dollars by checks drawn on a domestic bank selected by the Liquidating Trustee or the Reorganized Debtors or by wire transfer from a domestic bank, at the option of the Liquidating Trustee or Reorganized Debtors, as applicable.

F. *Time Bar to Cash Payments by Check*

Checks issued by the Liquidating Trustee or the Reorganized Debtors on account of Allowed Claims shall be null and void if not negotiated within 90 days after the date of issuance thereof. Requests for the reissuance of any check that becomes null and void pursuant to this Article V.F. shall be made directly to the Liquidating Trustee or Reorganized Debtors, as applicable, by the holder of the Allowed Claim to whom the check was originally issued. Any Claim in respect of such voided check shall be made in writing on or before the later of the first anniversary of the Effective Date or the first anniversary of the date on which the Claim at issue became an Allowed Claim. After that date, all Claims in respect of void checks shall be discharged and forever barred and the proceeds of those checks shall become unclaimed property in accordance with section 347(b) of the Bankruptcy Code.

G. *Compliance with Tax Requirements*

In connection with making Distributions under this Plan, to the extent applicable, the Liquidating Trustee and the Reorganized Debtors shall comply with all tax withholding and reporting requirements imposed on it by any governmental unit, and all Distributions pursuant to this Plan shall be subject to such withholding and reporting requirements. The Liquidating Trustee and the Reorganized Debtors may withhold the entire Distribution due to any holder of an Allowed Claim until such time as such holder provides the necessary information to comply with any withholding requirements of any governmental unit. Any property so withheld will then be paid by the Liquidating Trustee or its Reorganized Debtors, as applicable, to the appropriate authority. If the holder of an Allowed Claim fails to provide the information necessary to comply with any withholding requirements of any governmental unit within six months from the date of first notification to the holder of the need for such information or for the Cash necessary to comply with any applicable withholding requirements, then such holder's Distribution shall be treated as an undeliverable Distribution in accordance with Article V.D.1 hereof.

H. *No Payments of Fractional Dollars and Minimum Distributions*

Notwithstanding any other provision of the Plan to the contrary, no payment of fractional dollars shall be made pursuant to the Plan. Whenever any payment of a fraction of a dollar under the Plan would otherwise be required, the actual Distribution made shall reflect a rounding down of such fraction to the nearest whole dollar. The Liquidating Trustee shall not be obligated to make any Distributions of less than $10.00.

I. *Interest on Claims*

Except as specifically provided for in this Plan or the Confirmation Order, interest shall not accrue on Claims and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim. Interest shall not accrue or be paid on any Claim, or portion thereof, that is a Disputed Claim in respect of the period from the Effective Date to the date such Disputed Claim, or portion thereof, becomes an Allowed Claim and Distributions are made on account thereof. Except as expressly provided herein or in a Final Order of the Bankruptcy Court, no prepetition Claim shall be Allowed to the extent that it is for post-petition interest or other similar charges.

J. *No Distribution in Excess of Allowed Amount of Claim*

Notwithstanding anything to the contrary contained in the Plan, no holder of an Allowed Claim, other than Class 7 Claimants receiving payment for interest on their Claims in accordance with Article III.B.6 of this Plan, shall receive in respect of that Claim any Distribution in excess of the Allowed amount of that Claim.

EAST\46796355.2
EAST\45294409.10

K. *Setoff and Recoupment*

The Liquidating Trustee or the Reorganized Debtors, as applicable, may, but shall not be required to, setoff against, or recoup from, any Claim and the Distributions to be made pursuant to the Plan in respect thereof, any claims or defenses of any nature whatsoever that any of the Debtors or the Estates may have against the holder of such Claim, but neither the failure to do so nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Liquidating Trustee or the Reorganized Debtors on behalf of the Debtors, the Estates, the Reorganized Debtors or the Liquidating Trustee as a successor in interest of any right of setoff or recoupment that any of them may have against the holder of any Claim.

## ARTICLE VI.

## DISPUTED CLAIMS

A. *No Distribution Pending Allowance*

Notwithstanding any other provision of the Plan, the Liquidating Trustee and the Reorganized Debtors shall not Distribute any Cash or other property on account of any Claim that is Disputed unless and until such Claim or portion thereof becomes Allowed.

B. *Resolution of Disputed Claims.*

Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, the Liquidating Trustee shall have the right after the Effective Date to the exclusion of all others to make and File objections to General Unsecured Claims. The costs of pursuing the objections to General Unsecured Claims shall be paid from the Plan Expense Reserve.

Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, the Reorganized Debtors have the right after the Effective Date to the exclusion of all others to make and File objections to all Claims other than General Unsecured Claims. The costs of pursuing the objections to such Claims shall be paid by the Reorganized Debtors.

C. *Objection Deadline*

All objections to Disputed Claims, shall be Filed and served upon the holders of each such Claim not later than 90 days after the Effective Date, unless otherwise ordered by the Bankruptcy Court after notice and a hearing.

D. *Estimation of Claims*

At any time the Liquidating Trustee, with respect to General Unsecured Claims, and the Reorganized Debtors, with respect to all other Claims, may request that the Bankruptcy Court estimate any contingent or unliquidated Claim to the extent permitted by section 502(c) of the Bankruptcy Code regardless of whether the Debtors, the Reorganized Debtors or the Liquidating Trustee have previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall have jurisdiction to estimate any Claim at any time during litigation concerning any objection to such Claim, including during the pendency of any appeal relating to any such objection. If the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on the Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the Claim, the Liquidating Trustee or the Reorganized Debtors, as applicable, may elect to pursue supplemental proceedings to object to the ultimate allowance of the Claim. All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

EAST\46796355.2
EAST\45294409.10

# ARTICLE VII.

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.      *Assumption and Rejection of Executory Contracts and Unexpired Leases*

The Plan shall constitute a motion to assume and assign to the Reorganized Debtors all Executory Contracts and Leases, other than those Executory Contracts and Leases, which are listed on <u>Exhibit A</u> to the Plan and designated for rejection. On or before ten business days, or such shorter period if agreed upon by the respective contractual parties and the Creditors' Committee, prior to the hearing regarding confirmation of the Plan, the Reorganized Debtors will file with the Bankruptcy Court the information necessary to establish adequate assurance of future performance under such assumed Executory Contracts and Leases. The entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of any such assumptions and assignments pursuant to sections 365(a) and 1123 of the Bankruptcy Code.

B.      *Claims Based on Assumption of Executory Contracts and Unexpired Leases*

No later than ten business days prior to the hearing regarding confirmation of the Plan, the Debtors shall file an exhibit setting forth the monetary cure amount the Debtors believe is owed with respect to each Executory Contract and Lease that is being assumed and assigned pursuant to Article VII.A above. Any undisputed Claims for such cure amount, or any undisputed portion thereof, or the amount of such Allowed Claim with respect to the assumed Contracts will be treated as Class 6 Claims in accordance with Article III.B.

C.      *Claims Based on Rejection of Executory Contracts or Unexpired Leases*

Claims resulting from the rejection of Executory Contracts and unexpired Leases pursuant to Article VII.A herein, or the expiration or termination of any Executory Contract or unexpired Lease after the entry of the Confirmation Order, but prior to the Effective Date, must be filed with the Bankruptcy Court and served on the Debtors (or the Reorganized Debtors, as applicable) no later than 30 days after the Effective Date. Any Claims arising from the rejection of an Executory Contract or unexpired Lease pursuant to this Article VII.C. for which proofs of Claim are not timely filed within that time period will be forever barred from assertion against the Debtors, the Estates, the Reorganized Debtors, Liquidating Trustee, their successors and assigns, and their assets and properties, unless otherwise ordered by the Bankruptcy Court or as otherwise provided herein. All such Claims shall, as of the Effective Date, be subject to the discharge and permanent injunction set forth in Article IX.E herein. Unless otherwise ordered by the Bankruptcy Court, all such Claims that are timely filed as provided herein shall be treated as General Unsecured Cure Claims under the Plan and shall be subject to the provisions of Article III herein.

# ARTICLE VIII.

## CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

The following are conditions precedent to the Effective Date that must be satisfied or waived:

1.      The order approving the Disclosure Statement has become a Final Order.

2.      The Confirmation Order has become a Final Order.

3.      The Confirmation Order shall find and determine that the Plan satisfies the requirements of sections 1129(a) and 1129(b), if applicable, with respect to the treatment of the Senior Lender as set forth in the Plan, or such other treatment expressly approved in writing by the Plan Sponsors.

4.      The appointment of the Liquidating Trustee shall have been authorized, approved and confirmed by order of the Bankruptcy Court and such appointment accepted by the Liquidating Trustee.

5.      Notwithstanding the foregoing, the Plan Proponents (with the consent of the Plan Sponsors) reserve, in their sole discretion, the right to waive the occurrence of any condition precedent to the Effective Date or to modify any of the foregoing conditions precedent. Any such written waiver of a condition precedent set forth in

23

this Article may be effected at any time, without notice, without leave or order of the Bankruptcy Court, and without any formal action other than proceeding to consummate the Plan. Any actions required to be taken on the Effective Date shall take place and shall be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action.

## ARTICLE IX.

## INDEMNIFICATION, RELEASE, INJUNCTIVE AND RELATED PROVISIONS

A.    *Compromise and Settlement*

Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the Distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims and Equity Interests. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all Claims and Equity Interests, as well as a finding by the Bankruptcy Court that such compromise or settlement is fair, equitable, reasonable and in the best interests of the Debtors, the Estates and holders of Claims and Equity Interests.

B.    *Releases*

1.    *Releases by the Debtors*.  Notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, for the good and valuable consideration provided by each of the Releasees, including, without limitation: the services of the Releasees in facilitating the expeditious implementation of the Plan; each of the Debtors hereby provides a full release to the Releasees (and each such Releasee so released shall be deemed released and discharged by the Debtors) from any and all Causes of Action and any other debts, obligations, rights, suits, damages, actions, remedies and liabilities whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing as of the Effective Date or thereafter arising, in law, at equity, whether for tort, contract, violations of federal or state securities laws, or otherwise, based in whole or in part upon any act or omission, transaction, event or other occurrence or circumstances, including actions in connection with indebtedness for money borrowed by the Debtors, existing or taking place prior to or on the Effective Date arising from or related in any way to the Debtors, including, without limitation, those that any of the Debtors would have been legally entitled to assert or that any holder of a Claim or Equity Interest or other Entity would have been legally entitled to assert for or on behalf of any of the Debtors or Estates and further including those in any way related to the Estates, the Chapter 11 Cases or the Plan; *provided, however*, that the foregoing provisions of this Article IX.B.1 shall not operate to waive or release from any Causes of Action expressly set forth in and preserved by the Plan or any defenses thereto.

2.    *Releases of Chapter 5 Claims by the Debtors*.  Notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, for the good and valuable consideration provided; each of the Debtors hereby provides a full release of any and all claims and causes of action pursuant to Chapter 5 of the Bankruptcy Code which they have, may have or could have against any Holders of General Unsecured Claims in Classes 5 or 6; *provided, however*, that the foregoing provisions of this Article IX.B.1 shall not operate to waive or release from any Causes of Action expressly set forth in and preserved by the Plan or any defenses thereto.

3.    Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the releases set forth in this Article IX.B pursuant to Bankruptcy Rule 9019 and its finding that they are: (a) in exchange for good and valuable consideration, representing a good faith settlement and compromise of the Claims and Causes of Action thereby released; (b) in the best interests of the Debtors and all holders of Claims and Equity Interests; (c) fair, equitable and reasonable; (d) approved after due notice and opportunity for hearing; and (e) a bar to any of the Releasing Parties asserting any Claim or Cause of Action thereby released.

EAST\46796355.2
EAST\45294409.10

C.   *Exculpation*

**Notwithstanding anything contained in the Plan to the contrary, the Releasees shall neither have nor incur any liability to any Entity for any Claims or Causes of Action arising on or after the Petition Date, including any act taken or omitted to be taken in connection with, or related to, formulating, negotiating, preparing, disseminating, implementing, administering, confirming or consummating the Plan, the Disclosure Statement, or any other contract, instrument, release or other agreement or document created or entered into in connection with the Plan or Disclosure Statement or any other postpetition act taken or omitted to be taken in connection with or in contemplation of the Plan; *provided, however,* that the foregoing provisions of this Article IX.C shall have no effect on the liability of any Entity that results from any such act or omission that is determined in a Final Order to have constituted gross negligence or willful misconduct; *provided, further,* that each Releasee shall be entitled to rely upon the advice of counsel concerning its duties; *provided, further,* that the foregoing provisions of this Article IX.C shall not apply to any acts, omissions, Claims, Causes of Action or other obligations expressly set forth in and preserved by the Plan or any defenses thereto.**

D.   *Preservation of Causes of Action*

   1.   *Vesting of Causes of Action*

      (a)      Except as otherwise provided in the Plan or Confirmation Order, in accordance with section 1123(b)(3) of the Bankruptcy Code, any Causes of Action that the Debtors may hold against any Entity shall vest upon the Effective Date in the Reorganized Debtors.

      (b)      Except as otherwise provided in the Plan or Confirmation Order, after the Effective Date, the Reorganized Debtors shall have the exclusive right to institute, prosecute, abandon, settle or compromise any Causes of Action, in their sole discretion and without further order of the Bankruptcy Court, in any court or other tribunal, including, without limitation, in an adversary proceeding filed in one or more of the Chapter 11 Cases. Nothing herein shall impose any duty on the Reorganized Debtors to pursue all or any Causes of Action.

      (c)      Causes of Action and any recoveries therefrom shall remain the sole property of the Reorganized Debtors and holders of Claims or Equity Interests shall have no right to any such recovery.

   2.   *Preservation of All Causes of Action Not Expressly Settled or Released*

      (a)      Unless a Cause of Action against a holder or other Entity is expressly waived, relinquished, released, compromised or settled in the Plan or any Final Order (including the Confirmation Order), such Cause of Action is expressly reserved for later adjudication by the Reorganized Debtors (including, without limitation, Causes of Action not specifically identified or described in the Plan or elsewhere or of which the Debtors or the Creditors' Committee may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to the Debtors or the Creditors' Committee at this time or facts or circumstances which may change or be different from those the Debtors or the Creditors' Committee now believe to exist) and, therefore, no preclusion doctrine, including, without limitation, the doctrines of *res judicata,* collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such Causes of Action upon or after the entry of the Confirmation Order or Effective Date based on the Disclosure Statement, Plan or Confirmation Order, except where such Causes of Action have been released in the Plan (including, without limitation, and for the avoidance of doubt, the releases contained in Article IX.B.1) or any other Final Order (including the Confirmation Order).  In addition, the right of the Reorganized Debtors is expressly reserved to pursue or adopt any claims alleged in any lawsuit in which the Debtors are a defendant or an interested party, against any Entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits.

      (b)      Subject to the immediately preceding paragraph, any Entity to whom the Debtors have incurred an obligation (whether on account of services, purchase or sale of goods or otherwise), or who has received services from the Debtors or a transfer of money or property of the Debtors, or who has transacted business with the Debtors, or leased equipment or property from the Debtors should assume that any such obligation, transfer, or transaction may be reviewed by the Reorganized Debtors subsequent to the Effective Date and may be the subject of an action after the Effective Date, regardless of whether: (i) such Entity has filed a proof of claim against the

Debtors in the Chapter 11 Cases; (ii) an objection has been filed with respect to any such Entity's proof of claim; (iii) any such Entity's Claim was included in the Schedules; (iv) any such Entity's scheduled Claim was identified in the Schedules as disputed, contingent or unliquidated.

E.      *Injunction*

1.      From and after the Effective Date, all Entities are permanently enjoined from commencing or continuing in any manner against the Debtors or the Reorganized Debtors, their successors and assigns, and their assets and properties, as the case may be, any suit, action or other proceeding, on account of or respecting any Claim, demand, liability, obligation, debt, right, Cause of Action, interest or remedy released or to be released pursuant to the Plan or the Confirmation Order.

2.      Except as otherwise expressly provided for in the Plan or in obligations issued pursuant to the Plan, from and after the Effective Date, all Entities shall be precluded from asserting against the Debtors, the Debtors in Possession, the Estates, the Reorganized Debtors, their successors and assigns and their assets and properties, any other Claims or Equity Interests based upon any documents, instruments, or any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date.

3.      The rights afforded in the Plan and the treatment of all Claims and Equity Interests in the Plan shall be in exchange for and in complete satisfaction of Claims and Equity Interests of any nature whatsoever, against the Debtors or any of their assets or properties. On the Effective Date, all such Claims against, and Equity Interests in, the Debtors shall be satisfied and released in full.

4.      Except as otherwise expressly provided for in the Plan or in obligations issued pursuant to the Plan, all Parties and Entities are permanently enjoined, on and after the Effective Date, on account of any Claim or Equity Interest satisfied and released hereby, from:

(a)      commencing or continuing in any manner any action or other proceeding of any kind against any Debtor, the Reorganized Debtors, their successors and assigns and their assets and properties;

(b)      enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or order against any Debtor, the Reorganized Debtors, their successors and assigns and their assets and properties;

(c)      creating, perfecting or enforcing any encumbrance of any kind against any Debtor, the Reorganized Debtors or the property or estate of any Debtor or Reorganized Debtors;

(d)      asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from any Debtor or against the property or estate of any the Debtor or Reorganized Debtors, except to the extent a right to setoff, recoupment or subrogation is asserted with respect to a timely filed proof of claim; or

(e)      commencing or continuing in any manner any action or other proceeding of any kind in respect of any Claim or Equity Interest or Cause of Action released or settled hereunder.

F.      *Release of Liens*

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document created pursuant to the Plan, on the Effective Date, all mortgages, deeds of trust, liens, pledges or other security interests against property of the Estates, other than the New Senior Debt, shall be fully released and discharged and all of the right, title and the Debtors interest in such property shall be distributed or transferred in accordance with this Plan.

The Reorganized Debtors following the Effective Date may dispose of the Properties, or any portion thereof, or refinance the New Senior Debt and pay off in full the then remaining balance due on the New Senior

EAST\46796355.2
EAST\45294409.10

Debt without prepayment penalty, premium, yield maintenance or any other charge or fee, other than as expressly set forth in the New Loan Agreement. Furthermore, the Reorganized Debtors following the Effective Date may sell any one or more of the Properties in one or a series of transactions in which case the Senior Lender's Lien shall be deemed released and upon the reasonable request of the Reorganized Debtors the Senior Lender shall execute and deliver from time to time partial or full Lien releases, as applicable, with respect to such Properties in consideration of payment of an amount equal to the Lien Release Price set forth on the Lien Release Schedule attached to the New Loan Agreement. Any disposition of the Properties during the term of the Plan shall be free and clear of any and all taxes, assessments and charges to the fullest extent permitted under section 1146(a) of the Bankruptcy Code.

## ARTICLE X.

## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall, after the Effective Date, retain such jurisdiction over the Chapter 11 Cases and all Entities with respect to all matters related to the Chapter 11 Cases, the Debtors, the Estates, all property of the Estates and the Plan as is legally permissible, including, without limitation, jurisdiction to:

1.      allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Equity Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of Claims or Equity Interests;

2.      grant, deny or otherwise resolve any and all applications of professionals or Persons retained in the Chapter 11 Cases by the Debtors or the Creditors' Committee for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for periods ending on or before the Effective Date;

3.      resolve any matters related to the assumption, assignment or rejection of any executory contract or unexpired lease to which a Debtor was party or with respect to which a Debtor may be liable and to hear, determine and, if necessary, liquidate, any Claims arising therefrom;

4.      ensure that Distributions to holders of Allowed Claims and Equity Interests are accomplished pursuant to the provisions of the Plan;

5.      decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving a Debtor that may be pending on the Effective Date or instituted by the Liquidating Trustee or the Reorganized Debtors after the Effective Date, *provided, however*, the right of the Liquidating Trustee or the Reorganized Debtors to commence actions in all appropriate jurisdictions shall be fully reserved;

6.      enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all other contracts, instruments, releases, indentures and other agreements or documents adopted in connection with the Plan or the Disclosure Statement;

7.      resolve any cases, controversies, suits or disputes that may arise in connection with the Effective Date, interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

8.      issue injunctions, enforce them, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with the Effective Date or enforcement of the Plan, except as otherwise provided in the Plan;

9.      enforce Article IX.A, Article IX.B and Article IX.C hereof;

10.     enforce the Injunction set forth in Article IX.E hereof;

EAST\46796355.2
EAST\45294409.10

11. resolve any cases, controversies, suits or disputes with respect to the releases, injunction and other provisions contained in Article IX herein, and enter such orders as may be necessary or appropriate to implement or enforce all such releases, injunctions and other provisions;

12. enter and implement such orders as necessary or appropriate if the Confirmation Order is modified, stayed, reversed, revoked or vacated;

13. resolve any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document adopted in connection with the Plan or the Disclosure Statement; and

14. enter an order and/or the decree contemplated in Federal Rule of Bankruptcy Procedure 3022 concluding the Chapter 11 Cases.

## ARTICLE XI.

## MISCELLANEOUS PROVISIONS

A. *Final Fee Applications*

The deadline for submission by Professionals of final applications for Bankruptcy Court approval of Accrued Professional Compensation shall be the Professional Fee Claim Bar Date.

B. *Payment of Statutory Fees*

All fees payable pursuant to Article 1930 of title 28 of the United States Code after the Effective Date, shall be reserved by the Debtors on the Effective Date and paid by the Reorganized Debtors prior to the closing of the Chapter 11 Cases on the earlier of when due or the Effective Date, or as soon thereafter as practicable.

C. *Modification of Plan*

Subject to the limitations contained in the Plan: (1) the Plan Proponents reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules to amend or modify the Plan with the consent of the Plan Sponsors prior to the entry of the Confirmation Order, including amendments or modifications to satisfy section 1129(b) of the Bankruptcy Code; and (2) after the entry of the Confirmation Order, the Plan Proponents, Reorganized Debtors or the Liquidating Trustee, as the case may be, may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

D. *Revocation of Plan*

The Debtors and the Creditors' Committee reserve the right to revoke or withdraw the Plan prior to the entry of the Confirmation Order, and to file subsequent chapter 11 plans. If the Debtors or the Creditors' Committee revoke or withdraw the Plan or if entry of the Confirmation Order or the Effective Date does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan, assumption or rejection of executory contracts or leases effected by the Plan, and any document or agreement executed pursuant hereto shall be deemed null and void; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims by or against, or any Equity Interests in, the Debtors or any other Entity; (b) prejudice in any manner the rights of the Debtors, the Creditors' Committee or any other Entity; or (c) constitute an admission of any sort by the Debtors or the Creditors' Committee or any other Entity.

E. *Successors and Assigns*

The rights, benefits and obligations of any Entity named or referred to herein and the Plan Supplement shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

EAST\46796355.2
EAST\45294409.10

F. *Governing Law and Construction*

Except to the extent that the Bankruptcy Code or Bankruptcy Rules apply, and subject to the provisions of any contract, instrument, release, indenture or other agreement or document entered into in connection herewith, the rights and obligations arising hereunder shall be governed by, and construed and enforced in accordance with, the laws of the state of Delaware, without giving effect to the principles of conflict of laws thereof. Any inconsistency between the Plan and the New Loan Agreement shall be construed in favor of and so as to give effect to the New Loan Agreement. Any inconsistency between the Plan and the Confirmation Order shall be construed in favor of and so as to give effect to the Confirmation Order. All exhibits and schedules to the Plan and the Plan Supplement shall be incorporated in the Plan by this reference, as though set forth at length herein.

G. *Reservation of Rights*

Except as expressly set forth herein, the Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order. Neither the filing of the Plan, any statement or provision contained herein, nor the taking of any action by the Debtors, the Creditors' Committee or any Entity with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights of: (1) any Debtor or the Creditors' Committee with respect to the holders of Claims or Equity Interests or other parties-in-interest; or (2) any holder of a Claim or other party-in-interest prior to the Effective Date.

H. *Article 1146 Exemption*

Pursuant to section 1146(a) of the Bankruptcy Code, the transfer and vesting of the Properties to and in the Reorganized Debtors on the Effective Date and any other transfers of property pursuant hereto shall not be subject to any stamp tax or other similar tax or governmental assessment in the United States, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment.

I. *Section 1125(e) Good Faith Compliance*

The Debtors, the Creditors' Committee and each of their respective Representatives, shall be deemed to have acted in "good faith" under section 1125(e) of the Bankruptcy Code.

J. *Further Assurances*

The Debtors, the Reorganized Debtors, the Creditors' Committee, the Liquidating Trustee, all holders of Claims and Equity Interests receiving Distributions hereunder and all other parties in interest shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan or the Confirmation Order.

K. *Service of Documents*

Any pleading, notice or other document required by the Plan to be served on or delivered to the Debtors, Reorganized Debtors or the Creditors' Committee, in addition to any direction of service of notice by any order, shall be sent by first class U.S. mail, postage prepaid as follows:

EAST\46796355.2
EAST\45294409.10

To the Debtors or Reorganized Debtors:

> PJ Finance Company, LLC
> 1200 North Ashland Avenue
> Suite 600
> Chicago, IL 60622
> Attn: Michael Husman and Peter Wall

*with a copy to*:

> DLA Piper LLP (US)
> 203 North LaSalle Street, Suite 1900
> Chicago, Illinois 60601
> Attn: Richard Chesley and Kimberly D. Newmarch

To the Creditors' Committee:

> Hahn & Hessen LLP
> 488 Madison Avenue
> New York, New York 10022
> Attn.: Mark T. Power

To the Liquidating Trustee:

> **[insert contact information for Liquidating Trustee]**

L.    *Filing of Additional Documents*

On or before the Effective Date, the Plan Proponents may file with the Bankruptcy Court all agreements and other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.

M.    *No Stay of Confirmation Order*

The Confirmation Order shall contain a waiver of any stay of enforcement otherwise applicable, including pursuant to Federal Rules of Bankruptcy Procedure 3020(e) and 7062.

* * * * *

EAST\46796355.2
EAST\45294409.10

Dated:  September 19, 2011
            Wilmington, Delaware

The Official Committee of Unsecured Creditors

By:   /s/
Its:   Chairman

PJ Finance Company LLC

By:   /s/
Its:

PJ Holding Company Manager, LLC

By:   /s/
Its:

PJ Holding Company, LLC

By:   /s/
Its:

Alliance PJRT GP, Inc.

By:   /s/
Its:

Alliance PJWE GP, LLC

By:   /s/
Its:

Alliance PJRT Limited Partnership

By:   /s/
Its:

Alliance PJWE Limited Partnership

By:   /s/
Its:

**EXHIBIT A**
**(Executory Contracts and Leases to be Rejected)**