# Exhibit C

# Liquidation Analysis

# LIQUIDATION ANALYSIS

## Introduction

This Hypothetical Liquidation Analysis (the "Liquidation Analysis") of PJ Finance Company, LLC, and its Debtor affiliates (collectively, "PJ Finance" or "Debtors") represents the liquidation value of PJ Finance.

Section 1129(a)(7) of the Bankruptcy Code (often referred to as the "Best Interest Test") requires that with respect to each Impaired Class each holder of a Claim or Equity Interest either (i) accepts the Plan or (ii) receives or retains under the Plan property of a value, as of the Effective Date, that is not less than the value such holder would receive or retain if the Debtors were liquidated under Chapter 7 of the Bankruptcy Code on the Effective Date of the Plan.

To demonstrate that the Plan satisfies the Best Interests Test, the Debtors, in consultation with their legal and financial advisors, have prepared the Liquidation Analysis under a hypothetical liquidation under Chapter 7 that: (a) estimates the realizable liquidation value of the Debtors' assets assuming the Chapter 7 trustee conducts the liquidation process and (b) estimates the distribution to creditors resulting from the liquidation, net of estimated Chapter 7 related fees and wind down costs.

The Liquidation Analysis assumes each of the Debtors' Chapter 11 cases would convert to Chapter 7 as of December 31, 2011 (the assumed Effective Date of the Plan). It is further assumed that the liquidation of the assets would commence under the direction of a Chapter 7 trustee as a going concern forced sale. The liquidation process is estimated to continue for three to six months. The proceeds from the liquidation, net of direct liquidation-related costs, would then be distributed to creditors and interest holders according to their relative rights and priorities. The hypothetical liquidation values were determined by assessing classes of assets as opposed to appraising specific assets. For the preparation of this Liquidation Analysis, the Debtors did not retain third party experts to appraise the individual assets.

Estimating recoveries in any hypothetical Chapter 7 liquidation case is uncertain due to the number of unknown variables. Thus, extensive use of estimates and assumptions have been made that, although considered reasonable, are inherently subject to significant business, economic and competitive uncertainties and contingencies beyond the control of the Debtors. In the event of a Chapter 7 liquidation, actual results may vary materially from the estimates and projections set forth in the Liquidation Analysis. The Liquidation Analysis does not include recoveries resulting from any potential preference claims, fraudulent conveyance litigation, or other avoidance actions, if such actions exist.

Similarly, the Liquidation Analysis contains an estimate of the amount of Claims that will ultimately become Allowed Claims based on the Debtors' books and records. The actual amount of Allowed Claims in a Chapter 7 liquidation could materially and significantly differ from the amount of Claims estimated in the Liquidation Analysis. No order or finding has been entered by the Court estimating or otherwise fixing the amount of the Claims. Furthermore, no attempt has been made to estimate additional General Unsecured Claims that may arise from the liquidation, such as rejection of remaining Executory Contracts and Leases not assumed by the purchaser.

# PJ Finance Company, LLC - Hypothetical Liquidation Analysis
## As of 12/31/12
## Unaudited
## (U.S. $ thousands)

| Assets | Notes | | | | Estimated Liquidation Value | |
|---|---|---|---|---|---|---|
| | | | | | Low | High |
| Proceeds Available for Distribution | | | | | | |
| Property Portfolio | A | | | | $ 206,801 | $ 251,116 |
| Cash and Cash Equivalents | B | | | | 405 | 405 |
| Escrow Deposits and Restricted Cash | C | | | | - | - |
| Estimated Cash Generation during Sales Process | D | | | | 4,255 | 8,509 |
| Total estimated proceeds available | | | | | $ 211,461 | $ 260,030 |
| **Chapter 7 Administrative Fees** | | | | | **Liquidation Recoveries** | |
| | | | | | Low | High |
| Trustee fees | E | 3% | | | $ 6,332 | $ 7,789 |
| Transaction fees | F | 3% | | | 6,204 | 7,533 |
| Other Professional fees | G | 1%-1.5% | | | 2,115 | 3,900 |
| Estimated Wind-Down Costs | H | 1% | | | 2,115 | 2,600 |
| Accrued Chapter 11 Professional Fees | I | | | | 1,267 | 1,267 |
| Total estimated Chapter 7 Administrative Fees | | | | | 18,031 | 23,089 |
| Net estimated proceeds available after distribution | | | | | $ 193,429 | $ 236,941 |
| **Secured Claims** | | Claim As Of 12.31.11 | Recovery % Low | High | **Liquidation Recoveries** Low | High |
| Senior Lender Secured Claim | J | $ 470,306 | 41% | 50% | $ 193,429 | $ 236,941 |
| Net estimated proceeds available after distribution | | $ 470,306 | | | $ - | $ - |
| **Administrative and Priority Claims** | | Claim As Of 12.31.11 | Recovery % Low | High | **Liquidation Recoveries** Low | High |
| Administrative and Priority Claims | K | $ 687 | 0% | 0% | $ - | $ - |
| Net estimated proceeds available after distribution | | $ 687 | | | $ - | $ - |
| **Unsecured Claims** | | Claim As Of 12.31.11 | Recovery % Low | High | **Liquidation Recoveries** Low | High |
| General unsecured claims | L | $ 10,000 - 15,000 | 0% | 0% | $ - | $ - |
| Deficiency Claim of Senior Lender | | $ 276,877 - 233,365 | 0% | 0% | - | - |
| Total unsecured claims | | $ - | | | - | - |
| Net estimated proceeds available after distribution | | | | | $ - | $ - |

*The accompanying notes comprise an integral part of the Hypothetical Liquidation Analysis*

## Notes to Liquidation Analysis

### *Proceeds Available for Distribution*
A. Property Portfolio
- The Liquidation Analysis assumes that the Debtors' portfolio is sold as a going concern that would be effectuated through a distressed sale of the entire portfolio either to a single or multiple purchasers. The analysis further assumes that all accrued and unpaid post-petition liabilities arising in the ordinary course of the operation of the properties would be assumed by the perspective purchasers. Furthermore, it is assumed that in a liquidation scenario the purchaser(s) will honor all prepetition contracts, with the exception of the property management agreements which are assumed to be terminated in accordance with their terms.
- The Debtors with their advisors employed an Income Approach to determine the estimated liquidation value based on recent performance, incorporating the Debtors' long term projections based on a stabilized occupancy rate, with an adjustment for deferred maintenance and capital expenditures. It is assumed that a potential purchaser would deduct from the purchase price any deferred maintenance and capital expenditures to account for the work required to bring the portfolio to market level condition. A discount ranging from 15% to 30% was then applied to reflect the distressed nature and expedited timing of the sale in Chapter 7.
- The Debtors with their advisors further reviewed comparable sales in the relevant markets to assess the reasonableness of the estimated liquidation value.
- Based on the future cash flows of the Properties, the current and projected occupancy levels, the required capital expenditures, and the distressed discount, the Debtors believe that in a forced liquidation sale, the Properties would be worth between $206.8 million and $251.1 million.

B. Cash and Cash Equivalents
Cash and cash equivalents consist of highly liquid investments, including bank deposits in checking accounts and readily available daily investments of cash surpluses. The Debtors have estimated that they will have unrestricted cash on hand of $0.4 million as of December 31, 2011.

C. Restricted Cash
   o The Debtors estimate they will have approximately $12.4 million in restricted funds on the Effective Date. The estimated value to the Debtors of these restricted cash balances is nil as the funds would be applied against the specific claims for which they relate as described below:

| Account | Amount | Treatment |
|---|---|---|
| Professional Reserve | $2,000,000 | The Professional Reserve was established pursuant to the Interim Cash Collateral Orders. The Professional Reserve is held as security for the Debtors' payment of Pre-Termination Date Expenses (as defined in the Cash Collateral Orders). |
| Security Deposit Account | $1,270,747 | The Security Deposit Account holds security deposits provided by tenants. The claims associated with these security deposits (up to $2600 per individual) would be priority claims pursuant to section 507(a)(7) of the Bankruptcy Code and as such the funds in this account would be used to pay those claims. The average security deposit is significantly less than $2600. |
| Real Estate Tax Escrow Account | $7,804,868 | Pursuant to Section 7.2 of the Prepetition Loan Agreement, the Debtors made monthly payments to the Master Servicer to fund the reserve for real estate taxes and insurance. These funds are the lender's collateral and would be used to pay accrued and unpaid pre and post petition real estate taxes and insurance premiums. |
| Insurance Escrow Account | $1,150,465 | |
| Utility Adequate Assurance Deposit Account | $190,857 | Pursuant to the Interim and Final Order Establishing Adequate Assurance Procedures with respect to Utility Providers, the Debtors were required to fund all utility deposits into a segregated account. Upon liquidation, these funds would be used to pay outstanding utility invoices. |

To the extent there are any funds remaining from these escrow and restricted cash accounts after the applicable Allowed Claims are paid, the funds would become funds of

5

the estate and would be available for distribution to Creditors in accordance with their relative rights and priorities, which in this case would be paid to the lender. At this time the Debtors do not believe that there would be a surplus available for Distribution to any party other than the Senior Lender.

D. Estimated Cash Generation during Sales Process
   o The estimated cash generation during the sales process is estimated to be $4.2 million to $8.5 million based on an assumed liquidation period of 3 to 6 months which includes a discount to adjust for the impact of a liquidation scenario resulting from interruption in vendor services, potential slow down in rental receipts collection due to the Chapter 7 announcement, and other related issues.

*Chapter 7 Administrative Fees*

E. Trustee Fees
   o Chapter 7 trustee fees represent the fees associated with the appointment of a Chapter 7 Trustee in accordance with section 326(a) of the Bankruptcy Code. Trustee fees are estimated based on the requirements of the Bankruptcy Code and historical experience in other similar cases and are calculated at 3% of the Debtors' estimated liquidation value, excluding cash.

F. Transaction Fees
   o Transaction fees associated with the distressed sale of the property portfolio are assumed to be 3.0% of the gross proceeds from the sale of the properties, or approximately $6.2 million to $7.5 million, in the low and high scenarios respectively, which include the seller's share of applicable real estate taxes accruing on the transfer.

G. Other Professional Fees.
   o Other Professional Fees include legal, financial, appraisal, and accounting services required to assist the Debtors and the Chapter 7 Trustee with the liquidation process and are estimated to be between $2.1 and $3.9 million.

H. Estimated Wind-Down Costs of the Chapter 7 Estates
   o Upon completion of the sale(s), certain corporate and administrative functions would be required to oversee the Distribution of proceeds, the reconciliation of the Claims, if appropriate, the wind-down the estate, maintain and close the estate's accounting records and file final tax returns. The wind-down costs are estimated at 1% of the Debtors' estimated liquidation value.

I. Accrued Chapter 11 Professional Fees
- o The recovery available to the Creditors would be reduced further by the amount of accrued Chapter 11 professional fees and expenses. This amount is net of the $2 million Professional Reserve held by the Debtors (see Note C above). The estimated accrued but unpaid professional fees at December 31, 2011, net of the Professional Reserve, is $1.3 million

J. Secured Claims
- o Secured Claims of the Debtors consist of the mortgage loan encumbering the real estate in the asserted amount of $475 million.
- o The Secured Claims should be reduced by approximately $4.7 million in anticipated adequate protection payments made from the Senior Lender's cash collateral during the course of the Chapter 11 cases through December 31, 2011 as it is assumed that these payments would be re-characterized as principal payments upon conversion to a Chapter 7 proceeding, which will reduce the Claim amount.
- o The Creditors Committee has reserved certain rights to challenge the extent, validity and priority of the Senior Lender's Claim and Lien. For purposes of this Liquidation analysis it is assumed the Creditors Committee and the Chapter 7 trustee assert no such challenge.

K. Administrative and Priority Claims
- o These claims include unpaid prepetition tax amounts, excluding prepetition real estate taxes, which will be paid from the Tax Escrow (see Note C above), and other priority claims.
- o Since it is assumed that any potential purchaser(s) would assume the post-petition liabilities of the properties, the Liquidation Analysis does not include such amounts.

L. Unsecured Claims
- o The Unsecured Claims represent an estimate of the prepetition liabilities based on the financial records of the Debtors and the expected Deficiency Claim of the Senior Lender ranging from $233.4 million to $276.9 million, depending on the proceeds generated to settle the Secured Claim in the high and low scenario, respectively. The claims bar date has not passed, therefore, the actual amount of allowed claims in a Chapter 7 liquidation could vary materially from the amount presented herein since additional Claims related to the rejection of Executory Contracts and Leases, unliquidated Claims and other unforeseen liabilities would likely arise. Since the hypothetical liquidation values are insufficient to provide a recovery to the holders of General Unsecured Claims, these additional amounts have not been analyzed.