# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------x

|  |  |
|---|---|
| In re | : Chapter 11 |
| | : |
| PJ Finance Company, LLC, *et al.*,[1] | : Case No. 11-10688 (BLS) |
| | : |
| Debtors. | : (Jointly Administered) |
| | : |
| | : Hearing Date: 11/7/2011 at 10:00 a.m. EST |
| | : Objection Deadline: 11/2/2011 at 4:00 p.m. EDT |

------------------------------------------------------------x

## MOTION FOR ENTRY OF AN ORDER (I) APPROVING DISCLOSURE STATEMENT, (II) DETERMINING DATES, PROCEDURES, AND FORMS APPLICABLE TO SOLICITATION PROCESS, (III) ESTABLISHING VOTE TABULATION PROCEDURES, AND (IV) ESTABLISHING OBJECTION DEADLINE AND SCHEDULING HEARING TO CONSIDER CONFIRMATION OF PLAN

The above-captioned debtors and debtors in possession file this *Motion for Entry of an Order (i) Approving Disclosure Statement, (ii) Determining Dates, Procedures, and Forms Applicable to Solicitation Process, (iii) Establishing Vote Tabulation Procedures, and (iv) Establishing Objection Deadline and Scheduling Hearing to Consider Confirmation of Plan* (the "Motion"). In support of the Motion, the Debtors state as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. § 1408. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

---

[1] The Debtors are the following seven entities (the last four digits of their respective taxpayer identification numbers, if any, follow in parentheses): PJ Finance Company, LLC (8895), PJ Holding Company Manager, LLC (8895), PJ Holding Company, LLC (8895), Alliance PJRT GP, Inc. (1787), Alliance PJWE GP, L.L.C. (8133), Alliance PJRT Limited Partnership (1789) and Alliance PJWE Limited Partnership (8198). The mailing address of each of the Debtors solely for purposes of notices and communications is 1200 North Ashland Avenue, Suite 600, Chicago, Illinois 60622.

2.    The statutory predicates for the relief sought herein are §§ 105(a), 1125 and 1126 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 3017, 3018 and 3020 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

**A.    Introduction**

3.    On March 7, 2011 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "Bankruptcy Cases"). The Debtors are in possession of their properties and continuing to operate their business as debtors and debtors in possession under sections 1107 and 1108 of the Bankruptcy Code. On March 16, 2011, the Office of the United States Trustee (the "US Trustee") appointed the Official Committee of Unsecured Creditors in these cases (the "Committee") and modified such appointment on March 24, 2011 and June 3, 2011. No trustee has been appointed in these cases.

4.    Additional background information on the Debtors, their business and the relief requested in this pleading can be found in the *Declaration of Michael Husman in Support of First-Day Pleadings* [Docket No. 3].

**B.    The Debtors' Plan and Disclosure Statement**

5.    On September 19, 2011, the Debtors filed the *Joint Plan of the Debtors and the Official Committee of Unsecured Creditors Under Chapter 11 of the Bankruptcy Code* [Dkt. No. 447] (the "Plan") and the *Disclosure Statement for Joint Plan of the Debtors and the Official Committee of Unsecured Creditors Under Chapter 11 of the Bankruptcy Code* [Dkt. No. 448] (the "Disclosure Statement").

6.    In support of, and related to, issues surrounding the Plan, on September 19, 2011, the Debtors filed the *Motion of the Debtors and Debtors-in-Possession for Entry of an Order Pursuant to Section 363 of the Bankruptcy Code Approving the Services Agreement Between the*

*Debtors and GlassRatner Advisory & Capital Group, LLC* [Dkt. No. 444], whereby the Debtors

seek to retain Stephen Kunkel and GlassRatner Advisory & Capital Group, LLC as chief

restructuring officer (the "CRO") of the Debtors.

## RELIEF REQUESTED

7.      By this Motion, the Debtors request, among other things, that the Court enter an

order (the "Solicitation Procedures Order"): (i) approving the Disclosure Statement, approving

the dates, procedures, and forms applicable to the plan solicitation, noticing, and implementation

process, including (a) confirming the authority of Kurtzman Carson Consultants LLC ("KCC")

as claims, noticing, solicitation, and balloting agent, (b) establishing a voting record date and

setting a voting deadline, (c) approving the forms of ballots to be used for voting on the Plan, and

(d) approving the notice procedures applicable to holders of unliquidated and disputed claims,

holders of claims that are not impaired by the Plan or who are otherwise deemed to accept the

Plan, and holders of claims who are deemed to reject the Plan, (iii) approving certain vote

tabulation procedures, and (iv) establishing the deadline for filing objections to the Plan and

scheduling the hearing to consider confirmation of the Plan.

## A.      Approval of the Disclosure Statement

### (i)      *"Adequate Information"*

8.      Pursuant to section 1125 of the Bankruptcy Code, a debtor must provide its

impaired creditors and equity holders with "adequate information" regarding the debtor's

proposed chapter 11 plan. Specifically, section 1125(a)(1) provides that—

> "adequate information" means information of a kind, and in
> sufficient detail, as far as is reasonably practicable in light of the
> nature and history of the debtor and the condition of the debtor's
> books and records, including a discussion of the potential material
> federal tax consequences of the plan to the debtor, any successor to
> the debtor, and a hypothetical reasonable investor typical of the
> holders of claims or interests in the case, that would enable such a
> hypothetical investor of the class to make an informed judgment
> about the plan, . . . .

11 U.S.C. § 1125(a)(1). Thus, a disclosure statement must, as a whole, provide information that is reasonably sufficient to permit an informed judgment by impaired creditors and equity interest holders entitled to vote on the chapter 11 plan. *See Kirk v. Texaco, Inc.*, 82 B.R. 678, 681 (S.D.N.Y. 1988); *In re Dakota Rail, Inc.*, 104 B.R. 138, 142 (Bankr. D. Minn. 1989). Whether a disclosure statement contains adequate information is determined by the facts and circumstances of each bankruptcy case. *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988); *see also In re Copy Crofters Quickprint, Inc.*, 92 B.R. 973, 979 (Bankr. N.D.N.Y 1988) (adequacy of disclosure statement "is to be determined on a case-specific basis under a flexible standard that can promote the policy of Chapter 11 towards fair settlement through a negotiation process between informed parties").

9. The Court has broad discretion in determining whether a disclosure statement contains adequate information. *See Mabey v. Sw. Elec. Power Co. (In re Cajun Elec. Power Coop., Inc.)*, 150 F.3d 503, 518 (5th Cir. 1998), *cert, denied*, 526 U.S. 1144 (1999); *In re Worldcom, Inc.*, No. M-47 HB, 2003 WL 21498904, at *10 (S.D.N.Y. June 30, 2003) ("The determination of what is adequate information is subjective and made on a case by case basis. This determination is largely within the discretion of the bankruptcy court."); Kirk, 82 B.R. at 682 ("The legislative history could hardly be more clear in granting broad discretion to bankruptcy judges under § 1125(a): 'Precisely what constitutes adequate information in any particular instance will develop on a case-by-case basis. Courts will take a practical approach as to what is necessary under the circumstances of each case . . . .'") (quoting H.R. REP. No. 595, at 408-09 (1977), *reprinted* in 1978 U.S.C.C.A.N. 5787, 6365). This discretion allows courts to tailor the disclosures made in connection with a plan of reorganization to facilitate the effective reorganization of debtors in a broad range of businesses and circumstances. *See id.* ("In reorganization cases, there is frequently great uncertainty. Therefore, the need for flexibility is greatest."). Accordingly, the determination of the adequacy of information in a disclosure statement is made on a case-by-case basis, focusing on the unique facts and circumstances of each case.

10.     The Debtors believe the Disclosure Statement contains "adequate information" within the meaning of section 1125(a)(1) of the Bankruptcy Code. Specifically, the Disclosure Statement contains information concerning (i) the Plan, (ii) distributions to be made under the Plan, (iii) the projected recoveries by creditors under the Plan, (iv) risk factors affecting the Plan, (v) the projected recoveries to creditors under a hypothetical chapter 7 case, and (vi) federal tax consequences. Therefore, the Debtors request that the Court approve the Disclosure Statement pursuant to section 1125 of the Bankruptcy Code.

### (ii)     Auction

11.     As set forth in *Bank of America Nat'l Trust and Savings Assoc. v. 203 North LaSalle Partnership*, it is the province of the marketplace and the creditors to determine whether, in a plan of reorganization sponsored by pre-petition equity holders, the consideration being offered is satisfactory and sufficient. 526 U.S. 434 (1999). Specifically, the Supreme Court noted that "[u]nder a plan granting an exclusive right, making no provision for competing bids or competing plans, any determination that the price was top dollar would necessarily be made by a judge in bankruptcy court, whereas the best way to determine value is exposure to a market." *Id.* at 457.

12.     As set forth in greater detail in the Plan and Disclosure Statement, it is currently contemplated that the Debtors' current equity holders will be providing the equity investment necessary for the Debtors to implement their Plan. Accordingly, the Debtors, in consultation with their advisors, have been and intend to continue actively to market the New Money Investment (as that term is defined in the Plan) and, as such, the Debtors are requesting that any interested party submit any such offers to become the Plan Sponsor (as that term is defined in the Plan) no later than October 26, 2011 (the "Offer Deadline"). Any interested party must submit to the Debtors, in writing, with copies to the Committee, any offer to become the Plan Sponsor (as that term is defined in the Plan) no later than the Offer Deadline. Such offer must at a minimum (a) be higher and/or otherwise better than the New Money Investment as identified in the Plan, in the business judgment of the Debtors, in conjunction with the CRO and after consultation with

the Committee and notice to, and the opportunity to comment, by Torchlight; (b) have no financing, due diligence or other material contingencies; (c) be accompanied with a good faith deposit of $1 million, together with proof of such interested party's financial ability to close on the transaction; and (d) be accompanied with their proposed mark-up of the Plan and the plan support agreement, which shall be filed with the Bankruptcy Court (a "Qualified Offer"). In the event that the Debtors receive a Qualified Offer prior to the Offer Deadline, the Debtors shall hold an auction (the "Auction") to select the highest or otherwise best bid to become the New Money Investor and Plan Sponsor under the Plan. Such Auction will be held on November 2, 2011 at 10:00 a.m. (prevailing Central time) at the offices of DLA Piper LLP (US), 203 North LaSalle Street, Chicago, Illinois 60601. The Debtors believe that such marketing efforts and the process outlined above satisfy the standards set forth in *203 North LaSalle* and ensure that the best return possible is provided to their creditors.

**B.      Approval of Dates, Procedures, and Forms Applicable to Solicitation Process**

   *(iii)    Claims Agent*

13.      By order, entered March 8, 2011, this Court appointed KCC to serve as the Debtors' claims, noticing, solicitation, and balloting agent in these cases (in such capacity, the "Claims Agent"). Consistent with the Court's order, the Debtors propose to utilize the Claims Agent to assist the Debtors in soliciting votes on and providing notice of the Plan, including mailing solicitation packages and notices, receiving and tabulating ballots cast on the Plan, and certifying to the Court the results of the balloting.

   *(iv)    Voting Record Date*

14.      Bankruptcy Rule 3018(a) provides that the record date for determining the holders of stock, bonds, debentures, notes, and other securities entitled to receive the materials specified in Bankruptcy Rule 3017(d), including ballots, is the "date the order approving the disclosure statement is entered or another date fixed by the court, for cause, after notice and a hearing." *See* FED R. BANKR. P. 3018(a). Therefore, the Debtors request that the Court ratify the date of entry of the Solicitation Order as the record date (the "Voting Record Date") for determining the

Holders of Claims and Interests that are entitled to receive solicitation packages and/or notices, as more particularly described below.

### (v) *Voting Deadline*

15. Pursuant to Bankruptcy Rule 3017(c), at the time of or before the approval of the disclosure statement, "the court shall fix a time within which the holders of claims and interests may accept or reject the plan...." FED. R. BANKR. P. 3017(c). The Debtors request that the Court establish a date that is seven calendar days before the Confirmation Hearing, at 5:00 p.m. (Pacific Time) on such date as the deadline by which all ballots must be received by the Claims Agent (the "Voting Deadline"). The Debtors also request that they be permitted, in their sole discretion, to extend the Voting Deadline as facts and circumstances may require without further order of the Court.

### (vi) *Ballots*

16. Bankruptcy Rule 3017(d) provides that ballots for accepting or rejecting a plan of reorganization should conform substantially to Official Form No. 14. The proposed form of ballot (the "Ballot") attached hereto as Exhibit A is derived from Official Form No. 14, but includes certain modifications necessary to meet the particular requirements of the Plan. A Ballot will be distributed to creditors in Classes eligible to vote to accept or reject the Plan.

### (vii) *Solicitation of Votes*

17. Bankruptcy Rule 3017(d) specifies the materials to be distributed to holders of claims and/or interests upon approval of a disclosure statement. Unless otherwise ordered, such materials include the plan or a court-approved summary of the plan, the court-approved disclosure statement, notice of the voting deadline and any other information as the court may direct. FED R. BANKR. P. 3017(d).

18. The Debtors propose to cause the Claims Agent to transmit a solicitation package by first class mail to each of the Holders of Claims and Interests in Classes entitled to vote on the Plan in accordance with Bankruptcy Rule 3017(d) by a date to be established by the Court that is

no more than five business days after the date of entry of the Solicitation Procedures Order (the

"Solicitation Commencement Date"). The solicitation package shall contain the following:

- (a) notice of the Confirmation Hearing and objection deadline;

- (b) the Disclosure Statement;

- (c) the Plan (appended to the Disclosure Statement);

- (d) a Ballot;

- (e) the Solicitation Procedures Order, without exhibits;

- (f) a pre-addressed postage prepaid return envelope; and

- (g) such other information as the Court may direct or approve.

(collectively, the "Solicitation Package").

19. The Debtors propose that the following Holders of Claims be permitted to vote on

the Plan and thus to receive the Solicitation Package:

- (a) Any Holder, as of the Voting Record Date, of a Claim in Classes 2, 5 and

7 (if applicable)[2] —

- who has filed a timely proof of Claim (or untimely proof of Claim that has been Allowed as timely by the Court on or before the Voting Record Date), in the amount asserted in such proof of Claim, provided that such proof of Claim (i) has not been disallowed by an order of the Court entered on or before the Voting Record Date, (ii) is not the subject of an objection to the entirety of the Claim pending as of the Voting Record Date (with voting permitted only with respect to any amount thereof that is not subject to objection), (iii) has not been reduced by order of the Court or is not subject to an objection pending before the Court for reduction (with voting permitted only in the reduced or proposed reduced amount and/or classification), (iv) does not allege a Claim that is wholly unliquidated (with voting permitted only with respect to the amount thereof that is fixed); or –

- who has not filed a timely proof of Claim but which Claim is scheduled in the Debtors' Schedules, or any amendments thereto, but is not designated therein as

---

[2] Pursuant to the Plan, Class 7 will only be required to be solicited in the event that the Senior Lender (as that term is defined therein) elects to have its Senior Lender Secured Claims treated in accordance with section 1111(b) of the Bankruptcy Code. The Senior Lender is required to elect whether to have its Senior Lender Secured Claims treated in accordance with section 1111(b) of the Bankruptcy Code prior to the hearing to approve the Disclosure Statement. Accordingly, the Debtors shall only send a Solicitation Package to the Holder of a Claim in Class 7 in the event that the Senior Lender has elected to have its Senior Lender Secured Claims treated in accordance with section 1111(b) of the Bankruptcy Code.

contingent, unliquidated, or disputed or listed therein as zero or unknown in amount, in the amount set forth in the schedules, or any amendments thereto.

20.     To avoid duplication and reduce expenses, the Debtors propose that voting creditors who have filed duplicate proofs of Claim for the same underlying liability that are classified in the same Class should be entitled to receive only one Solicitation Package and one Ballot for voting their Claims with respect to that Class.  In addition, the Debtors propose that voting creditors who filed amended Claims after the Voting Record Date should be entitled to vote only the Claim evidenced by their initial timely proof of Claim, unless the initial proof of Claim has been disallowed.  For voting purposes only, in those instances in which a creditor fails to assert a proof of Claim against a specific Debtor or asserts a proof of Claim against multiple Debtors, the Debtors propose that the Claim be deemed filed against the lead debtor, PJ Finance Company, LLC. (Case No. 11-10688 (BLS)).  For example, if a creditor files a single proof of Claim and fails to identify any Debtor or files a single proof of Claim identifying two or more Debtors, the Claims Agent will deem the Claim filed against PJ Finance Company, LLC for voting purposes.  Any proof of Claim that is deemed filed against PJ Finance Company, LLC for voting purposes shall be so noted on the Ballot.

### (viii)     *Treatment of Unliquidated or Disputed Claims*

21.     Pursuant to section 1126(a) of the Bankruptcy Code, only holders of allowed claims or interests are entitled to vote to accept or reject a plan.  Pursuant to Bankruptcy Rule 3018(a), a court may, after notice and hearing, temporarily allow a claim or interest for voting purposes.

22.     The Debtors propose that any Holder of a Claim that is (i) asserted in a proof of claim as wholly unliquidated, (ii) asserted in an untimely proof of Claim (unless Allowed as timely prior to the Voting Record Date), or (iii) asserted in a proof of Claim as to which an objection to the entirety of the Claim is pending as of the Voting Record Date (collectively, the "Disputed Claimants") not be permitted to vote on the Plan except as provided herein.

23.     The Debtors propose to distribute to each of the Disputed Claimants a package that includes the following:

(a) a notice of disputed Claim status in substantially the form attached hereto as Exhibit B (the "Notice of Disputed Claim Status");

(b) the Disclosure Statement;

(c) the Plan (appended to the Disclosure Statement); and

(d) such other information as the Court may direct or approve, (collectively, the "Disputed Claimant Package").

24. The Notice of Disputed Claim Status will inform the Disputed Claimants that their Claims have been designated as wholly unliquidated or disputed. The Notice of Disputed Claim Status also informs such claimants that absent (i) an order granting a motion seeking temporary allowance of Claims for voting purposes pursuant to Bankruptcy Rule 3018(a) (a "Rule 3018 Motion"), by the deadline described below, or (ii) an agreement with the Debtors regarding the classification and amount of such Claim for voting purposes, claimants are precluded from submitting a vote with respect to their wholly unliquidated or disputed Claim. Such claimants will be instructed in the notice to contact the Claims Agent to receive a Ballot for any such Claim if a Rule 3018 Motion is timely filed and granted or if an agreement is reached with the Debtors.

25. The Debtors respectfully request that KCC be permitted to serve all documents in the Solicitation Package and Disputed Claimant Package as discussed herein, with the exception of the applicable Ballots and the Confirmation Hearing Notice (which will be served in paper format), via CD-ROM. The Debtors submit that providing parties entitled to vote on the Plan a Solicitation Package on CD-ROM is appropriate under the present circumstances, in light of the significant cost savings resulting therefrom. Similar solicitation procedures have been approved in other cases in this District. *See, e.g., In re Taylor-Wharton Int'l LLC*, Case No. 09-14089 (BLS) (Bankr. D. Del. Jan. 11, 2010); *In re Pierre Foods, Inc.*, Case No. 08-11480 (KG) (Bankr. D. Del. Oct. 29, 2008); *In re Dura Automotive Sys., Inc.*, Case No. 06-11202 (KJC) (Bankr. D. Del. Apr. 3, 2008). Moreover, all solicitation materials, including the Plan and Disclosure

Statement, will be available in paper copy by requesting a copy from KCC, (i) by writing to 2335 Alaska Avenue, El Segundo, CA 90245 (ii) or by calling 877-565-8224.

26.     The Debtors request that the Court fix a deadline at least ten (10) days prior to the Voting Deadline for Rule 3018 Motions to be filed with the Court and served upon the Debtors' counsel and the Claims Agent (the "Rule 3018 Motion Deadline"). If any Disputed Claimant timely files and serves a Rule 3018 Motion, the Debtors request that the Court hold a hearing and enter an order (the "Rule 3018 Order") to determine whether such Disputed Claimant should be allowed to vote on the Plan and the amount of such Claim for voting purposes.

27.     In order to be allowed to vote on the Plan, a Disputed Claimant must (a) either (i) reach an agreement with the Debtors regarding the classification and amount of such Claim for voting purposes or (ii) have the Bankruptcy Court enter an order granting a Rule 3018 Motion no later than five days prior to the Voting Deadline, and (b) submit its Ballot by the Voting Deadline. Such a procedure will help ensure an efficient tabulation of Ballots to be completed accurately by the Confirmation Hearing.

28.     Nothing in these procedures is intended to affect the Debtors' right to object to any proof of Claim after the Voting Deadline.

*(ix)    Notice of Non-Voting Status*

29.     In compliance with section 1123(a)(1) of the Bankruptcy Code and as reflected in the Plan, Administrative Claims, Administrative Expense Claims and Priority Tax Claims are not classified under the Plan. *See* 11 U.S.C. § 1123(a)(1) (prohibiting classification of administrative and priority claims). These unclassified Claims are not entitled to vote on the Plan as the Bankruptcy Code requires that they not be compromised under a plan. In addition, Classes 1, 3, 4 and 6 are also unimpaired and are not entitled to vote.

30.     Bankruptcy Rule 3017(d) permits a bankruptcy court to order that the disclosure statement and plan need not be mailed to any unimpaired class and to approve instead the mailing of a "notice that the class is designated in the plan as unimpaired and notice of the name and address from whom the plan or summary of the plan and disclosure statement may be

obtained upon request and at the plan proponent's expense, [and] notice of the time fixed for filing objections to and the hearing on confirmation." FED R. BANKR. P. 3017(d).

31.    Accordingly, the Debtors propose to cause the Claims Agent to mail to Holders of Claims that are unimpaired under the Plan (collectively, the "Unimpaired Holders") and impaired Holders who have been deemed to accept or reject the Plan (the "Impaired Holders"), a notice in substantially the form attached hereto as Exhibit C (the "Notice of Non-Voting Status"), in lieu of a Solicitation Package.[3]  The Notice of Non-Voting Status summarizes the treatment provisions of the Plan as applicable to the Classes of Claims or Interests held by the Unimpaired and Impaired Holders.  In addition, the Notice of Non-Voting Status provides (i) notice of the filing of the Plan, (ii) notice of the hearing on approval of the Disclosure Statement, (iii) instructions regarding the various ways to obtain and/or view copies of the Disclosure Statement, the Plan, and other documents, including how to obtain electronic copies of such documents, (iv) information regarding the Confirmation Hearing, and (v) directions for filing objections to the confirmation of the Plan.

32.    The Debtors believe that mailing the Notice of Non-Voting Status as described above satisfies the requirements of Bankruptcy Rule 3017(d) with respect to the Unimpaired Holders.  The Debtors further request that the Court waive the requirements of Bankruptcy Rule 3017(d) as they may apply to the Impaired Holders and authorize the Debtors to provide for the mailing of the Notice of Non-Voting Status to such Holders in lieu of transmitting a Solicitation Package to each such Holder.  Therefore, the Debtors request that the Court direct that the Disclosure Statement and Plan need not be mailed to the Unimpaired and Impaired Holders.

### (x)    When No Notice or Transmittal is Necessary

33.    The Debtors propose that no Solicitation Packages or other notices need be transmitted to (i) Holders of Claims listed on the schedules, or any amendments thereto, that have already been paid in full during these cases and (ii) any person to whom the Debtors mailed

---

[3] In the event that any of the terms of the Plan described in the Notice of Non-Voting Status are modified, the Notice will be modified to conform to the Plan.

a notice of the commencement of the case and first meeting of creditors or a notice of the bar date for filing proofs of Claim if either of such notices was returned marked "undeliverable" or "moved - no forwarding address" or for a similar reason, unless the Debtors have been informed in writing by such person of that person's new address.

*(xi)* *Informational Mailing of Solicitation Packages*

· 34.     Solicitation Packages and all forms of Ballots and notices proposed herein will be mailed for informational purposes to the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee").

35.     Except as otherwise provided herein, Holders of Claims listed on the Schedules, or any amendments thereto, as contingent, unliquidated, or disputed or as zero or unknown in amount, who did not file proofs of Claim will receive only a notice of the Confirmation Hearing.

**C.     Approval of Voting Tabulation Procedures**

36.     To avoid uncertainty, to provide guidance to the Debtors and the Claims Agent, and to avoid the potential for inconsistent results, the Debtors request that the Court, pursuant to section 105(a) of the Bankruptcy Code, establish the guidelines set forth below for tabulating the votes to accept or reject the Plan.

*(i)* *Votes Counted*

37.     As described below, the Debtors propose that any Ballot that is timely received, that contains sufficient information to permit the identification of the claimant and that is cast as an acceptance or rejection of the Plan will be counted and will be deemed to be cast as an acceptance or rejection, as the case may be, of the Plan.

*(ii)* *Votes Not Counted*

38.     The Debtors further propose that the following Ballots not be counted or considered for any purpose in determining whether the Plan has been accepted or rejected:

(a)     any Ballot received after the Voting Deadline unless the Debtors have granted an extension of the Voting Deadline with respect to such Ballot;

(b)     any Ballot that is illegible or contains insufficient information to permit the identification of the claimant;

(c)     any Ballot cast by a person or entity that does not hold a Claim in a Class that is entitled to vote to accept or reject the Plan;

(d)     any Ballot cast for a Claim designated as unliquidated, disputed, or as zero or unknown in amount and for which (i) no agreement with the Debtors has been reached regarding the classification and amount of such Claim for voting purposes, or (ii) no Bankruptcy Rule 3018(a) Order has been entered no later than five days prior to the Voting Deadline allowing the Claim for voting purposes;

(e)     any Ballot timely received that is cast in a manner that indicates neither an acceptance nor rejection of the Plan or that indicates both an acceptance and rejection of the Plan;

(f)     any unsigned Ballot; or

(g)     any Ballot that is electronically submitted or otherwise does not have an original signature.

*(iii)     Changing Votes*

39.     Notwithstanding Bankruptcy Rule 3018(a), whenever two or more Ballots that comply with these procedures are cast voting the same Claim prior to the Voting Deadline, the last dated valid Ballot received prior to the Voting Deadline will be deemed to reflect the voter's intent and thus to supersede any prior Ballots, without prejudice to the Debtors' right to object to the validity of the second Ballot on any basis permitted by law, including under Bankruptcy Rule 3018(a), and, if the objection is sustained, to count the first dated valid Ballot for all purposes. This procedure will spare the Court and the Debtors the time and expense of responding to motions brought pursuant to Bankruptcy Rule 3018(a) attempting to show cause for changing votes.

*(iv)    No Vote Splitting; Effect*

40.    The Debtors propose that the Court clarify that claim splitting is not permitted and order that creditors who vote must vote all of their Claims within a particular Class to either accept or reject the Plan.

*(v)    Withdrawal of Ballots*

41.    The Debtors propose to permit any claimant who has delivered a valid Ballot for the acceptance or rejection of the Plan to withdraw such acceptance or rejection by delivering a written notice of withdrawal to the Claims Agent at any time prior to the Voting Deadline. A notice of withdrawal, to be valid, should (i) contain the description of the Claim to which it relates and the aggregate principal amount represented by such Claim, (ii) be signed by the withdrawing party in the same manner as the Ballot being withdrawn, (iii) contain a certification that the withdrawing party owns the Claim and possesses the right to withdraw the vote sought to be withdrawn, and (iv) be timely received by the Claims Agent.

*(vi)    No Voting By Electronic Means*

42.    The Debtors propose that the Court require that original executed Ballots be returned to the Claims Agent and that the Claims Agent be authorized to invalidate any Ballot that is sent via facsimile or any other electronic means.

*(vii)    Non-Voting Classes*

43.    To the extent a Class has no members, such Class shall not be counted for voting purposes. If a Class has members but no votes to accept or reject the Plan are received by any members of a particular Class, such Class shall be deemed to have accepted the Plan.

*(viii)    Cure of Defects in Ballot*

44.    The Claims Agent is authorized to provide to voters notification of defects in filed Ballots and an opportunity to cure same, but shall not be under any duty to do so, nor shall the Claims Agent or any other person or entity incur any liability for failure to provide such notification.

**D. Establishment and Noticing of Plan Confirmation Hearing and Objection Deadline**

45.     Bankruptcy Rule 2002(b) requires at least 28 days' notice by mail to all creditors and indenture trustees of the time fixed for filing objections to, and the hearing to consider confirmation of a chapter 11 plan.  Similarly, Bankruptcy Rule 2002(d) requires notice by mail to equity security holders, unless the court orders otherwise.

46.     The Debtors request that the Court schedule the hearing to consider confirmation of the Plan (the "Confirmation Hearing") on a date that will allow sufficient notice in accordance with Bankruptcy Rule 2002(b).  The Debtors also request that the Court establish a deadline for filing objections to the Plan (the "Plan Objection Deadline") that is at least five business days before the Confirmation Hearing, at 5:00 p.m. (prevailing Eastern Time) on such date.

47.     The Debtors anticipate that they will require up to five business days after the date of approval of the Disclosure Statement to be in a position to provide the notices required under Bankruptcy Rule 2002, including the mailing of Solicitation Packages.

48.     Attached hereto as Exhibit D is a proposed form of notice of the Plan Objection Deadline and the Confirmation Hearing (the "Confirmation Hearing Notice").  The Confirmation Hearing Notice provides (i) notice of the filing of the Plan, (ii) notice of the approval of the Disclosure Statement, (iii) information regarding the Confirmation Hearing, and (iv) directions for filing objections to the confirmation of the Plan by the Plan Objection Deadline.

49.     As set forth above, the Confirmation Hearing Notice will be included in the Solicitation Packages mailed to Holders of Claims and Interests in Classes entitled to vote on the Plan and to each person or entity set forth on the 2002 Service List maintained in these cases. The substance of the information contained in the Confirmation Hearing Notice is also included in the Notice of Non-Voting Status and the Notice of Disputed Claim Status.

50.     Accordingly, the Debtors believe that service of the Confirmation Hearing Notice as described above will provide sufficient notice to all parties in interest of the Plan Objection Deadline and the Confirmation Hearing.

## NOTICE

51. No trustee or examiner has been appointed in these chapter 11 cases. Notice of this Motion has been provided to: (i) the United States Trustee for the District of Delaware; (ii) counsel to the Committee; (iii) counsel to the Special Servicer; and (iv) persons who have filed a request for notice pursuant to Bankruptcy Rule 2002. The Debtors submit that no other or further notice need be provided.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter an order substantially in the form of the order attached to the Motion as Exhibit E (i) approving the Disclosure Statement, (ii) approving the dates, procedures, and forms applicable to the Plan solicitation, noticing, and implementation process, (iii) approving certain vote tabulation procedures, (iv) establishing the deadline for filing objections to the Plan and scheduling the hearing to consider confirmation of the Plan, all as more particularly described above, and (v) granting such other and further relief as the Court deems appropriate.

*[remainder of page intentionally left blank]*

Dated: September 22, 2011
      Wilmington, Delaware

Respectfully submitted,

/s/ Stuart M. Brown
Stuart M. Brown (DE 4050)
Michelle E. Marino (DE 4577)
DLA Piper LLP (US)
919 North Market Street, Suite 1500
Wilmington, Delaware 19801
Telephone: (302) 468-5700
Facsimile: (302) 394-2341
Email: stuart.brown@dlapiper.com
        michelle.marino@dlapiper.com

-and-

Richard A. Chesley (IL 6240877)
Kimberly D. Newmarch (DE 4340)
DLA PIPER LLP (US)
203 N. LaSalle Street, Suite 1900
Chicago, Illinois 60601
Telephone: (312) 368-4000
Facsimile: (312) 236-7516
Email: richard.chesley@dlapiper.com
        kim.newmarch@dlapiper.com

ATTORNEYS FOR DEBTORS AND DEBTORS IN POSSESSION

EAST\45596826.6